# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| AMERICAN SENIOR COMMUNITIES, L.L.C., | ) |
| Plaintiff, | ) Case No.: 1:17-cv-3273-TWP-DML |
| v. | ) Honorable Tanya Walton Pratt |
| JAMES BURKHART, et al. | ) Honorable Debra McVicker Lynch |
| Defendants. | ) |

**PLAINTIFF AND COUNTER-DEFENDANT AMERICAN SENIOR COMMUNITIES'
MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION TO DISMISS JAMES BURKHART'S COUNTERCLAIMS</u>**

James Burkhart has no shame. Having stolen millions of dollars from American Senior Communities, L.L.C. ("ASC" or "the Company"), pleaded guilty to his crimes, and apologized to ASC while asking this Court for leniency at his sentencing hearing, he now claims ASC owes him money. Burkhart bases his claims for breach of contract and unjust enrichment on his employment agreements with ASC – agreements which he repeatedly and flagrantly breached for years. The criminal proceedings before this Court in *United States v. Burkhart, et al.*[1] – which are properly subject to judicial notice – establish that Burkhart defrauded ASC out of millions of dollars. Because of Burkhart's wrongful conduct, both of his claims are barred by the unclean hands doctrine. Moreover, Burkhart's breach of contract claim fails because he breached his duties to ASC, thereby excusing any performance by ASC under the agreements. Finally, Burkhart's unjust enrichment claim should be dismissed for the independent reason that a claim for unjust enrichment cannot lie where the plaintiff alleges the existence of a valid and enforceable agreement.

## FACTUAL BACKGROUND

In his Counterclaims, Burkhart alleges the following. Burkhart was ASC's Chief Executive Officer ("CEO") from approximately 2000 through September 15, 2015. (Dkt. 83 ¶ 1.)[2] Throughout the course of his employment with ASC, Burkhart entered into four agreements with ASC governing his employment relationship with the Company: (i) October 10, 2000 offer of employment; (ii) October 6, 2003 restatement of compensation package and employment arrangements; (iii) November 24, 2009 addendum to October 6, 2003 agreement; and (iv) August

---

[1] *United States v. Burkhart et al.*, Case No. 1:16-cr-00212-TWP-TAB (S.D. Ind.) (the "Criminal Case").

[2] This Memorandum of Law refers to the numbered paragraphs containing the allegations of Burkhart's counterclaims, which begin on page 30 of Dkt. No. 83. For the purposes of this Motion to Dismiss only, Burkhart's factual allegations are accepted as true.

1

31, 2012 second addendum to October 6, 2003 agreement. (*Id*. ¶¶ 5, 6.) Burkhart refers to these agreements collectively as the "Compensation Agreements." (*Id.* ¶ 6.)

The Compensation Agreements contained severance provisions applicable in the event of Burkhart's employment termination or resignation. (*Id*. ¶¶ 9-12.) The October 6, 2003 agreement set forth Burkhart's potential severance in the event he was terminated for whatever reason and limited that severance exclusively to: (1) payment of one times his base salary; (2) a prorated share of the ASC Employee Bonus Incentive Plan; and (3) one year's participation in the ASC Group Health Plan and ASC Group Benefits Plans. (*Id*. ¶ 9.) The November 24, 2009 addendum amended the severance provision to entitle Burkhart to two times, instead of one times, his base salary upon termination. (*Id*. ¶ 10.) The November 24, 2009 addendum also added a "retention bonus," to be paid to Burkhart in the event he was terminated "without Cause." (*Id*.)

The Compensation Agreements define "Cause" as termination due to (i) felony conviction or (ii) misuse of alcohol or drugs which interferes with employment performance. (*Id*. ¶ 12.) Burkhart alleges that he is entitled to the payments set forth above because ASC terminated his employment without cause in September 2015 after the Federal Bureau of Investigation executed search warrants on Burkhart's principal residence and primary office at ASC. (*Id*. ¶¶ 13-14.) At the time of his termination in September 2015, Burkhart had not yet been convicted of a felony and faced no complaints of substance abuse. (*Id*.) ASC has not paid Burkhart severance funds since terminating his employment. (*Id*. at ¶ 15.)

## **LEGAL STANDARD**

A motion to dismiss a counterclaim is subject to the same standard as a motion to dismiss a complaint. *Liberty Mut. Ins. Com-Pany v. Lewis*, No. 1:18-cv-01464-JRS-DLP, 2018 WL 6181394, at *1 (S.D. Ind. Nov. 26, 2018). To survive a motion to dismiss, a counterclaim "must

contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court must accept "factual matter" in the counterclaim, it need not accept as true "bald allegations" or "legal conclusions." *Iqbal*, 556 U.S. at 678, 681; *Twombly*, 550 U.S. at 555. When considering a motion to dismiss, "a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

## ARGUMENT

Burkhart and his co-defendants pleaded guilty to engaging in a conspiracy to commit mail and wire fraud in order to steal millions of dollars from ASC and keep the money for themselves. Because this Court may take judicial notice of the guilty pleas and related admissions in the Criminal Case, those pleas and admissions are properly considered in deciding this Motion to Dismiss. With those facts in the calculus, Burkhart's claims must be dismissed because his wrongful conduct renders his claims barred by the unclean hands doctrine. Moreover, his breach of contract claim must be dismissed because Burkhart breached his agreements with ASC, thus excusing any subsequent non-performance by ASC. Finally, Burkhart's unjust enrichment claim must be dismissed because he alleges the existence of a valid and enforceable contract.

**I.     The Undisputed Facts From the Criminal Proceedings Are Properly Subject to Judicial Notice.**

A court may take judicial notice of any "fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." F.R.E. 201(b). Therefore, a district court may take judicial notice of public records and by doing so does not convert a motion to dismiss into one for summary

judgment. *See, e.g.*, *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). Among the public records properly subject to judicial notice are a court's own documents and records, as well as proceedings in other federal and state courts. *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983).

It follows that a district court may, therefore, take judicial notice of a guilty plea in a criminal proceeding and the factual admissions associated therewith. *See, e.g.*, *Scholes v. Lehmann*, 56 F.3d 750, 762 (7th Cir. 1995) (stating that district court properly took judicial notice of facts contained in plea agreement); *Ocasio v. Turner*, 19 F. Supp. 3d 841, 845-46 (N.D. Ind. 2014) (taking judicial notice of guilty plea in underlying state-court criminal case); *A.B. ex rel. Kehoe v. Hous. Auth. of S. Bend*, No. 3:11 CV 163 PPS, 2011 WL 4005987, at *2 (N.D. Ind. Sept. 8, 2011) (taking judicial notice of guilty plea in state court and noting that the court may do so "without converting a Rule 12(b)(6) motion into one for summary judgment"); *Stewart v. Anderson*, No. 00 C 3056, 2000 WL 1741885, at *3 (N.D. Ill. Nov. 24, 2000) (taking judicial notice of a state-court guilty plea); *see also Crandall v. City of Chicago*, No. 00 C 14, 2000 WL 705987, at *4 (N.D. Ill. May 22, 2000) (where there was "no written plea agreement and no stipulation to any facts to support the guilty plea," the court could take judicial notice of the facts in the complaint, because those "are the facts which plaintiff has admitted").

Guilty pleas and related admissions are properly subject to judicial notice in a subsequent civil case because "[i]n this Circuit, a criminal conviction based upon a guilty plea conclusively establishes for purposes of a subsequent civil proceeding that the defendant engaged in the criminal act for which he was convicted." *See Appley v. West*, 832 F.2d 1021, 1026 (7th Cir. 1987) (holding that where the defendant "pleaded guilty to the two counts of mail fraud, he effectively pleaded guilty to all of the material facts alleged in the indictment on those two

4

counts," and therefore those facts could be established in the subsequent civil action "through the use of collateral estoppel"); *see also Scholes*, 56 F.3d at 762 ("Admissions – in a guilty plea, as elsewhere – are admissions; they bind a party; and the veracity safeguards surrounding a plea agreement that is accepted as the basis for a guilty plea and resulting conviction actually exceed those surrounding a deposition.") (citation omitted). Furthermore, in addition to the guilty plea itself, "[a]dmissions in a guilty-plea hearing, being judicial admissions, bind the defendant in subsequent proceedings." *Ocasio*, 19 F. Supp. 3d at 845 (quoting *United States v. Evans*, 575 F.3d 766, 770 (7th Cir. 2009)).

In other words, the admissions associated with a guilty plea are "not subject to reasonable dispute" in a subsequent civil proceeding. F.R.E. 201(b). Accordingly, Burkhart's guilty plea and related admissions – as well as those of his co-defendants Daniel Benson, Steven Ganote, and Joshua Burkhart – are subject to judicial notice and may be considered by the Court in conjunction with this Motion to Dismiss.

## II. Burkhart's Claims Are Barred by the Unclean Hands Doctrine.

Burkhart's counterclaims for breach of contract and unjust enrichment against ASC are barred by the unclean hands doctrine. Unclean hands is an equitable doctrine which requires "that one who seeks relief in a court of equity must be free of wrongdoing in the matter before the court." *Barrett v. Grow*, No. 1:07-cv-486-LJM-JMS, 2008 WL 4911206, at *5 (S.D. Ind. Nov. 13, 2008); *see also Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814-15 (1945) (the unclean hands doctrine requires that the plaintiff "shall have acted fairly and without fraud or deceit as to the controversy in issue"). Although unclean hands is an equitable doctrine, it is a defense to both legal and equitable claims. *Maltz v. Sax*, 134 F.2d 2, 5 (7th Cir. 1943) ("As to unclean hands: the maxims of equity are available as defenses in actions at law.");

*Columbus Reg'l Hosp. v. Patriot Med. Techs., Inc.*, No. IP 01-1404-C K/H, 2004 WL 392938, at *7 (S.D. Ind. Feb. 11, 2004) (rejecting argument that unclean hands in inapplicable to actions for damages, and holding that a party may assert all legal and equitable defenses available to it).

The unclean hands doctrine bars a plaintiff's claim where: (1) the plaintiff's misconduct was intentional, (2) the plaintiff's wrongdoing concerned the defendant and had an immediate and necessary relation to the matter in litigation, and (3) the defendant was injured by the plaintiff's conduct. *Barrett*, 2008 WL 4911206, at *5. In assessing these requirements, courts are vested with broad "discretion in refusing to aid the unclean litigant" and are not "bound by formula or restrained by any limitation" that would interfere with their discretion. *Precision Instrument*, 324 U.S. at 815.

In this case, the judicially noticeable facts establish that the unclean hands doctrine applies. First, Burkhart's misconduct was intentional. He pleaded guilty to knowingly engaging in a conspiracy to commit mail, wire, and healthcare fraud "with an *intent* to advance the conspiracy." *See Excerpts from Transcript of Change of Plea Hearing*, Criminal Case Dkt. 180, at 12:12-18, attached hereto as Exhibit A (emphasis added).

Second, Burkhart's wrongful conduct is immediately and necessarily related to his claims. Each of his claims, just like his wrongful conduct, arises out of his employment with ASC. The factual basis for Burkhart's guilty plea included the fact that Burkhart was ASC's CEO, and that as CEO, "he was empowered to select third-party vendors, negotiate and execute agreements with them on behalf of ASC, and cause payments to be drawn on ASC's bank account." *Id.* at 29:24-30:5. Burkhart misused his position as CEO of ASC to cause ASC's inflated and improper payments to vendors in which Burkhart owned an interest, including designating certain vendors as "preferred ASC vendors, which caused ASC employees to recommend these vendors to ASC

6

residents for various health care services." *Id.* at 31:22-32:4. Put simply, as the Court found at Burkhart's sentencing hearing, "Mr. Burkhart used his position as CEO to steal millions of dollars." *Excerpts from Transcript of Sentencing Hearing*, Criminal Case Dkt. 306, at 200:14-15, attached hereto as Exhibit B; *see also id.* at 203:14-15 (finding that Burkhart "used his position of trust to facilitate the fraud"). Therefore, Burkhart's misconduct is immediately and necessarily related to his claims because they both arise out of his employment with ASC.

Third, there is no question that ASC was injured as a result of Burkhart's and his co-defendants' frauds. ASC was a victim of the crimes to which Burkhart pleaded guilty, and ASC was entitled to restitution based on Burkhart's vendor frauds. (*See, e.g.*, Criminal Case Dkt. 1 (Indictment); Criminal Case Dkt. 287 (Judgment as to James Burkhart)); *see also* Ex. B. at 161:1-2 (finding that Burkhart engaged in "an elaborate effort over a period of at least six years to steal from ASC").

In short, Burkhart attempts to reap the benefits of his former employment relationship with ASC, despite the fact that he used that very employment relationship to defraud ASC out of millions of dollars. The unclean hands doctrine bars this conduct.

### III. Burkhart's Breach of Contract Claim Fails Because He Materially Breached the Contracts at Issue.

Burkhart's breach of contract claim also fails because he breached the implied covenant of good faith and fair dealing that he owed to ASC. Having materially breached his agreements, he cannot seek redress for any alleged non-performance by ASC.

#### A. Burkhart Breached His Duty of Good Faith and Fair Dealing to ASC.

Through his crimes, Burkhart knowingly breached the implied covenant of good faith and fair dealing imposed by his employment agreements with ASC. In Indiana, the covenant of good faith and fair dealing is implied in all employment agreements. *See Coates v. Heat Wagons, Inc.*,

7

942 N.E.2d 905, 918 (Ind. Ct. App. 2011) (noting that "implied covenants of good faith and fair dealing apply only to insurance and employment contracts or where contracts are ambiguous as to the application of the covenants or expressly impose them"). "Among the duties imposed by the covenants of good faith and fair dealing in an employment relationship is that of loyalty to the employer and avoiding self-serving conduct." *Id.* Evidence of fraud and misrepresentation clearly demonstrate a lack of good faith and fair dealing. *Geiger v. Ryan's Family Steak Houses, Inc.*, 134 F. Supp. 2d 985, 999 (S.D. Ind. 2001) (finding employer could not benefit from enforcing arbitration agreements where plaintiffs sufficiently alleged fraud in connection to agreements).

Burkhart's guilty plea and related admissions establish that he breached his duty of good faith and fair dealing. As explained above, he admitted to abusing his position of power within ASC by engaging in a conspiracy to commit mail and wire fraud, harming ASC as a result. *See* Ex. A, at 27:21-33:18. As Burkhart himself stated succinctly at his sentencing hearing, he "put [him]self before [his] duties as CEO, and that's wrong." *See* Ex. B at 169:20-21. The Court likewise acknowledged that ASC put its trust in Burkhart, and "that is exactly what makes these offenses so very awful, is the violation of trust." *Id.* at 197:20-23; *see also id.* at 199:3-4 ("The harm that [Burkhart] caused the Jackson family is egregious. The Jacksons trusted this man.")

Burkhart attempts to plead around his duty of good faith and fair dealing by characterizing his agreements with ASC as "Compensation Agreements" and asserting that he never entered into an "employment agreement" with ASC. (Dkt. 83 ¶ 8.) This Court need not accept Burkhart's legal conclusion that his agreements were not "employment agreements" that imposed a duty of good faith and fair dealing. *Iqbal*, 556 U.S. at 678, 681; *Twombly*, 550 U.S. at 555. The legal distinction Burkhart attempts to draw is a distinction without a difference. Under Indiana law, a "compensation contract" that "formalize[s] the employment relationship … beyond the normal

8

employment at will situation" incorporates the covenant of good faith and fair dealing. *Weiser v. Godby Bros.*, 659 N.E.2d 237, 239 (Ind. Ct. App. 1995). For example, in *Coates*, the Indiana Court of Appeals rejected the plaintiff's argument that because he and his employer had an at-will relationship, the duties of good faith and fair dealing did not apply to his written agreements with his employer. 942 N.E.2d at 918-19. The court reasoned that the parties "did not have a strictly traditional at-will employment contract" because the plaintiff "was afforded certain financial protections in the event of discharge from employment without cause." *Id.* at 919. The court held that the fact that the defendant could fire the plaintiff without cause and that plaintiff could leave his employment without cause was inconsequential. *Id.* These facts "d[id] not so muddy the waters as to relieve [plaintiff] of the duties imposed upon employees in at-will contracts or employment contracts in general." *Id.*

Just like the plaintiff in *Coates*, Burkhart's claim rests upon agreements that allegedly "afforded certain financial protections in the event of discharge from employment without cause." *Id.* at 919; (Dkt. 83 ¶¶ 9-14.) Therefore, regardless of how Burkhart characterizes his agreements with ASC, they incorporated a duty of good faith and fair dealing. Because the facts subject to judicial notice demonstrate that Burkhart breached that duty, his breach of contract claim is barred.[3]

---

[3] Notably, Burkhart also breached the express obligations of his agreements, at least with respect to the retention bonus he seeks to recover. The November 24, 2009 addendum to Burkhart's Compensation Agreements, attached hereto as Exhibit C, expressly states: "We desire that … you continue to devote your best efforts and be fully committed to the success of ASC and its affiliates for several more years." *Id.* at 1. The agreement states that the retention bonus was being offered to Burkhart "in order to provide [Burkhart] with an additional incentive to continue to work for the success of our companies…" *Id.* Burkhart breached these express provisions by engaging in the conduct described herein. The Court may consider Exhibit C in ruling on this Motion to Dismiss because Burkhart refers to it in his counterclaim and it is "central to his claim." *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

9

### B. Burkhart's Breach Excuses ASC's Alleged Non-Performance.

"A party first guilty of a material breach of contract may not maintain an action against the other party or seek to enforce the contract against the other party should that party subsequently breach the contract." *Liocci v. Cardinal Assocs., Inc.*, 492 N.E.2d 48, 53 (Ind. Ct. App. 1986). *See also Felker v. Sw. Emergency Med. Serv., Inc.*, 521 F. Supp. 2d 857, 869 (S.D. Ind. 2007) ("As a rule, a party first guilty of a substantial or material breach of contract cannot complain if the other party thereafter refuses to perform.") (internal quotation omitted). Burkhart's breaches described herein constitute a material breach. *Coates*, 942 N.E.2d at 919 (affirming finding that plaintiff committed the first material breach of the contract where he breached his duty of good faith and fair dealing); *see also Van Bibber Homes Sales v. Marlow*, 778 N.E.2d 852, 860 (Ind. Ct. App. 2002) (a material breach is one that goes to the heart of the contract); *Union Miniere, S.A. v. Parday Corp.*, 521 N.E.2d 700, 703 (Ind. Ct. App. 1988) ("A serious violation of the agent's duty of loyalty or of obedience constitutes an entire breach of contract.").

Burkhart relinquished any contractual rights he may have had under the Compensation Agreements when he decided to perpetrate extensive frauds against ASC. He materially breached his obligations to the Company.

### IV. Burkhart's Unjust Enrichment Claim Fails Because He Alleges the Existence of Valid and Enforceable Contracts.

Burkhart fails to state a viable unjust enrichment claim because he relies on express contracts to support his claim. It is well-established under Indiana law that unjust enrichment is an equitable remedy that permits recovery only in the *absence* of an express contract. *CoMentis, Inc. v. Purdue Res. Found.*, 765 F. Supp. 2d 1092, 1101-02 (N.D. Ind. 2011). "[W]here an express contract governs the parties' behavior, a claim for unjust enrichment is not cognizable." *Id.*; *see also Eagle Aircraft, Inc. v. Trojnar*, 983 N.E.2d 648, 660 (Ind. Ct. App. 2013) ("Here, a contract

10

controlled the relationship between Trojnar and Eagle Aircraft, and, on this basis alone, the equitable doctrine of unjust enrichment does not apply.").

Burkhart alleges that "[t]he Compensation Agreements constitute fully binding and enforceable agreements, supported by mutual consideration." (Dkt. 83 ¶ 19.) Nowhere does he allege that the Compensation Agreements were invalid or unenforceable, such that he would be entitled to seek an equitable remedy. (Dkt. 83 ¶¶ 22-25.) Accordingly, his unjust enrichment claim should be dismissed.

## CONCLUSION

For the reasons set forth above, ASC respectfully requests that the Court enter an Order dismissing Burkhart's Counterclaims in their entirety with prejudice.

Dated: January 22, 2019

Respectfully Submitted,

/s/ Valarie Hays
Ronald S. Safer (*pro hac vice*)
Matthew C. Crowl (*pro hac vice*)
Valarie Hays
Kelly M. Warner (*pro hac vice*)
Laura Kleinman (*pro hac vice*)
Eli J. Litoff (*pro hac vice*)
Riley Safer Holmes & Cancila LLP
Three First National Plaza
70 W. Madison, Suite 2900
Chicago, Illinois 60602
312-471-8700
rsafer@rshc-law.com
mcrowl@rshc-law.com
vhays@rshc-law.com
kwarner@rshc-law.com
lkleinman@rshc-law.com
elitoff@rshc-law.com

*Attorneys for American Senior Communities, L.L.C.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2019, I caused the foregoing document to be filed using the Court's electronic filing system, which will send notice of this filing to all counsel of record. Additionally, I will cause notice of this filing to be sent via U.S. Mail, postage prepaid, to Joshua Burkhart, Circle Consulting LLC, and Heartland Flag LLC at the following address:

Joshua Burkhart
10124 Cheswick Lane
Fishers, IN 46037

/s/ *Eli J. Litoff*
Eli J. Litoff
Riley Safer Holmes & Cancila LLP
70 W. Madison, Suite 2900
Chicago, Illinois 60602
312-471-8700
elitoff@rshc-law.com

*Attorney for American Senior Communities, L.L.C.*