**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| AMERICAN SENIOR COMMUNITIES, L.L.C., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 1:17-cv-3273-TWP-DML |
| BURKHART et al., | ) ) | |
| Defendants. | ) ) | |

**NONPARTY ROB NEW'S MEMORANDUM IN SUPPORT OF MOTION TO QUASH
THIRD-PARTY SUBPOENAS AND MOTION FOR PROTECTIVE ORDER**

**TABLE OF CONTENTS**

FACTS ...........................................................................................................................1

I.   Procedural Background...........................................................................................1

II.  The subpoenas........................................................................................................2

     A.  Requests 1 and 2 of Subpoena to Mr. New........................................................2

     B.  Requests 3 and 4 in Subpoena to Mr. New........................................................4

     C.  Subpoenas to First Federal and Thomas Mills...................................................4

III. Negotiations over the Subpoenas............................................................................6

     A.  ASC proposes non-exclusive search terms .........................................................6

     B.  Mr. New suggests compromise............................................................................8

     C.  ASC rejects compromise without providing its own compromise ....................8

     D.  ASC finally proposes compromise but it does not narrow subpoenas...............9

ARGUMENT ..............................................................................................................11

I.   The Subpoenas Should be Quashed Because Mr. New Paid for a Release from ASC's Demands. ..................................................................................................11

II.  The Subpoenas Are Overbroad and Burdensome and Demand Production of Sensitive and Confidential Information.................................................................12

     A.  Requests 1 and 2 of the Subpoena to Mr. New.................................................13

     B.  The First Federal Subpoena and Requests 3 and 4 of the Subpoena to Mr. New.............15

CONCLUSION............................................................................................................17

## TABLE OF AUTHORITIES

Page(s)

CASES

*Concord Boat Corp. v. Brunswick Corp.*,
    169 F.R.D. 44 (S.D.N.Y. 1996) ................................................................13

*Dart Indus. Co. v. Westwood Chem. Co.*,
    649 F.2d 646 (9th Cir. 1980) ...........................................................11, 12

*Equinox Gallery Limited v. Dorfman*,
    2018 WL 637764 (S.D.N.Y. Jan. 22, 2018) .............................................16

*Finch v. City of Indianapolis*,
    No. 1:08-CV-0432, 2011 WL 2516242 (S.D. Ind. June 23, 2011)...........16

*Henry v. Morgan's Hotel Grp., Inc.*,
    No. 15-CV-1789 (ER)(JLC), 2016 WL 303114 (S.D.N.Y. Jan. 25, 2016) ...........16

*Jump v. Montgomery Cty.*,
    No. 13-CV-3084, 2015 WL 4999673 (C.D. Ill. Aug. 21, 2015)...................1, 12, 15

*Pioneer Hi-Bred Intern. Inc. v. Holden's Foundation Seeds, Inc.*,
    105 F.R.D. 76 (N.D. Ind. Feb. 15, 1985) ................................................13

*Raap v. Brier & Thorn, Inc.*,
    No. 17-MC-3001, 2017 WL 2462823 (C.D. Ill. July 7, 2017) .................16

*Schmulovich v. 1161 Rt. 9 LLC*,
    No. CIV.A.07-597 FLW, 2008 WL 4572537 (D.N.J. Oct. 14, 2008) ...................16

*Tresona Multimedia, LLC v. Legg*,
    No. 15 C 4834, 2015 WL 4911093 (N.D. Ill. Aug. 17, 2015)..................13

*Ultimate Timing, L.L.C. v. Simms*,
    No. 3:09-MC-6-RLY-WGH, 2010 WL 378436 (S.D. Ind. Feb. 1, 2010) .............16

*Uppal v. Rosalind Franklin Univ. of Med. & Sci.*,
    124 F. Supp. 3d 811 (N.D. Ill. 2015) .....................................................13, 15

OTHER AUTHORITIES

Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2459 (3d ed.) ........................................1

Fed. R. Civ. P. 26.............................................................................................1, 13, 15

Fed. R. Civ. P. 45.......................................................................................................................1, 12

Nonparty Rob New ("Mr. New") requests that this Court enter a protective order pursuant to Fed. R. Civ. P. 26(c) and 45(d)(3) forbidding in whole or in part the discovery sought by subpoenas that Plaintiff American Senior Communities, LLC ("ASC") issued to him, to First Federal Savings Bank ("First Federal"), and to Thomas Mills,[1] and quashing those subpoenas. As described in more detail below, Mr. New entered into a Confidential Settlement Agreement with ASC that precludes ASC from demanding documents from him. Moreover, the subpoenas amount to a hopelessly overbroad fishing expedition into materials that have no articulated relevance to this case and impinge on Mr. New's substantial privacy interests.

## FACTS

### I.      Procedural Background

Mr. New is a former Indianapolis resident who owns a range of Indiana-based businesses and real estate investments. He does business in the health care space and has been a long-term business partner, as well as competitor, of ASC and HHC.[2] ASC acknowledges that Mr. New has done "tens of millions of dollars" worth of business with ASC over multiple years. (Tr. May 15, 2019, Ex. 1 at 6 (Dkt. 151).) Mr. Mills has a banking relationship with First Federal, and Mr. Mills is the banker at First Federal who handles Mr. New's accounts. (*Id.* at 8.)

---

[1] A third party may move to quash a subpoena or for a protective order when the subpoena implicates that third party's privacy interests. *Jump v. Montgomery Cty.*, No. 13-CV-3084, 2015 WL 4999673, at *1 (C.D. Ill. Aug. 21, 2015). "A person needs only a minimal privacy interest to establish standing to move to quash a subpoena." *Id.* *See also* Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2459 (3d ed.) (party who claims personal right or privilege has standing to quash subpoena). Here, Mr. New has a personal interest in the privacy of his financial and commercial information, his communications with his bank and banker, and his financial information that he has disclosed to his bank, as well as his commercial and financial records over a ten-year period.

[2] That Mr. New owned businesses that provided goods and services to ASC is not in dispute, although Mr. New objects to ASC's characterizations of those businesses as involving anything sinister or improper. (*See, e.g.,* Tr. May 15, 2019, Ex. 1 at 6-8 (Dkt. 151).) During the initial conference with the Court concerning this discovery dispute, counsel for ASC made a number of outlandish allegations about Mr. New, such as an accusation that he had transported a U-Haul truck with a crate full of cash for Mr. Burkhart's benefit. (*Id.* at 7.) Mr. New does not know the origin of these accusations, nor did ASC's counsel cite any evidence for them, and Mr. New trusts they will not be considered by the Court.

On September 15, 2017, ASC sued its CEO Jim Burkhart and various other individuals and entities, alleging a racketeering conspiracy covering the time period 2009 to September 15, 2015.  Dkt. 1.

Mr. New was not named as a defendant in this lawsuit.  Rather, he bargained not to be involved — in October 2017, Mr. New and ASC entered into a Confidential Settlement Agreement whereby ASC released "any and all claims, demands, damages, actions, causes of action, suits, costs (including court costs), expenses, attorneys' fees, judgments, sums of money or claims of any kind or nature whatsoever" against Mr. New and his companies.  (Sealed Ex. 2.[3])  The settlement recites that Mr. New denies all of ASC's allegations against him and denies any liability.  (*Id.*)

Notwithstanding the settlement, seventeen months later, on March 5, 2019, ASC issued a broad subpoena to Mr. New, dragging him back into the proceedings he had paid to avoid.  (Ex. 3, 3/5/19 Subpoena to New.)  ASC also issued subpoenas to nonparties First Federal and Mr. Mills seeking documents relating to Mr. New.  (Exs. 4-5, 3/5/19 Subpoenas to First Federal and Mills.)

II.      **The subpoenas.**

A.      **Requests 1 and 2 of Subpoena to Mr. New**

The subpoena addressed to Mr. New (Ex. 3) demands four categories of documents.  The first two of those requests demand broad arrays of documents and communications with or relating to a long list of businesses and individuals, with no substantive limitation.  They are quoted below in their entirety in order to illustrate their breadth.

*Request Number 1* demands production of:

---

[3] Mr. New is filing the Confidential Settlement Agreement under seal pursuant to the Court's directions at the May 15, 2019 status conference and subsequent minute order (Dkt. 148).

"Any and all communications, including but not limited to emails, letters, and text messages, between you and any of the following individuals between January 1, 2009 and the present that in any way relate to, reference, reflect, or evidence any business transaction involving, directly or indirectly, American Senior Communities ('ASC'), ASC's owners, any entity owned or controlled by ASC's owners, or the Health and Hospital Corporation of Marion County ('HHC'):

> a.  James G. Burkhart;
> b.  Daniel Benson;
> c.  Steven Ganote;
> d.  Joshua Burkhart;
> e.  Roger Werner;
> f.  Jeffrey Robbins;
> g.  Walter Messersmith;
> h.  Mark Derwent, Daniel Booth, or any representative of Omega Healthcare Investors;
> i.  David Russ, Devin Battison, or any representative of Formation Capital;
> j.  Bill Smith;
> k.  Daniel Houston;
> l.  Eric Rothner;
> m.  Avi Rothner;
> n.  Gretchen Zoeller;
> o.  Pamela Monson;
> p.  Dr. Daniel Hurley; and
> q.  Thomas Mills.

*Request Number* 2, which overlaps with the first request, demands production of:

"Any and all documents and communications related to any business transaction involving some combination of the following entities/individuals, from January 1, 2009 to the present:

> a.  ASC, including its owners and related entities;
> b.  HHC;
> c.  ACCD LLC d/b/a Crusader Healthcare Services III;
> d.  JACCD LLC d/b/a Crusader IV;
> e.  105214 Investments LLC d/b/a Crusader Healthcare Services;
> f.  105210 Investments LLC d/b/a Crusader Healthcare Services II;
> g.  Omega Healthcare Investors;
> h.  Formation Capital;
> i.  Bill Smith and/or Vantage Medical;
> j.  Daniel Houston and/or Houston Companies;
> k.  Gentiva; and
> l.  Eric Rothner, Avi Rothner, and/or any entities owned by the Rothners."

Given that Mr. New has historically had extensive business relationships with ASC and HHC, and continues to do business with them, these requests potentially cover an extensive range of material.  Moreover, the list of individuals with whom communications are sought is far-reaching, including even Mr. New's former lawyer (Mr. Robbins), his banker (Mr. Mills), and his former employees (Mr. Ganote and Mr. Messersmith).

### B.      Requests 3 and 4 in Subpoena to Mr. New

The third and fourth requests in the subpoena to Mr. New demand banking and financial records.  Request number 3 requires the production of:

> "Any and all documents, including but not limited to bank records, that in any way relate to, reference, reflect, or evidence money paid by James Burkhart or his family members or agents or any entity in which Burkhart had an ownership or financial interest, to you, your family members or your agents, or any entity in which you had an ownership or financial interest, from January 1, 2009 to the present."

Request number 4 requires the production of:

> "Any and all documents, including but not limited to bank records, that in any way relate to, reference, reflect, or evidence money paid by you, your family members or your agents or any entity in which you had an ownership or financial interest, to James Burkhart, his relatives or agents or any entity in which Burkhart had an ownership or financial interest, from January 1, 2009 to the present."

Taken literally, these demands require production of any bank statements or other banker communications that have any reference to any transaction between Mr. New or one of Mr. New's businesses and Mr. Burkhart or one of his businesses.  Given the long-standing business relationship between Mr. New and ASC and its CEO Mr. Burkhart, these two requests are extremely expansive.

### C.      Subpoenas to First Federal and Thomas Mills

The subpoenas to First Federal and Mr. Mills (Exs. 4 and 5) seek virtually all information relating to Rob New in their possession, including financial records as well as communications about business and financial matters.  We understand that Mr. Mills does not have responsive

materials in his individual capacity (Ex. 6, Mills Subpoena Objections), so in this motion we

focus on the subpoena to First Federal.[4]   As to First Federal, the requests essentially cover all

documents relating to Mr. New, without limitation:[5]

> "1. Any and all files, documents, and records in your possession, custody, or control
> related to James G. Burkhart, Robert New [sic: Rob], or any entity in which James G.
> Burkhart or Robert [sic] New had an ownership or financial interest, from January 1,
> 2009 to the present, including but not limited to the following entities:
>
> > a.  American Senior Care, LLC
> > b.  MMAJ, LLC
> > c.  Truly, LLC
> > d.  Driver Sandwedge, LLC
> > e.  ACCD LLC d/b/a Crusader Healthcare Services III
> > f.  JACCD LLC d/b/a Crusader IV
> > g.  15210 LLC d/b/a Crusader Healthcare Services II
> > h.  105214 LLC d/b/a Crusader Healthcare Services
>
> This Request includes but is not limited to complete monthly statements for any accounts
> held or controlled by Burkhart, New or related entities, as well as documentation related
> to any loans, lines of credit, letters of credit, or escrow funds related to Burkhart, New or
> related entities."
>
> "2.      Any and all communications between Thomas Mills or any representative of First
> Federal Savings Bank and any of the following individuals:  James G. Burkhart, Daniel
> Benson, Steven Ganote, Joshua Burkhart, Roger Werner, and Robert [sic] New, including
> but not limited to emails, letters, and text messages between January 1, 2009 and the
> present."

These requests would implicate over a decade of bank statements and other records for Mr. New

personally, as well as for any business he owns or has a financial interest in.  Materials shared

with a bank or banker can include sensitive documents such as tax returns, credit history, assets,

liabilities, and other private information.

---

[4] If it turns out that Mr. Mills indeed has responsive materials, then Mr. New asserts the same objections as to those
materials that he does as to the subpoena to First Federal.
[5] To the extent the subpoena demands materials unrelated to Mr. New, such as financial records relating to accounts
owned solely by Mr. Burkhart, Mr. New takes no position.

III.    **Negotiations over the Subpoenas**

As described below, Mr. New already bargained for and received a release from ASC that relieves him of any obligation to respond to the subpoena or from having his materials produced indirectly through First Federal.  That should end the inquiry.  However, Mr. New, through his counsel, informed ASC that notwithstanding the release, he would be willing to produce a defined set of documents targeted to ASC's real needs in the litigation in exchange for an agreement that ASC would not seek additional documents beyond that set.  (Ex. 7, 3/29-4/15/19 email chain, at 4/5/2019 email.)  Over the course of two months of negotiations, Mr. New continued that offer.  The only areas that ASC articulated as necessitating its subpoenas were identification of Mr. Burkhart's assets and a better understanding of the put transactions.  (*E.g.*, Ex. 7 at 4/12/19 and 4/15/19 emails; Tr. May 15, 2019, Ex. 1, at 5, 9 (Dkt. 151).)  However, ASC's demands were not limited to those areas.  Indeed, ASC initially refused to consider any compromise that did not include an open-ended ability by ASC to seek additional documents. (*See* Ex. 7 at 4/2/2019 (9:24 A.M.) and 4/2/2019 (9:17 P.M.) emails.)  When ASC finally did suggest a "compromise" that was limited to a defined universe of documents, that compromise was hardly any narrower than the subpoenas themselves, and indeed in some respects was even broader.  (Ex. 7 at 4/8/19 email and 4/11/2019 emails.)  As the Court has expressed an interest in knowing the parties' efforts at a compromise, and to convey the extent of ASC's overreaching, we summarize those discussions in more detail below.

A.    **ASC proposes non-exclusive search terms**

In initial calls, counsel for Mr. New made clear Mr. New's position that in light of the release, he was not obligated to produce documents.  (*See* Ex. 7 at 4/01/2019 email.)  Mr. New's counsel further made clear that Mr. New was nonetheless willing to provide a limited production targeted to specific gaps in ASC's understanding of the facts, provided ASC would not seek

6

additional materials beyond that limited production.  (*Id.*)  ASC's counsel offered to provide a set of search terms as a basis for discussion.  (*Id.*)

When ASC provided those search terms, they initially appeared to represent some progress.  The terms, while still broad, were targeted to the "put" transactions described in paragraphs 187-211 of the Complaint (Dkt. 1), and the request for financial records sought merely the *identification* of all bank accounts, which ASC said it could use to "narrow in on the particular accounts that involved some business activity with Jim Burkhart."  (Ex. 7 at 3/29/19 email.)

Accordingly, Mr. New's counsel said that Mr. New would be willing to forego his objection based on the release, and provide put-related documents in a compromise production, on the condition that ASC agree this would be the total scope of the production.  (Ex. 7 at 4/1/19 email.)  But ASC's counsel rejected this compromise, stating that unspecified additional documents would be needed as well.  (Ex. 7 at 4/2/19 (9:24 A.M.) email.)  In other words, ASC wanted Mr. New to forego his objection based on the release, provide all documents responsive to a set of search terms related to the puts, and identify all of his bank accounts, without receiving anything in return – ASC would retain the right to seek unspecified additional documents.  (*Id.*)

Mr. New's counsel continued to indicate a willingness to compromise, but stated that he could not discuss any compromise without ASC providing a targeted list of search terms representing the entirety of the compromise.  (Ex. 7 at 4/2/19 (9:17 P.M.) email.)

ASC's April 3 response continued to avoid making any kind of universal proposal.  As to financial records, ASC merely stated that ASC could not "agree to anything short of all payments between Mr. New and Mr. Burkhart (and his family members and agents) in which they held an

ownership interest, either directly or indirectly. . . ."  And although it said that it would be willing to narrow the email correspondence with search terms, it did not identify what those search terms would be.  Nonetheless, it asked for a response, noting a "tight timeline," so that ASC could inform the Court if the dispute could not be resolved.  (Ex. 7 at 4/3/19 email.)

### B.  Mr. New suggests compromise

Remaining in the dark as to what ASC was really seeking at that point, Mr. New made his own compromise offer.   Mr. New offered to (1) produce responsive, non-privileged documents from the time period identified as relevant in paragraph 1 of ASC's complaint that were responsive to the search terms provided by ASC on March 29, (2) produce other corporate documents relevant to the put transactions, and (3) produce a "list of payments from Rob New, New's family, and/or entities he has an ownership interest in to Jim Burkhart, Burkhart's family, and/or entities he has an ownership interest in, to the extent we can identify them after a reasonable review of Mr. New's and his businesses' bank records.  The list will identify the payer, payor, date and amount."  (Ex. 7 at 4/5/19 email.)  The production would be conditioned on a suitable attorneys'-eyes-only protective order and ASC foregoing any effort to seek additional documents from Mr. New, First Federal or Mr. Mills.  (*Id.*)

### C.  ASC rejects compromise without providing its own compromise

ASC rejected this effort at a compromise.  Once again, ASC did not provide a clear counter-proposal.  Instead, ASC:

- Rejected the concept of an attorneys'-eyes-only protective order;

- Stated that it needed not only a list of payments but also the source documents; and

- Said that in addition to the search terms related to the puts, it would need to provide a second, undefined set of search terms.

Notwithstanding its failure once again to identify all of the documents it sought, ASC requested an answer by the following day as to whether Mr. New would agree to the "compromise." (Ex. 7 at 4/8/19 email.)

Mr. New's counsel responded that without knowing the full extent of the documents ASC's counsel was seeking, Mr. New could not agree to the proposal.  With respect to the financial records, Mr. New's counsel reiterated that he could not agree to produce bank records that have nothing to do with the complaint.  However, in a further effort to compromise, Mr. New said that if ASC would not agree to production of a *list* of payments, Mr. New could offer to produce any *excerpts* from the financial records that showed payments to Burkhart, with other information redacted.  (Ex. 7 at 4/10/19 email.)

> **D.**  **ASC finally proposes compromise but it does not narrow subpoenas**

On April 11, for the first time ASC identified the complete universe of what it would accept to resolve the dispute.  (Ex. 7 at 4/11/2019 email.)  The proposal, however, did not meaningfully narrow the subpoenas.  ASC's proposal:

- Rejected Mr. New's further proposal as to financial records, insisting on production of entire bank records even if only a small portion related to a payment to Mr. Burkhart;

- Continued to assert that the existing protective order, not an attorneys'-eyes-only protective order, would be sufficient;

- Insisted on a time frame from 2007 to the present, rather than the 2009-2015 time frame identified in the complaint; and

- Contained broad search terms that included, for instance, every communication that ever referred in any way to Burkhart, ASC, Steve Ganote, Jeff Robbins (Mr. New's former attorney), Mr. Mills, and various other businesses and individuals.  (*Id.*)  Thus, the search

terms were actually *broader* than the demands in the subpoena itself – which sought, for example, all communications with Burkhart relating to business with ASC but did not seek *every* communication with Burkhart.

At that point, it became clear – if it had not been clear already – that no compromise could be achieved.  Nonetheless, Mr. New's counsel responded to each element of the proposal and also suggested a call in a last effort to talk through the significant areas of disagreement.  Mr. New pointed out that the proposal went far beyond seeking information related to the only issues ASC had thus far articulated – identification of Mr. Burkhart's assets and a better understanding of the put transactions.  Mr. New's counsel also suggested alternative terms for a protective order.  (Ex. 7 at 4/12/19 email.)

ASC's counsel responded with another email reiterating ASC's prior position.  For instance, ASC's counsel made clear that it wanted "all unredacted bank records" showing any financial transactions responsive to ASC's requests and that ASC "believe[d] our search terms are appropriately narrow and targeted to obtaining relevant information."  ASC still did not identify which issues in the complaint those broad search terms were purportedly designed to elucidate.  (Ex. 7 at 4/15/19 email.)

Following that exchange, Mr. New, Mr. Mills, and First Federal served written subpoena objections.  (Exs. 6, 8-9.)  ASC responded to the objections by maintaining its insistence on broad discovery, asserting that its requests were "already targeted."  (Ex. 10, 5/2-5/6/19 email chain at 5/2/19 email.)  Additional emails between the parties after April 15 were directed primarily toward informing the Court of the existence and nature of the dispute rather than additional efforts toward a compromise.

## ARGUMENT

**I.      The Subpoenas Should be Quashed Because Mr. New Paid for a Release from ASC's Demands.**

ASC and Mr. New, both represented by counsel, reached and documented a resolution of ASC's purported claims against Mr. New.  The release is plainly designed to put the lawsuit behind Mr. New in exchange for the consideration he provided.  Thus the release is broad, covering "any and all *claims*, *demands*, damages, *actions*, causes of action, suits, costs (including court costs), expenses, attorneys' fees, judgments, sums of money or claims *of any kind or nature whatsoever*."  (Sealed Ex. 2 (Emphases added).)  ASC's subpoena unquestionably falls within this broad language.

Accordingly, ASC is barred from issuing subpoenas for Mr. New's personal information. *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 648 (9th Cir. 1980), is instructive.  In *Dart*, the company Westwood Chemical sued two of its former employees, alleging that they conspired with Dart and one of its subsidiaries to wrongfully terminate a sales agreement.  *Id.* Dart was not a defendant – it had paid Westwood a settlement amount in exchange for a general release agreement, which stated that Westwood "releases and discharges [Dart] of any rights it has or may hereafter have by reason of a conspiracy alleged by Westwood . . . ." *Id.*  Westwood later attempted to subpoena one of Dart's officers for both documents and deposition testimony. *Id.*  The district court quashed the subpoena and barred any further discovery against Dart based on the plain language of the release.  *Id.*  The Ninth Circuit affirmed the order, holding that Dart had "bought its peace. . . to be left alone totally free of any obligations to Westwood." *Id.* at 650. Westwood, a "sophisticated business organization[] represented by experienced counsel," could have negotiated a "narrow release limited solely to the release of Dart being named as a defendant in a conspiracy lawsuit." *Id.*  Because the release instead broadly released all claims

relating to the sales agreement termination, the trial judge properly barred later attempts to subject Dart to discovery.  *Id.*

Here, the language of the agreement is even more compelling.  In *Dart*, the release applied to "any rights."  *Id.* at 648.  Here, ASC released "any and all claims, demands, damages, actions, causes of action, suits, costs (including court costs), expenses, attorneys' fees, judgments, sums of money or claims of any kind or nature whatsoever" against Mr. New and his companies, in exchange for substantial consideration as described in Sealed Ex. 2.  A subpoena is, of course, at minimum a "demand" if not a "claim" or "action."  *See* Fed. R. Civ. P. 45(e)(1)(A) ("person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the *demand*") (emphasis added).  As in *Dart*, it was foreseeable at the time of settlement that ASC would proceed to litigation with non-settling parties.  As in *Dart*, had ASC wished to preserve its ability to take discovery from Mr. New in that future litigation, it needed to negotiate that right when it reached a settlement and release with Mr. New.  It did not, and the release as to "demands" was part of the deal.  The subpoenas should accordingly be quashed.  Moreover, this defense applies equally to the subpoena to First Federal, which after all is directed to Mr. New's records.  *See, e.g.*, *Jump*, 2015 WL 4999673, at *2 (telephone subscribers entitled to assert privacy interest in records subpoenaed from AT&T).

## II.    The Subpoenas Are Overbroad and Burdensome and Demand Production of Sensitive and Confidential Information.

As explained above, the release should end the inquiry.  If the Court disagrees, the subpoenas should alternatively be quashed, and a protective order issued, because the subpoenas are woefully overbroad, place a disproportionate burden on Mr. New, and demand production of financial and competitive information that is highly sensitive.  We address first the ASC-related

demands in requests numbers 1 and 2 of the subpoena to Mr. New, and second the banking and financial records demanded by the subpoena to First Federal and by requests numbers 3 and 4 of the subpoena to Mr. New.

### A.    Requests 1 and 2 of the Subpoena to Mr. New

Under Rule 26(b)(1), discovery must be "relevant" and "proportional to the needs of the case" and should be denied "if the burden or expense of the proposed discovery outweighs its likely benefit."  Courts are particularly careful to avoid imposing undue burdens on nonparties such as Mr. New, Mr. Mills, and First Federal.  *Uppal v. Rosalind Franklin Univ. of Med. & Sci.*, 124 F. Supp. 3d 811, 813 (N.D. Ill. 2015); *Tresona Multimedia, LLC v. Legg*, No. 15 C 4834, 2015 WL 4911093, at \*2-\*3 (N.D. Ill. Aug. 17, 2015).  Whether a subpoena imposes an undue burden "turns on 'such factors as relevance, the need of the party for the documents, the breadth of the document requests, the time period covered by it, the particularity with which the documents are described, and the burden imposed."  *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 53 (S.D.N.Y. 1996) (citation omitted); *Uppal*, 124 F. Supp. 3d at 813 (factors to consider include a "person's status as a nonparty, the relevance of the discovery sought, the subpoenaing party's need for the discovery, and the breadth of the request.").

Further, Rule 26(c)(1)(G) provides for protection of "a trade secret or other confidential research, development, or commercial information."  Under this provision, "it is well established that courts will usually resist ordering disclosure of trade secrets absent a clear showing of an immediate need," and courts "exercise their discretion to avoid unnecessary disclosure of such information, particularly where the action is between competitors."  *Pioneer Hi-Bred Intern. Inc. v. Holden's Foundation Seeds, Inc.*, 105 F.R.D. 76, 81-82 (N.D. Ind. Feb. 15, 1985) (citations omitted).  For instance, in *Pioneer*, the court barred discovery that could have permitted a

13

nonparty's "competitors [to] learn of its present supplier and customer relationships, which could be jeopardized if they were disclosed." *Id.* at 81.

Here, the subpoena to Mr. New represents a scattershot approach that makes no apparent attempt to target information relevant to the case. When ASC was asked to articulate why discovery from Mr. New was relevant to this litigation, ASC agreed that the following was an accurate summary: "(1) to obtain a more complete record of the "put" transactions referenced in the complaint, (2) to explore "Mr. Burkhart's improper financial gains to the detriment of ASC," and (3) to identify assets that Mr. Burkhart may have that may be used to satisfy a judgment or fund a settlement." Ex. 7 at 4/15/19 email. Thus, other than financial records (discussed below), ASC's articulated goal from these discovery demands is to learn more about the put transactions. But ASC's demands go far beyond information relating to the put transactions.

Instead, ASC has issued broad requests relating to Mr. New's business transactions and communications with a range of people over a range of topics over a decade. These requests are not at all relevant to ASC's racketeering case against Mr. Burkhart. They are a fishing expedition that will impose enormous, unjustified expenses on Mr. New. The demand for all New-related communications with at least 19 different individuals referencing "any business transaction" involving ASC or HHC in any way goes far beyond the six specific allegedly fraudulent broad schemes alleged in the complaint. (*See* Dkt. 1, Compl. ¶ 51.) As one example, Request No. 1 requests all of Mr. New's communications with his lawyer, Jeffrey Robbins, referencing any transactions with ASC or HHC — but neither Mr. New nor Mr. Robbins is even mentioned in the complaint. Mr. New has engaged in many transactions with ASC and HHC, most of which are not at issue. For example, most recently, Mr. New and ASC have disagreed about ASC's failure to pay rent on a parking lot rented from Mr. New (Ex. 7 at 4/5/19 email) —

just one minor example, out of many, of a transaction between Mr. New and ASC that has nothing to do with the complaint, the put transactions, or the ASC/Burkhart relationship.

Moreover, ASC seeks "all documents" on a range of topics from 2009 to the present. ASC's complaint identifies the relevant period for its claims as 2009 to September 15, 2015. (Dkt. 1, Compl. ¶ 1.)  ASC nonetheless attempts to extend its discovery into Mr. New's affairs to the present.

ASC has further rejected Mr. New's suggestion that ASC identify particular questions or documents that it has questions about, allowing Mr. New to provide targeted discovery or "sufficient to show" discovery into relevant topics.  This broad-ranging discovery is unduly burdensome to request from a nonparty.  *Uppal*, 124 F. Supp. 3d at 813.

Finally, disclosure of the requested documents is particularly problematic because ASC is Mr. New's business partner as well as his competitor, and Mr. New will be disadvantaged in future dealings with ASC if ASC has access to ten years' worth of Mr. New's financial records as well as a large range of his business communications.  For example, if ASC is permitted to discover Mr. New's documents describing his past transactions with ASC, it can use those details to its benefit in future negotiations over leases, health care services, and other transactions that it may enter into with Mr. New or his companies, or in negotiations with their competitors.  This Court is empowered under Rule 26(c) to protect Mr. New from this broad-ranging inquiry into his private affairs, which have no relevance to this case in any event, and should do so.

## B.   The First Federal Subpoena and Requests 3 and 4 of the Subpoena to Mr. New

Courts are especially critical of discovery requests that intrude into personal financial information.  *E.g. Jump.* 2015 WL 4999673, at *1 (quashing subpoena for "detailed information about the nature of [subscriber's] cellular telephone service, the cost of her service, and the

history of her payments").  "Discovery aimed at an opponent's personal finances is a quick route to the underside of the opponent's skin."  *Finch v. City of Indianapolis*, No. 1:08-CV-0432, 2011 WL 2516242, at *4 (S.D. Ind. June 23, 2011) (Lynch, M.J.).

Further, courts routinely quash broad requests for all financial records relating to a person or company and other broad requests to banks because they are unduly burdensome.  *E.g. Raap v. Brier & Thorn, Inc.*, No. 17-MC-3001, 2017 WL 2462823, at *4 (C.D. Ill. July 7, 2017); *Ultimate Timing, L.L.C. v. Simms*, No. 3:09-MC-6-RLY-WGH, 2010 WL 378436, at *1 (S.D. Ind. Feb. 1, 2010); *Schmulovich v. 1161 Rt. 9 LLC*, No. CIV.A.07-597 FLW, 2008 WL 4572537, at *2 (D.N.J. Oct. 14, 2008).  *See also Henry v. Morgan's Hotel Grp., Inc.*, No. 15-CV-1789 (ER)(JLC), 2016 WL 303114, at *2 (S.D.N.Y. Jan. 25, 2016) (quashing subpoenas for "all documents . . . relating to [Plaintiff]" because "[b]lanket requests of this kind are plainly overbroad and impermissible").

Here, when asked to explain the relevance of ASC's broad-ranging requests for Mr. New's financial information, counsel for ASC stated that the financial requests are "relevant to discovering Mr. Burkhart's assets" and "Mr. Burkhart's improper financial gains to the detriment of ASC."  Ex. 7 at 4/3/19 email.  However, the vast majority of Mr. New's financial records have nothing to do with Mr. Burkhart and are not discoverable under this theory.  Further, asset-based discovery is typically not relevant or permitted at the prejudgment stage of litigation.  *E.g. Equinox Gallery Limited v. Dorfman*, 2018 WL 637764, *3 (S.D.N.Y. Jan. 22, 2018) (refusing "to deviate from the usual rule limiting pre-judgment discovery to matters relevant to the claims or defenses asserted in the case, . . . which would not include discovery as to whether a defendant has sufficient assets to afford the plaintiff relief, should the plaintiff ultimately prevail on its claims.").  And, of course, any discovery into Mr. Burkhart's assets is most appropriately and

least burdensomely taken from Mr. Burkhart, a party to this litigation.  Similarly, broad requests relating to Mr. New's business transactions and communications with a range of people over a range of topics over a decade are not relevant to ASC's racketeering case against Mr. Burkhart. They are simply a fishing expedition that will impose enormous, unjustified expenses on Mr. New and expose his private information.

These demands encompass ten years' worth of Mr. New's personal and financial records that are in his, or his bank's or banker's control, regardless of whether they relate to the subject matter of the ASC Litigation in any way.  The subpoenas also require the production of all of Mr. New's communications with his personal banker and bank (Request No. 2 to Mills (Ex. 5); Request No. 2 to First Federal (Ex. 4)), again regardless of whether the communications relate in any way to the present litigation.  There is absolutely no cause or justification for ASC's broad invasion of Mr. New's privacy.  The subpoenas are quite clearly intended as a broad fishing expedition and should be quashed or substantially limited.

## CONCLUSION

Mr. New respectfully requests that this Court enter an order granting this Motion, granting a protective order precluding the discovery sought in the subpoenas to Mr. New, Mr. Mills, and First Federal, and quashing ASC's subpoenas to Mr. New, Mr. Mills, and First Federal.  In the alternative, Mr. New asks that discovery from Mr. New, Mr. Mills, and First Federal be limited to the items that Mr. New already offered to produce in his compromise proposal described on page 8 of this brief and the April 5, 2019 email attached as part of Exhibit 7.

Dated:  June 14, 2019                    **DELK MCNALLY LLP**


                                         By:  */s/ Jason Delk*

                                         Jason Delk
                                         DELK MCNALLY LLP
                                         211 South Walnut St.
                                         Muncie, IN 47305
                                         delk@delkmcnally.com


                                         Anton R. Valukas (pro hac vice pending)
                                         Robert R. Stauffer (pro hac vice pending)
                                         Caroline L. Meneau (pro hac vice pending)
                                         JENNER & BLOCK LLP
                                         353 N. Clark St.
                                         Chicago, IL 60654
                                         avalukas@jenner.com
                                         rstauffer@jenner.com
                                         cmeneau@jenner.com

## <u>CERTIFICATE OF SERVICE</u>

I, Jason Delk, an attorney, certify that on June 14, 2019, I filed the foregoing using the Court's CM/ECF system, which will cause a copy to be served on all counsel of record.


By:  <u>/s/ Jason Delk</u>