# EXHIBIT 1

1              UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF INDIANA
2                 INDIANAPOLIS DIVISION

3

    AMERICAN SENIOR COMMUNITIES,)
4   L.L.C.,                     )
                                ) CAUSE NO.
5           Plaintiff,          ) 1:17-CV-3273-TWP-DML
                                )
6           -vs-                )
                                ) Indianapolis, Indiana
7   JAMES BURKHART, et al.,     ) May 15, 2019
                                ) 10:05 a.m.
8           Defendants.         )

9

10

11                    **BEFORE THE**
            **HONORABLE DEBRA McVICKER LYNCH**

12

13        OFFICIAL REPORTER'S TRANSCRIPT OF

14        TELEPHONIC DISCOVERY CONFERENCE

15

16

17

18

19

20  Court Reporter:    Cathy Easley Jones, RDR, FCRR
                       Official Court Reporter
21                     46 East Ohio Street, Room 290
                       Indianapolis, IN  46204
22

23

24

25              PROCEEDINGS TAKEN BY
            ELECTRONIC SOUND RECORDING

1                        **A P P E A R A N C E S**

2

3    FOR THE PLAINTIFF:          Valarie Hays
                                 Eli J. Litoff
4                                RILEY SAFER HOLMES & CANCILA
                                 Three First National Plaza
5                                70 W. Madison, Suite 2900
                                 Chicago, IL  60602

6    FOR DEFENDANT BURKHART:     Daniel S. Maland
                                 KOZYAK TROPIN &THROCKMORTON
7                                2525 Ponce de Leon Blvd.
                                 9th Floor
8                                Miami, FL  33134

9                                Bradley J. Wombles
                                 NORRIS CHOPLIN & SCHROEDER
10                               101 W. Ohio Street
                                 9th Floor
11                               Indianapolis, IN  46207

12   FOR DEFENDANT WERNER:       Pamela Rons
                                 BAXTER ROSE & SCHRAGER
13                               6602 East 75th Street
                                 Suite 115
14                               Indianapolis, IN 46250

15   FOR NON-PARTY NEW:          Jason R. Delk
                                 DELK McNALLY
16                               211 South Walnut Street
                                 Muncie, IN  47305

17
                                 Robert Stauffer
18                               JENNER & BLOCK
                                 353 N. Clark Street
19                               Chicago, IL  60654-3456

20   FOR NON-PARTIES FIRST       Robert Nicholson
     FEDERAL SAVINGS BANK AND    CARSON LLP
21   THOMAS MILLS:               301 W. Jefferson Blvd.
                                 Suite 200
22                               Fort Wayne, IN  46802

23
     FOR INTERESTED PARTY        Donald R. Lundberg
24   BARNES & THORNBURG:         LUNDBERG LAW
                                 P.O. Box 19327
25                               Indianapolis, IN  46219

1      THE COURT:  Good morning.  This is Judge Lynch.  Let
2 me do a quick roll call.

3      Mr. Litoff and Ms. Hays.

4      MS. HAYS:  Yes, we're here, Your Honor.

5      THE COURT:  Mr. Maland and Mr. Wombles.

6      MR. MALAND:  Good morning, Your Honor.

7      THE COURT:  Ms. Rons, you're on for Mr. Werner; is
8 that right?

9      MS. RONS:  That's correct.  Good morning, Your
10 Honor.

11      THE COURT:  Good morning.

12      Mr. Lundberg?  Mr. Lundberg, are you there?

13      MR. LUNDBERG:  Your Honor, I was muted.  I'm sorry
14 about that.  Don Lundberg.  I'm here for Barnes & Thornburg.

15      THE COURT:  Good morning.

16      Good morning, Mr. Delk and Mr. Stauffer.

17      UNIDENTIFIED SPEAKER:  Yes, good morning, Your
18 Honor.

19      THE COURT:  Good morning.  And you are here for
20 Mr. New; is that correct?

21      UNIDENTIFIED SPEAKER:  That's correct, Judge.

22      THE COURT:  All right.  And then Mr. Nicholson, you
23 are on for First Federal Savings and Thomas Mills; is that
24 right?

25      MR. NICHOLSON:  Yes, Your Honor.

4

1          THE COURT:  All right.  The dispute, as I understand

2    it -- and you're going to all help me, I think, get the lay of

3    the land a little bit better -- involves the plaintiff and

4    nonparties, Mr. New, First Federal Savings and Thomas Mills.

5          So I -- if you're on the line because you think you

6    need to be just because something is scheduled but you don't

7    have an interest in the dispute, either legally or just

8    generally, you don't have to be on the call; and you can just

9    drop off if you want to.  Just let me know if you want to.

10   Does anybody want to drop off?

11         Okay.  We are on the record today.  The dispute, as

12   I understand it, involves subpoenas served by the plaintiff on

13   the nonparties that I identified.  I don't rigidly apply the

14   rule that -- about seeking discovery conferences when the

15   parties involved in the dispute are largely nonparties; but I

16   wanted to go ahead and have this today just so you could give

17   me the lay of the land a little bit letter; and I can also

18   determine what sort of briefing schedule will be necessary if,

19   in fact, one will be, which, again, I find to be the case

20   often with nonparty discovery disputes.

21         Ms. Hays and Mr. Litoff, would you just outline for

22   me generally, because I don't have the subpoenas you've

23   issued, who the recipients are and just generally what the

24   subpoenas ask for?

25         MS. HAYS:  Yes, Your Honor.

1        So on March 5th, ASC issued third-party subpoenas to

2   Rob New, First Federal and Tom Mills.  Counsel from the third

3   parties objected; and we've been trying to resolve the dispute

4   between us since then with no success.

5        I think it would be helpful for Your Honor if we

6   gave you a little bit of background about Mr. New and why we

7   expect that he has critical information that will assist ASC

8   in proving its claims against Mr. Burkhart.

9        We believe --

10       THE COURT:  Ms. Hays, before you start, you said

11  that since the subpoenas were served back in March that the

12  lawyers have gone back and forth trying to resolve them.  Can

13  you tell me if the -- if those talks have been focused on the

14  scope of the subpoenas or something different from that?

15       MS. HAYS:  Primarily -- Judge, I think there's a few

16  additional arguments that have been made.  We proposed search

17  terms.  They want more narrow search terms.  They want to

18  limit it to put transactions and not the vendor fraud schemes.

19  They want to limit to stopping it in 2015.

20       One of the things we're seeking is information on

21  Burkhart's current assets, which we believe Mr. New is holding

22  for Mr. Burkhart.  So we couldn't reach agreement because of

23  those positions.

24       THE COURT:  All right.  Go ahead -- and you don't

25  need to give me a lengthy argument because I suspect we're

1  going to have some briefing on this; but if you would, as you

2  started out, tell me who the recipients are and what sort of

3  information generally the plaintiff is seeking.

4          MS. HAYS:  Sure.  If at any point you feel like I'm

5  giving you too much detail, feel free to stop me at any time.

6          So Mr. New -- we believe the evidence will show that

7  he has a lot of critical information that's going to assist us

8  in proving our claims against Burkhart.  He's obviously not a

9  defendant.  We're not seeking to prove the case against him,

10  but the information he has and the role he's played in these

11  schemes is critical information with respect to Mr. Burkhart.

12          These vendor schemes went on for years, Judge.  And

13  before Mr. Burkhart utilized Steve Ganote, who was a defendant

14  in this case, and Mr. Ganote's shell companies to facilitate

15  the schemes, Mr. Burkhart utilized Rob New and Rob New's

16  companies.

17          Over the years, Mr. New has made tens of millions of

18  dollars as a knowing participant in these schemes.  Even after

19  Mr. Ganote became involved and Mr. New's role decreased,

20  Mr. New was still involved in some of the specific schemes

21  alleged in the complaint, including Best Choice.

22          Before Mr. Ganote was involved, Mr. New also owned

23  the shell vendors that profited from the Gordon Foods and

24  Medline schemes, and Mr. New was the one providing the

25  kickback to Mr. Burkhart; and we believe this will be relevant

1  or will be evidence that we will seek to introduce against

2  Mr. Burkhart because the later years of the Gordon Foods and

3  Medline schemes are part of this complaint.

4        Additionally, it's our understanding that it's been

5  Mr. New's and Mr. Burkhart's practice for years to hold this

6  money for each other, money from these fraudulent schemes; and

7  specifically, when Mr. New made payments with respect to the

8  put transactions in this case, including an $11.5 million

9  payment, half of these funds it's our understanding belong to

10  Mr. Burkhart; and all of those funds, all 11.5 million were

11  proceeds that went to either New or Burkhart from the schemes.

12        We also have information from witnesses to suggest

13  that Mr. New is currently holding substantial funds for

14  Mr. Burkhart and secretly distributing the large cash payments

15  to Burkhart's wife.

16        As Your Honor knows, there's a restitution order

17  against Mr. Burkhart.  We believe this is a way to circumvent

18  that and also hide assets that might be available in the civil

19  litigation.

20        We understand that, for example, Mr. New actually

21  had someone recently rent a U-Haul and deliver a large crate

22  believed to be filled with cash to Burkhart's wife, who is

23  residing in Florida.

24        All of these are topics that we intend to explore

25  with Mr. New in a deposition; but we first, of course, need

1  the relevant documents in his possession, including this

2  correspondence with Burkhart and the other co-schemers, and

3  the bank records for the entities New owned that are involved

4  in Burkhart's schemes.

5          With respect to -- go ahead.

6          THE COURT:  Go ahead.  So First Federal and Thomas

7  Mills -- is Thomas Mills then an official at the -- or

8  director or something at the bank?

9          MS. HAYS:  Yes, Your Honor, I believe.

10          THE COURT:  Go ahead.

11          MS. HAYS:  So, First Federal Bank holds accounts for

12  some of the Burkhart defendant entities in this lawsuit as

13  well as other companies in which both Mr. New and Mr. Burkhart

14  have an interest.  First Federal, most importantly, was

15  utilized by Mr. New and Mr. Burkhart to obtain financing

16  related to some of the put transactions that is at issue in

17  the complaint.

18          Then specifically, Mr. Mills -- we understand

19  Mr. Mills and Mr. New have had a personal relationship for

20  quite a few years, and he was Mr. New's main contact at the

21  bank.  We believe the evidence will show that he facilitated

22  the financing related to some of these put transactions.

23          We also have information that Mr. Mills received

24  personal payments on the side from Mr. New and Mr. Burkhart in

25  order to facilitate the put transactions for Mr. Burkhart's

1   benefit.

2          For -- that's kind of the background on the third

3   parties.  I'm happy to go into specifics on the disputes on

4   the requests if Your Honor would like.

5          THE COURT:  Well, I would like to get just -- again,

6   just a rather generalized sense of what the subpoenas seek

7   from these nonparties.

8          MS. HAYS:  Sure.  It's two main categories, Judge.

9   It's -- with respect to the -- Mr. New's involvement and the

10  bank's involvement in the vendor transactions and the put

11  transactions, we're looking for communications among the

12  parties related to those transactions, and also bank records

13  showing the transfer of funds between Mr. Burkhart and the

14  parties.  And then also information about current, more recent

15  transactions between Burkhart and New, which goes to the issue

16  of Mr. Burkhart's current assets.

17         Mr. New's counsel has made a few objections.  The

18  first objection is that --

19         THE COURT:  Let's let Mr. Delk go ahead and describe

20  the objections.  I just wanted to get, again, a sense of a lay

21  of the land; and then we'll come back to the plaintiff's

22  position with respect to the objections.  I would like to hear

23  the objections from the nonparties' counsel first.  Thank you,

24  though.  I'll circle back.

25         Mr. Delk, if you would, in summary fashion, outline

1  Mr. New's objections to the subpoenas.

2        MR. DELK:  Sure.  Your Honor, thank you.

3        First -- and I'm not going to go in and belabor or

4  waste the Court's time with responding to, frankly, the

5  outlandish nature of the suggestions by plaintiff's counsel

6  who Rob New is, what he has purportedly done or not done.  We

7  obviously object to the characterization of who Mr. New is.

8        But more to the point, Mr. New is a businessman who

9  has had legitimate and ongoing business relationships with

10  Health Hospital Corporation and ASC.  He is both a competitor

11  of ASC and HHC but also a business partner.  I think that's

12  important to keep that in mind when thinking about the nature

13  of what these requests are targeted to or seek, not to mention

14  the fact, of course, Rob New is a nonparty individual that is

15  seeking basically over ten years worth of information as

16  relates to communications that range anywhere from literally

17  communications between Rob New and his lawyer to Rob New and

18  his banker and/or his bank.

19        So the subpoenas that relate to Rob New -- directly

20  to Rob New as well as to First Federal as well as Thomas

21  Miller are objectionable, Your Honor.

22        For example, the very first request both to

23  Mr. Mills, to the bank, and to Rob New ask for ten years'

24  worth of documents that in any way relate to Rob New, meaning

25  directly to First Federal.  That, obviously, will capture many

1  unrelated documents, entries, banking, obviously, materials

2  that are very personal and confidential to Mr. New that have

3  absolutely nothing to do with this case.

4         And it's, obviously, very much worth noting, Your

5  Honor, that Mr. New and his various businesses have absolutely

6  nothing to do with this litigation.  And, in fact, ASC and

7  Mr. New settled their respective disputes some time ago back

8  in October of 2017.  And as a result of entering into that

9  settlement agreement, Your Honor, that is yet another basis --

10 putting aside the fact that the requests are overly broad,

11 cause an incredible amount of undue burden and expense to a

12 nonparty in violation of Rule 45 and 26; but we also have

13 basically bought our peace with ASC.

14        And to the extent that ASC wanted to have the right

15 to engage in this onerous and burdensome discovery with

16 Mr. New, they could have and should have crafted an exception

17 to the release that was entered into.

18        Frankly, there's a Ninth Circuit case directly on

19 point that in essence stands for the proposition that once a

20 party has bought their peace and settled all claims and causes

21 of action with respect to the other parties, that includes the

22 ability to engage in the onerous type of discovery that is

23 here.

24        So, you know, we have on a very high level attempted

25 to work with plaintiff's counsel from the standpoint of what

12

1    documents and materials they actually need to pursue their

2    case against individuals that have something to do with the

3    litigation and not a nonparty such as Mr. New.  Again, as

4    plaintiff's counsel alluded to, that relates to their real

5    estate put transactions as referenced in the lawsuit and then

6    the other, I guess, identifiable area in which is arguably

7    discoverable are financial payments from Mr. New to

8    Mr. Burkhart.

9            Now, we obviously object to that from the standpoint

10   of that's asset-based discovery, which, frankly, that is not

11   even discoverable at this point in time.  Plaintiff needs to

12   be able to get a judgment against Mr. Burkhart before they

13   start to engage or endeavor into the asset-based type of

14   discovery; but nonetheless we have agreed on a basis of

15   compromise to say, fine, we will show you or provide to you

16   materials or documents, if any, of any payments made to

17   Mr. Burkhart during the relevant time period.  But in trying

18   to come to a resolution on that, the plaintiff's counsel has

19   wanted more.

20           Of course, we're going to do that subject to an

21   appropriate protective order, subject to attorneys' eyes only,

22   et cetera to protect the parties' respective interests; but

23   yet, plaintiff wants more.  And says, no, it can't be

24   redacted.  In fact, if there's any document at all that

25   demonstrates a payment that is coming from Mr. New to

1  Mr. Burkhart, we expect to see the entire document, which

2  then, of course, provides or puts Mr. New's personal interests

3  in terms of his confidential affairs that are personal to him

4  open to discovery that, frankly, have nothing to do with this

5  litigation which, again, is not relevant and certainly not

6  proportional to the needs of this case as Rule 26 requires.

7          So, you know, I could go into much more detail as to

8  what we're looking at; but in essence, really, they're looking

9  for a scope of documents that aren't even related to the time

10 frame at issue.  But then, the nature of the requests have

11 absolutely nothing to do with this case and go well beyond any

12 sort of relevant issues at play.

13         And so for those general reasons is the basis of why

14 we have found the subpoenas to be objectionable.  And I can go

15 into more examples of the nature of the fishing expedition if

16 you like; but I wanted to give you a little bit of a flavor,

17 Your Honor, as to what's out there and what's being requested

18 of, frankly, a nonparty individual to comply with an

19 incredibly onerous and burdensome subpoena.

20         THE COURT:  All right.  Thank you.

21         Mr. Nicholson, what are the objections of First

22 Federal Savings and Mr. Mills?

23         MR. NICHOLSON:  Thank you, Judge.  You know, the

24 bank's objections pretty much mirror Mr. New's.

25         Then in addition, we believe that all the

14

1    information that's been sought from the bank is available

2    elsewhere.  To put the bank through the effort of getting all

3    this is a little overburdensome.

4            Mr. Mills, I think we've kind of resolved his

5    issues.  As a practical matter, he doesn't have any documents

6    responsive to the requests; and I believe that the plaintiff

7    is willing to accept an affidavit to that effect.  So his is

8    separate from any information that the bank would have or that

9    he would have in this capacity as an employee of the bank.

10           THE COURT:  Okay.  This has all been helpful, just

11   as background for me.  As I said, typically when a discovery

12   dispute involves nonparties, I am going to want briefing on

13   them.  I, of course, do and want to get the relevant subpoenas

14   attached to your briefing.  I would like to talk about a

15   schedule for that.  And I think the place to start under these

16   circumstances with a nonparty situation is a motion to quash.

17           So Mr. Delk, when would you propose to have a motion

18   to quash on file?

19           MR. DELK:  Your Honor, I would say 30 days would be

20   appropriate.  I mean, there's a lot of moving parts here.

21   Obviously, it's going to require, I think, a fair amount of

22   analysis just given, frankly, the overly broad nature of the

23   requests, coupled with currently my schedule just doesn't

24   permit me to devote the time in the next two weeks to get it

25   done.  If we could have 30 days from today to get the motion

1  to quash on file, I would appreciate that.

2              THE COURT:  Ms. Hays, can you live with that?

3              MS. HAYS:  Yes, Your Honor.  I have one question

4  when the time is right just in terms of the briefing practice.

5              THE COURT:  Yeah.  I intend to speak to that in just

6  a minute; and to the extent I don't cover the question that

7  you have, of course, feel free to ask.

8              What I wanted to say about briefing on these

9  disputes is to encourage you in the next 30 days to use the

10  next 30 days not only to write a brief but to continue to

11  explore possible resolutions of at least some of the disputes

12  between you.  See if you can compromise on some things, set

13  those aside, and brief only what really needs to be decided.

14  That's a tricky thing, I think, sometimes with discovery

15  disputes because sometimes counsel take the position, well,

16  look, we weren't able to resolve our dispute; and so both

17  sides are simply going to swing for the fences in their

18  briefing.

19              What I suggest to you is if you are not willing to

20  reach some agreements and set them -- and then set those

21  issues aside and brief only the things that you can't resolve,

22  but in your briefing, that if you feel that you must swing for

23  the fences, that you also, though, include your alternative

24  positions.

25              For example, on scope, let's say the temporal scope,

1  the ten-year issue, plaintiff, of course, can advance the

2  position that it needs ten years; but if it wants to suggest a

3  compromise and if the defendant wants to suggest a compromise

4  and argue for that, I encourage you to take those sorts of

5  alternative positions because it helps inform me about

6  potential resolutions and what might be appropriate, because

7  one of the difficulties I think in presenting discovery

8  disputes for resolution by the Court is that, of course, the

9  parties and the lawyers know far more about what's out there

10  and what's important and what reasonable accommodations that

11  there might be or a range of reasonable accommodations.

12        And so I do encourage you to, as I said, to present

13  alternative arguments.

14        Ms. Hays, what question did you have about briefing?

15        MS. HAYS:  So, Your Honor, Mr. Delk mentioned the

16  settlement agreement between ASC and Mr. New; and I understand

17  that's one of their main arguments.  We believe the settlement

18  agreement solidly supports our position.  There are no

19  provisions in it that limit our ability to seek discovery from

20  Mr. New related to this litigation.  So in a typical

21  situation, we would attach that confidential settlement

22  agreement because it's related to this dispute.

23        I wanted to get your guidance on that issue and also

24  see what Mr. New's counsel's position was on that.  We can

25  file it under seal.

1       THE COURT:  Mr. Delk, any objection to the Court's

2   orders simply directing the plaintiff to file that under seal

3   or you to file it under seal for that matter?

4       MR. DELK:  Yes.  Your Honor, obviously, that's what

5   we would request and prefer, that it be filed under seal.

6   Frankly, it looks like we'll be filing the first motion anyway

7   to cue this issue up before the Court.  So yes, we would ask

8   that the order be issued to say yes, filed under seal, as it

9   is a confidential agreement.

10      THE COURT:  All right.  And I'll do that, so you

11  don't need to file a separate motion for leave to file it

12  under seal.  I'll just direct that in my briefing schedule

13  order.

14      MR. DELK:  Thank you, Your Honor.

15      THE COURT:  Okay.  And then Ms. Hays, when would you

16  propose to file a response to the motion?

17      MS. HAYS:  If we could have three weeks, Your Honor.

18      THE COURT:  All right.  And then any reply, 14 days?

19      MR. DELK:  That sounds fine, Your Honor.  Thank you.

20      THE COURT:  Okay.  Is there anything else that any

21  of you think that we can discuss today that would help advance

22  the resolution formally or informally of these disputes?

23  Ms. Hays, is there anything else?

24      MS. HAYS:  The only thing, Judge, that comes to mind

25  is Mr. Nicholson said he believed we reached agreement with

18

1   respect to Mr. Mills.  You know, we had proposed an affidavit

2   where he certifies that he does not have any responsive

3   documents.

4          At this point -- and we had not heard back from him

5   on that; but at this point, the representation was that

6   Mr. Mills had only searched his active e-mail.  He had not --

7   based on what we understand, he has not searched the bank

8   records or hard copy files or anything -- or other electronic

9   records, only his e-mails.  That would, of course, not be

10  sufficient from our perspective.  So I'm not sure where we

11  stand on that and whether Mr. Nicholson will need to file a

12  brief as well.  I just wanted to make that clarification.

13         THE COURT:  All right.  Well, I'll leave that to

14  you -- the two of you to follow up on that.

15         MR. NICHOLSON:  That's fair.

16         THE COURT:  Mr. Delk, anything further?

17         MR. DELK:  Judge Lynch, this is actually Bob

18  Stauffer.  If I could just make one request.  I'm also on

19  behalf of Mr. New.  I'm looking at the calendar and trying to

20  figure out the dates that this comes due for the briefing

21  schedule that you set.  That would put, I think, the

22  plaintiff's response brief being due on about June 28th or

23  thereabouts and then make our reply brief due over the week of

24  the July 4th holiday, which -- during which I will be on

25  vacation.  I was wondering if we could actually have more,

19

1   like, 21 days instead of the 14 on that reply brief.

2              THE COURT:  Okay.  Any objection, Ms. Hays?

3              MS. HAYS:  No, Your Honor, but I would ask -- I'm --

4   now that I'm looking at the calendar as well, I'm in trial the

5   week of June 24th.  So maybe if we could just push the

6   schedule back entirely another week, that would be helpful.

7              THE COURT:  So you mean in other words, do 28 days

8   on the plaintiff's response?

9              MS. HAYS:  Yes.

10             THE COURT:  And then Mr. Stauffer, does that work

11  for you, 14 days after pushing the plaintiff's response by

12  seven days?

13             MR. STAUFFER:  I believe it does.

14             THE COURT:  All right.  Anything -- Mr. Nicholson,

15  anything else?

16             MR. NICHOLSON:  No, thank you, Judge.

17             THE COURT:  All right.  Do any of the defense

18  counsel on the line or Mr. Lundberg have anything to add, to

19  ask?  Anything else?

20             Okay.  All right.  Well, thank you all.  I'll issue

21  an order that will make any motions to quash subpoenas due in

22  30 days; response, 28 days; replies, 14 days.  The order will

23  direct the filing of any settlement agreement pertinent to the

24  dispute to be filed under seal.

25             All right.  Thank you all.

1        *(The proceedings were adjourned at 10:33 a.m.)*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF COURT REPORTER

2

3        I, Cathy Jones, court-approved transcriber, certify that

4   the foregoing is a correct transcript from the official

5   electronic sound recording of the proceedings in the

6   above-entitled matter.

7

8

9     /s/ Cathy Jones                      May 31, 2019
      _____
10    CATHY JONES, RDR, FCRR
      Official Court Reporter
11    Southern District of Indiana
      Indianapolis Division
12

13

14

15

16

17

18

19

20

21

22

23

24

25