# EXHIBIT 7

**From:** Eli Litoff <elitoff@rshc-law.com>
**Sent:** Monday, April 15, 2019 5:43 PM
**To:** Stauffer, Robert R.
**Cc:** Valarie Hays; Kelly Warner; Valukas, Anton R.
**Subject:** RE: ASC v. Burkhart - Subpoena to Rob New

External Email – Exercise Caution

Bob,

Your understanding of the purpose of ASC's subpoena to Mr. New is correct. We have tried to work with you to address Mr. New's concerns, but we need to move forward with this litigation and it is becoming more apparent that our back and forth on this is unproductive. It seems like we are far apart and should move forward with briefing this issue so the Court can decide the appropriate scope of the subpoena.

I think our prior correspondence on this has been clear, but we will engage in one more attempt at clarity:

1. We want all unredacted bank records in Mr. New's possession or control that show any financial transactions responsive to our requests.

2. We, of course, cannot agree to a protective order that gives Mr. New the ability to select which witnesses we can show relevant documents.

3. We believe our search terms are appropriately narrow and targeted to obtaining relevant information. For example, it is our understanding that Mr. New made personal payments to Mr. Mills to further the put scheme for the benefit of Mr. Burkhart, and with Mr. Burkhart's knowledge, and to the detriment of ASC.

We will move forward with drafting a joint email for your review that we can send to the Court, explaining our inability to reach resolution on this and our need for a briefing schedule.

Thanks,
Eli


Eli Litoff
Riley Safer Holmes & Cancila LLP
(312) 471-8780
elitoff@rshc-law.com

---

**From:** Stauffer, Robert R.
**Sent:** Friday, April 12, 2019 4:58 PM
**To:** Eli Litoff
**Cc:** Valarie Hays ; Kelly Warner ; Valukas, Anton R.
**Subject:** RE: ASC v. Burkhart - Subpoena to Rob New

Eli,

Our goal in these communications has been to explore whether there is some approach we can agree to which serves your needs in the pending lawsuit while protecting Mr. New's legitimate interests. As I have told you, we believe Mr.

1

New has a strong position that he and his bank should not be obligated to produce any documents in response to the subpoenas, but he is willing to assist with targeted inquiries directed toward your interests in the lawsuit.

We understand your stated needs to be (1) to obtain a more complete record of the "put" transactions referenced in the complaint, (2) to explore "Mr. Burkhart's improper financial gains to the detriment of ASC," and (3) to identify assets that Mr. Burkhart may have that may be used to satisfy a judgment or fund a settlement.

The requests below go far beyond these purposes, so a phone call may be helpful in understanding your position. In the meantime, here are specific reactions:

1. I am confused as to what your current position is on bank records. Is it your position that you want an entire check register even if, for example, only one line in the register relates to a payment to Mr. Burkhart or one of his entities?

2. In order to protect Mr. New's privacy interests, we suggest a protective order that covers the following points:

- Mr. New may designate information he produces in response to the Subpoena as "Confidential" or "Attorneys' Eyes Only," consistent with the terms of the Southern District of Indiana Model Uniform Protective Order.
- The only people who may access "Attorneys' Eyes Only" documents and information derived from them are
    - The Court, its personnel, and court reporters;
    - Outside counsel of record for any party in this action and their employees who assist counsel of record in this action and are informed of the duties hereunder;
    - Other witnesses or persons to whom the Mr. New agrees in advance of disclosure;
    - Any person who contemporaneously sent, received, or drafted a document as shown on the face of the document; and
    - Documents reflecting payments to Jim Burkhart, a Burkhart family member, or a Burkhart-related business may be shown to Jim Burkhart.
- If information designated by Mr. New will or may be offered in evidence at a hearing or trial, then ASC must give seven days' advance notice to Mr. New.

3. We do not share your understanding about SRB Consulting. However, if we can reach an acceptable compromise we will look for documents that show payments from SRB Consulting to Mr. Burkhart or his entities.

4. The search terms identified in your email do not appear to reflect an attempt to gather evidence necessary for the prosecution of the lawsuit, but rather evidence a wide-ranging fishing expedition. To take just a couple of examples, it is hard for us to understand why all documents that reference Mr. New's banker (Tom Mills) or his former lawyer (Jeff Robbins) would be relevant to ASC's claims against Mr. Burkhart.

5. Your rationale for extending the time frame to the present is that you believe Mr. New is holding assets belonging to Mr. Burkhart. Although we believe you are misinformed about this – Mr. New is not holding assets belonging to Mr. Burkhart -- that rationale certainly would not justify the broad-ranging requests outlined in your email.

6. All that should remain as to the parking lot rent is documenting the agreement we reached, which I understand your firm to be handling, and making the payments under that agreement. We appreciate your checking with your client as to those payments.

Again, given our puzzlement as to how you believe the broad requests outlined in your email are relevant to your lawsuit, it may be useful to have a call to talk this through. Mr. New is willing to make a reasonable production to give you the documents you need or simply provide information that will help you understand the facts. But given the release, his privacy interests, his business concerns, the cost and burden of a large-scale document review, and other reasonable objections, he cannot agree to the broad requests you have outlined.

Bob

**From:** Eli Litoff [mailto:elitoff@rshc-law.com]
**Sent:** Thursday, April 11, 2019 9:21 AM
**To:** Stauffer, Robert R. <RStauffer@jenner.com>
**Cc:** Valarie Hays <vhays@rshc-law.com>; Kelly Warner <Kwarner@rshc-law.com>; Valukas, Anton R. <AValukas@jenner.com>
**Subject:** RE: ASC v. Burkhart - Subpoena to Rob New

External Email – Exercise Caution
Bob,

Thank you for your email. Please see further responses below.

1. We will agree to the production of bank records (not "excerpts") that show all relevant information for the responsive transactions.

2. We have attached a copy of the protective order.

3. It is our understanding that SRB Consulting was controlled by Mr. New, although there are companies with similar names that might not have been.

4. We have included below a list of the non-put search terms to which we would agree (so both the put search terms we sent earlier and the non-put search terms would be used to identify responsive records)

5. We will agree that the relevant time period is 2007 through the present. We cannot agree to a cutoff date of 9/15/15. We have information indicating that Mr. New is currently holding assets belonging to Mr. Burkhart and providing those funds to him and his family members and agents as needed.

6. We will check with the client on this.

We would like to have these issues resolved by the end of the week.

Best,
Eli

- Burkhart or *jimburkhart* or *jgburkha* or *jburk* or crusader or mmaj or (driver* w/3 *sandwedge) or (truly w/3 llc) or "American Senior Care"
- (dan* w/3 benson) or *danbenson*
- (steve* w/3 ganote) or *sganote* or *sjganote* or *srbllc*
- (Roger w/3 werner) or *rogerwerner* or *rewerner*
- (Jeff* w/3 robbins) or (cardinal w/3 racer) or *jdrcards* or (dean w/3 freshman)
- (Gretchen w/3 zoeller) or *gmz* or *gz*
- (Thomas or Tom) w/3 Mills
- Pam* w/3 Monson
- (Dan* or Doctor or Dr.) w/3 Hurley
- *gentiva*
- *Bestchoice* or (best w/3 choice)
- Force w/3 holding
- Finite w/3 capital

- "healthcare by design" or *healthcarebydesign*
- Cardinal and (cellera or force or (roger w/3 king) or ((dick or Richard) w/3 moon))
- (Gordon w/3 food*) or *gfs* or pinnacle or (brett w/3 michel) or *brett.michel*
- *medline* or (Midwest w/3 med*) or *midwestmedsupply* or manny or raposo or *mraposo* or r10 or g22

Eli Litoff
Riley Safer Holmes & Cancila LLP
(312) 471-8780
elitoff@rshc-law.com

---

**From:** Stauffer, Robert R. <RStauffer@jenner.com>
**Sent:** Wednesday, April 10, 2019 9:48 AM
**To:** Eli Litoff <elitoff@rshc-law.com>
**Cc:** Valarie Hays <vhays@rshc-law.com>; Kelly Warner <Kwarner@rshc-law.com>; Valukas, Anton R. <AValukas@jenner.com>
**Subject:** RE: ASC v. Burkhart - Subpoena to Rob New

Eli,

In a continued effort to find a reasonable compromise, here is our reaction to the points in your email:

1. We cannot agree to production of bank records that have nothing to do with your complaint. We don't see any basis for your requests for the entirety of Mr. New's personal financial records. If you will not agree to accept a list of payments to Mr. Burkhart and his entities, we can offer to produce copies of financial records that show such payments, with other information redacted – i.e., we would produce excerpts that show such payments.

2. We cannot agree that you should be free to disclose Mr. New's personal information to his competitors and business partners. Could you please send us a copy of the protective order that you believe should be sufficient? If it does not provide adequate protection, we can propose an alternative order that allows for use at depositions and trial but still provides adequate protections for Mr. New's sensitive private information.

3. The list of payments you provide is helpful in understanding the nature of your requests. However, the list evidences a number of factual misunderstandings, and there are several items that are confusing. (For example, in the third item, Mr. New would not have records of what payments, if any, SRB Consulting made to Mr. Burkhart.) Nonetheless, your list provides some guidance (with the understanding it is not intended to be exclusive) for any search we undertake to identify payments you believe to be relevant.

4. With respect to non-put search terms, it remains difficult for Mr. New to agree to a compromise without knowing the full extent of the documents you are seeking. Mr. New cannot agree to an arrangement in which he gives up his objections to certain sets of documents without any corresponding agreement that you will forego other requests.

5. You did not respond to our suggestion that the temporal scope be limited to the time period covered by the complaint, i.e., 2008 to 9/15/2015. We assume that you agree this period is reasonable.

6. As to the parking lot, your email says "ASC will continue to make timely rent payments." However, the issue is that ASC has *not* been making rent payments on the parking lot. ASC agreed to do so retroactive to January of last year, with Mr. New agreeing to forgive the prior rent owing, but ASC is not making those payments despite its continued use of the lot. I trust you can understand Mr. New's frustration with that situation.

As always, we reserve all objections.

Best regards,

Bob

---

**From:** Eli Litoff [mailto:elitoff@rshc-law.com]
**Sent:** Monday, April 08, 2019 11:24 AM
**To:** Stauffer, Robert R. <RStauffer@jenner.com>
**Cc:** Valarie Hays <vhays@rshc-law.com>; Kelly Warner <Kwarner@rshc-law.com>; Valukas, Anton R. <AValukas@jenner.com>
**Subject:** RE: ASC v. Burkhart - Subpoena to Rob New

External Email – Exercise Caution

Bob,

Thank you for your proposed compromise. Unfortunately, we cannot agree to a list of payments rather than actual bank records. We also cannot agree to an attorney eyes only restriction. We intend to use the records in the pending litigation against Mr. Burkhart and others, including during depositions. We currently have a protective order in place that would allow Mr. New to limit the use of his records to the pending litigation.

You mentioned in your email that you would identify prior payments between Mr. New and his affiliates and Mr. Burkhart and his affiliates "to the extent we can." Your uncertainty as to whether such a list would be complete highlights our need for the source documents. I would assume that Mr. New will be able to identify all of the relevant bank records rather easily, but to assist you in that process, I have included below a list of some of the payment records we would expect to see (but the list below is certainly not exhaustive). I have included rough estimates of payment amounts, but of course, those amounts may be higher or lower.

1. $500,000 payment from Mr. New to Mr. Burkhart when McKesson bought CareMed
2. Annual $500,000-$600,000 from Mr. New to Mr. Burkhart for Pharmakon business
3. $4.5 million paid from Mr. New via SRB Consulting to Mr. Burkhart
4. Records of Mr. New providing gold to Mr. Burkhart, totaling at least $500,000
5. Payments Mr. New made to Mr. Burkhart via MMAJ and Truly
6. Mr. New's purchase of a condominium in Florida for Mr. Burkhart
7. Mr. New's payments to Mr. Burkhart related to Best Choice therapy business
8. Mr. New's payments to Mr. Burkhart related to NBA Construction business
9. $1 million Mr. Burkhart received when Gentiva bought Advocate from Mr. New
10. Records showing that the $5.5 million Mr. New put into the puts was Mr. Burkhart's funds
11. Payments to Mr. Burkhart from Midwest Medical (about $600,000 per year)
12. Payments to Mr. Burkhart from Pinnacle Purchasing
13. Personal payment(s) to Mr. Mills from Mr. New for the benefit of Mr. Burkhart and his put deals

With respect to the put-related search terms, we provided those to you earlier in our discussions as a first step. We would need to provide a second set of search terms related to the non-put related topics. We also intend to explore whether Mr. New is currently holding any funds that he and Mr. Burkhart have agreed belong to Mr. Burkhart.

Please let me know by close of business tomorrow whether Mr. New will agree to this compromise or whether we should draft a joint email for the Court.

With respect to your inquiry on the unrelated parking lot rent payments, the client is continuing to work through the documents you provided on March 1 to support the provisions you included in the draft rental agreement. In the meantime, ASC will continue to make timely rent payments.

Thanks,
Eli


Eli Litoff
Riley Safer Holmes & Cancila LLP
(312) 471-8780
elitoff@rshc-law.com

---

**From:** Stauffer, Robert R. <RStauffer@jenner.com>
**Sent:** Friday, April 5, 2019 4:30 PM
**To:** Eli Litoff <elitoff@rshc-law.com>
**Cc:** Valarie Hays <vhays@rshc-law.com>; Kelly Warner <Kwarner@rshc-law.com>; Valukas, Anton R. <AValukas@jenner.com>
**Subject:** RE: ASC v. Burkhart - Subpoena to Rob New

Eli,

Here is what we would suggest as a compromise. Rob is willing to produce the following documents in response to the subpoenas to him, Tom Mills, and First Federal. This production would, of course, be contingent on an agreement that ASC will not seek additional documents pursuant to those subpoenas (or issue any additional document subpoenas) to Mr. New or his bank, banker, and other agents.

- Rob will produce responsive, non-privileged documents located in response to the search terms ASC proposed on 3/29, for the time period of 2008-9/15/2015 (the time period identified as relevant in ASC's complaint, paragraph 1).
    - (Burkhart or crusader or jaccd or 105214 or accd or 105210) and put
    - Put w/5 agree*
    - "covenant support"
    - Omega
    - Formation
    - Derwent
    - Battison
    - Dan* w/5 Booth
    - Dav* w/5 russ
    - Rothner
    - Vantage OR ((Bill OR William) w/5 Smith)

- Rob will produce other corporate documents relevant to the put transactions/Crusader entities, to the extent we identify additional documents beyond those encompassed in the above search.

- Rob will produce a list of payments from Rob New, New's family, and/or entities he has an ownership interest in to Jim Burkhart, Burkhart's family, and/or entities he has an ownership interest in, to the extent we can identify them after a reasonable review of Mr. New's and his businesses' bank records. The list will identify the payer, payor, date and amount.

- Finally the production will be pursuant to a protective order limiting disclosure of the documents, and information derived from the documents, to outside counsel eyes' only in light of the business relationship between Rob, ASC and HHC (business partners in some respects and competitors in others), and in view of the personal nature of the types of materials being produced.

We reserve our rights of course, as we have a number of objections to the subpoenas.

Rob also remains concerned about ASC's past-due parking lot rent payments. We had an agreement in principle about this rent many months ago, and we haven't heard anything more about the documentation. Please let us know when we can expect a response.

Thanks, and have a good weekend.

Bob

---

**From:** Eli Litoff [mailto:elitoff@rshc-law.com]
**Sent:** Wednesday, April 03, 2019 8:49 AM
**To:** Stauffer, Robert R. <RStauffer@jenner.com>
**Cc:** Valarie Hays <vhays@rshc-law.com>; Kelly Warner <Kwarner@rshc-law.com>; Valukas, Anton R. <AValukas@jenner.com>
**Subject:** RE: ASC v. Burkhart - Subpoena to Rob New

External Email – Exercise Caution

Bob,

We cannot agree to anything short of records of all payments between Mr. New and Mr. Burkhart (and his family members and agents) and the entities in which they held an ownership interest, either directly or indirectly. Recent exchanges of funds are relevant to discovering Mr. Burkhart's assets (including any assets held by Mr. New for Mr. Burkhart). Exchanges of funds during the time Mr. Burkhart was employed by ASC relate directly or indirectly to ASC's business and Mr. Burkhart's improper financial gains to the detriment of ASC. We are, however, willing to narrow the email correspondence between Mr. New and Mr. Burkhart with search terms.

We are on a tight timeline with this matter, including a complaint amendment deadline of April 17, so we will need Mr. New's position on our requests by close of business on Friday. If we cannot reach agreement, we can let the Court know on Monday that we have a discovery dispute by joint email, consistent with her procedure.

Thanks,
Eli

Eli Litoff
Riley Safer Holmes & Cancila LLP
(312) 471-8780
elitoff@rshc-law.com

---

**From:** Stauffer, Robert R. <RStauffer@jenner.com>
**Sent:** Tuesday, April 2, 2019 9:17 PM
**To:** Eli Litoff <elitoff@rshc-law.com>
**Cc:** Valarie Hays <vhays@rshc-law.com>; Kelly Warner <Kwarner@rshc-law.com>; Valukas, Anton R. <AValukas@jenner.com>
**Subject:** RE: ASC v. Burkhart - Subpoena to Rob New

Eli,

Thanks for your email; you are correct. Mr. New is not interested in a compromise that leaves the door open for successive document demands; that would seem to defeat the point of the compromise. As we discussed before, Rob is willing to help with targeted requests, but we're having a hard time seeing how the broad requests in the subpoena are

7

really designed to help you in the lawsuit. I do think it would assist, in determining whether compromise is possible, to know the universe of what you really want and how you believe those documents are material to your case.

Thanks.

Bob

**From:** Eli Litoff [mailto:elitoff@rshc-law.com]
**Sent:** Tuesday, April 02, 2019 9:24 AM
**To:** Stauffer, Robert R. <RStauffer@jenner.com>
**Cc:** Valarie Hays <vhays@rshc-law.com>; Kelly Warner <Kwarner@rshc-law.com>; Valukas, Anton R. <AValukas@jenner.com>
**Subject:** RE: ASC v. Burkhart - Subpoena to Rob New

External Email – Exercise Caution
Hi Bob,

Thank you for your response. We offered the interim steps below only to keep things moving forward, not as a final proposal. We will need more than the documents and information we suggest below. Indeed, the bank account information is designed to be the first step of obtaining records related to the relevant accounts.

If Mr. New insists on wrapping all discussions together, and declines our offer to attempt to reach agreement in some areas while tabling others, I recommend we provide all requested searches along the lines of what we did below for put-related documents. Please confirm that is the case and we will provide an updated search request document by the end of the week so you will be able to review it with Mr. New. We will note that it is difficult to make these suggestions in a vacuum, without meaningful input from Mr. New, but we will do our best.

Thanks,
Eli

Eli Litoff
Riley Safer Holmes & Cancila LLP
(312) 471-8780
elitoff@rshc-law.com

**From:** Stauffer, Robert R. <RStauffer@jenner.com>
**Sent:** Monday, April 1, 2019 3:48 PM
**To:** Eli Litoff <elitoff@rshc-law.com>
**Cc:** Valarie Hays <vhays@rshc-law.com>; Kelly Warner <Kwarner@rshc-law.com>; Valukas, Anton R. <AValukas@jenner.com>
**Subject:** RE: ASC v. Burkhart - Subpoena to Rob New

Eli,

Thank you for your email. I believe this represents some progress. Please see below in red for specific thoughts on the points you raise.

Bob

**From:** Eli Litoff [mailto:elitoff@rshc-law.com]
**Sent:** Friday, March 29, 2019 4:53 PM

8

**To:** Stauffer, Robert R. <RStauffer@jenner.com>
**Cc:** Valarie Hays <vhays@rshc-law.com>; Kelly Warner <Kwarner@rshc-law.com>
**Subject:** ASC v. Burkhart - Subpoena to Rob New

External Email – Exercise Caution

Bob,

Thank you for your participation in the call yesterday morning to further discuss the subpoena ASC issued to your client Rob New on February 26, 2019 (the "Subpoena"). I wanted to circle back on a few of what we see to be the critical points so that we can move this process forward.

First, I understand that your position is that the Confidential Settlement Agreement entered into between ASC and your clients releases Mr. New from any obligation to comply with the Subpoena. We disagree. The language of the agreement contains no such prohibition, and ASC did not have any understanding that such a limitation would be included in their release of Mr. New. ASC is seeking the information for the purpose of pursuing its claims against Burkhart and the other defendants in the civil litigation, not because of any interest in asserting claims against Mr. New. We understand your position. We'll have to disagree on this one, as the plain language of the release is broad and is not limited to civil lawsuits. Nonetheless, as we discussed, we are willing to explore a potential compromise.

Next, I understood from our conversation that your client had no objection to producing certain discrete documents to ASC, namely, documents related to the put deals between the Crusader entities and HHC. We request that you move forward with the production of those documents in the short-term while we continue to address other groups of documents sought by the Subpoena. We would appreciate hearing back from you by April 2 so that we can keep these discussions moving forward. As we discussed, Rob is willing to include puts-related documents in a compromise production. However, as I'm sure you can understand, we don't want to be in a position where we make some productions while you keep pressing for other materials. A compromise production will need to involve Rob agreeing to produce some documents while you agree not to continue to seek other documents.

To that end, we propose the following interim steps to identify responsive documents related to the put agreements, and to assist with identifying potential ways to narrow the requests related to payments and bank records:

| **Put-Related Searches for Request No. 1-2** | Data Sources | All sources of evidence available for New in his possession, custody or control (paper documents, company and personal email accounts, text messages, loose files located on PCs, thumb drives, cloud-hosted resources, etc.) |
|---|---|---|
| | Date Range | 01/01/2009 – 03/01/2019 |
| | Search Terms* | - (Burkhart or crusader or jaccd or 105214 or accd or 105210) and put<br>- Put w/5 agree*<br>- "covenant support"<br>- Omega<br>- Formation<br>- Derwent<br>- Battison<br>- Dan* w/5 Booth |

|  |  |  |
|---|---|---|
|  |  | - Dav* w/5 russ<br>- Rothner<br>- Vantage OR ((Bill OR William) w/5 Smith) |
| **Request Nos. 3-4** | Identify all bank accounts owned by Mr. New or entities he controlled between 01/01/2009 and 03/01/2019, including the named owner of each account and the purpose for which the account was used. This will allow us to narrow in on the particular accounts that involved some business activity with Jim Burkhart. | |

* Note these search terms are crafted consistent with Relativity's search criteria; if you are using some other tool to cull potentially relevant evidence, please let us know.

The syntax of the search, using Relativity format, is fine. We appreciate the effort reflected here to narrow the scope. Rob is on Spring Break this week, traveling with his son. He plans to come to Chicago on Friday so we can discuss your subpoena and the proposal above in detail. I expect to be able to respond to you promptly once we've had that opportunity to meet.

ASC reserves all rights to seek the documents identified in the Subpoena.

Best,
Eli

Eli Litoff (bio)
**Riley Safer Holmes & Cancila LLP**
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
(312) 471-8780
elitoff@rshc-law.com
www.rshc-law.com



CONFIDENTIALITY NOTE: This e-mail is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this e-mail message is not the intended recipient, or the employee or agent responsible for delivery of the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is prohibited. If you have received this e-mail in error, please notify us immediately by telephone at (312) 471-8700 and also indicate the sender's name. Thank you.

---

**Robert R. Stauffer**

**Jenner & Block LLP**
353 N. Clark Street, Chicago, IL 60654-3456 | jenner.com
+1 312 923 2905 | TEL
+1 312 840 7305 | FAX
RStauffer@jenner.com
Download V-Card | View Biography

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

CONFIDENTIALITY NOTE: This e-mail is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this e-mail message is not the intended recipient, or the employee or agent responsible for delivery of the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is prohibited. If you have received this e-mail in error, please notify us immediately by telephone at (312) 471-8700 and also indicate the sender's name. Thank you.

CONFIDENTIALITY NOTE: This e-mail is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this e-mail message is not the intended recipient, or the employee or agent responsible for delivery of the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is prohibited. If you have received this e-mail in error, please notify us immediately by telephone at (312) 471-8700 and also indicate the sender's name. Thank you.

CONFIDENTIALITY NOTE: This e-mail is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this e-mail message is not the intended recipient, or the employee or agent responsible for delivery of the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is prohibited. If you have received this e-mail in error, please notify us immediately by telephone at (312) 471-8700 and also indicate the sender's name. Thank you.

CONFIDENTIALITY NOTE: This e-mail is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this e-mail message is not the intended recipient, or the employee or agent responsible for delivery of the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is prohibited. If you have received this e-mail in error, please notify us immediately by telephone at (312) 471-8700 and also indicate the sender's name. Thank you.

CONFIDENTIALITY NOTE: This e-mail is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this e-mail message is not the intended recipient, or the employee or agent responsible for delivery of the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is prohibited. If you have received this e-mail in error, please notify us immediately by telephone at (312) 471-8700 and also indicate the sender's name. Thank you.