UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| AMERICAN SENIOR COMMUNITIES L.L.C., | ) ) ) | |
| Plaintiff, | ) ) | Case: 1:17-cv-03273-TWP-DML |
| v. | ) ) | |
| JAMES BURKHART, *et al.*, | ) ) | |
| Defendants. | ) | |

**DEFENDANT ROGER WERNER'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF SETTLEMENT AGREEMENTS**

Defendant, Roger Werner ("Werner"), by his attorneys, replies to Plaintiff, American Senior Communities, L.L.C.'s ("ASC") *Response in Opposition to Defendant Roger Werner's Motion to Compel Production of Settlement Agreements* (Dkt. 178) ("Response"). This Reply is filed in accord with the Court's *Order on Defendant Roger Werner's Motion for Extension of Time* (Dkt. 181), which was agreed to by the parties and approved by the Court on July 2, 2019.

I.    **Introduction**

1.    Since before this case was filed, Mr. Werner was aware that ASC had entered into multiple settlement agreements with various individuals and entities arising from the claims alleged in the Complaint. ASC confirmed the existence of the settlement agreements in ASC's *Responses and Objections to Defendant Roger Werner's First Set of Requests for Production* ("RFP Response") (Response Ex. B, Request No. 6). The settlement instruments were prepared by ASC with the full understanding that it would file a lawsuit against those individuals and entities with whom settlement agreements were not reached.

2.    The dispute which forms the basis of Werner's *Motion to Compel Production of Settlement Agreements* (Dkt. 149) ("Motion") originated when ASC objected to providing any

settlement agreements in response to specific production requests. (See Response Exhibit B (Request Nos. 6-7)).

3.      From early in the discovery process until May 28, 2019, ASC's position was that it was precluded from turning over the settlement agreements because the other parties to the settlement agreements had not authorized or otherwise waived their purported rights to maintain the confidentiality of these agreements.[1]   This is borne out by the following communications:

a.      In ASC's RFP Response No. 6 (Response Ex. B), ASC stated in relevant part: "Plaintiff further objects to the production of any settlement documents containing confidentiality provisions or other documents relating to confidential settlement agreements or negotiations."

b.      On February 22, 2019, in a letter from ASC attorney, Kelly Warner (**Exhibit 1**), ASC stated in relevant part: "ASC maintains its objection to producing any settlement documents containing confidentiality provisions or other documents relating to confidential settlement agreements or negotiations."

c.      In a May 21, 2019 email from ASC attorney, Eli Litoff (**Exhibit 2**), ASC stated: "[W]e are bound by our confidentiality obligations with respect to certain settlement agreements. We have sought permission from settling parties to provide you with the settlement agreements you seek.  We have obtained permission from certain parties to disclose settlement agreements, but we have not obtained permission from all of them."

---

[1] ASC has also objected based on relevance without supporting this basis.

4. On May 21, 2019, ASC produced five settlement agreements limiting their use solely for an upcoming settlement meeting between the lead attorneys for ASC and Werner. ASC further claimed that the settlement agreements were protected under Fed. Rule 408.

5. Each of the settlement agreements that have been voluntarily disclosed by ASC contemplates a court ordering the disclosure of the settlement agreements as is reflected by the following passages of the of the produced settlement agreements thus far:[2]

> Confidentiality. The Parties agree that neither they, their attorneys, nor their agents and principals shall in any way publicize or disclose to any other person or party the terms and conditions of this Agreement other than as is requested by representatives of a state or federal government, or as necessary for preparing federal and state income tax returns, and then only to the extent necessary for the preparation of such returns. If any court of competent jurisdiction is requested to enter an order that the terms and conditions of this Agreement be disclosed, the Parties agree to provide one another with prior notification to permit the other Party or its attorneys to appear and seek an appropriate protective order.

(Settlement Agreement dated October 11, 2017, emphasis added).

> Confidentiality and Mutual Pubic Statement. All Parties agree that the terms and conditions of this Settlement Agreement, and the negotiations culminating in this Settlement Agreement shall be strictly confidential.
> …
> All Parties agree to promptly notify the other Parties upon receipt of any demand or compulsion by law to disclose this Settlement Agreement or any of its terms, the negotiations leading thereto, the conditions, terms, or content of this Settlement Agreement. All Parties further agree to reasonably cooperate with the other Parties if such other Party decides to challenge the demand or legal compulsion requiring them to disclose such information. However, nothing herein shall require a Party to file moving papers or opposition papers to preclude disclosure of this Settlement Agreement or its terms.

(Settlement Agreement dated January 18, 2018).

> Confidentiality. The Parties agree that neither they, their attorneys, nor their agents and principals shall in any way publicize or disclose to any other person or party the terms and conditions of this Agreement other than as is requested by

---

[2] Even though each of the parties to the settlement agreements referenced in this paragraph have waived their confidentiality provision, Werner is not identifying the parties and is not attaching the settlement agreements. The undersigned represents that each of the passages from the settlement agreements referenced in this Reply are true and accurate passages from the settlement agreements provided by ASC.

representatives of a state or federal government, or as necessary for preparing federal and state income tax returns, and then only to the extent necessary for the preparation of such returns.  <u>If any court of competent jurisdiction is requested to enter or should order that the terms and conditions of this Agreement be disclosed, the Parties agree to provide one another with notification of prior notification of a motion requesting access to these contents this ruling or so as to permit the other Party or its attorneys to appear and seek an appropriate protective order</u>.

 (Settlement Agreement dated September 13, 2017, emphasis added).

The Parties and their counsel agree to hold, and to use their best efforts to cause anyone acting for their benefit or on their behalf to hold, in strictest confidence, each of the terms and provisions of this Agreement, except that the Parties hereto may make full disclosure of the terms of this release to representatives of the U.S. Government, in connection with its investigation into the actions of certain of ASC's former executives.

…

Notwithstanding the foregoing, both parties may disclose any of the information in this Agreement to any of the following: … (ii) <u>any person or entity to whom disclosure is legally required</u>, including where required by any law, regulation, court order, or legal proceeding relating to the enforcement of the Release;

(Settlement Agreement dated April 20, 2016, emphasis added).

6.      In several of these settlement agreements, the parties contemplated seeking a protective order if a third party sought the disclosure of the settlement agreement in question.  In this case, there is currently a protective order in place (Dkt. 68) and additional protections can be sought from the Court if necessary.

7.      Only once has ASC made an effort to compromise on their extreme position with respect to the settlement agreements.  On May 28, 2019, at a meeting in Chicago, Illinois, when Werner's counsel challenged ASC's position, ASC's counsel, Ron Safer suggested that Werner file a motion to compel.  Mr. Safer noted that with the exception of one settlement agreement, for which his memory at the time was understandably not clear, that ASC had no basis to object to the production of the settlement agreements.  On May 31, 2019, Werner, in reliance on what was discussed and agreed upon during the May 28, 2019 meeting in Chicago, filed his Motion to

Compel the production of responsive settlement agreements.  The representations made by ASC in its Response are troubling in the following particulars:

a.   On June 3, 2019, Mr. Safer stated in an email (**Exhibit 3**) that: "We received your motion [to compel]. Under the terms of <u>one agreement</u>, we are obliged to oppose the motion and will do so." (emphasis added).  Mr. Safer's comment in this email was consistent with the discussions during the May 28, 2019 settlement meeting.

b.   On June 7, 2019, Mr. Safer sent another email (Response Ex. C), inaccurately stating: "I thought I'd nonetheless elaborate on a compromise I had offered before your filing".  Mr. Safer never suggested a second compromise after the May 28th meeting.  One would be hard-pressed to understand how he could elaborate on a new proposal if it was the first time since the May 28th meeting that he raised the issue. Moreover, if what was stated in his June 7, 2019 email was his second proposal, what was the first proposal? There can only one answer and that was Mr. Safer's invitation extended on May 28, 2019, for Werner to file a motion to compel which indeed was filed on May 31, 2019.

c.   ASC's carries forward this inaccurate representation about offers in its Response.  ASC's initial offer was during the May 28th meeting; the next proposal was on June 7th when ASC counsel suggested that ASC provide only raw total amounts of payments received –to which Werner's Counsel summarily rejected (**Exhibit 4**).  The "new offer" was made in derogation of the invitation by Mr. Safer to file a motion to compel as well as Mr.

Safer's June 3rd email (Ex. 4).  In this context, the proposal on June 7, 2019, was not made in good faith, the lack of legal authority notwithstanding.

d.   Werner is entitled to and needs each settlement agreement which ASC entered in order to prepare his defense.  ASC's suggestion on June 7th to provide only a raw number of the total amount of money that ASC has received from settlements to date is wholly inadequate and does not come close to meeting the rights of Werner under both the caselaw and under general notions of logic and fair play for these reasons:

   i.   This is not a simple linear lawsuit in which ASC has claimed that it has suffered monetary damages arising from a single set of facts. Rather, ASC has represented (as recently as ASC's *Motion to Amend the Case Management Plan* (Dkt. 156)) that this is a highly complex case, and that it may seek leave to amend its 79-page Complaint and add parties. For example, if the Court grants Werner's *Motion to Dismiss* (Dkt. 75), Werner will not face liability under the RICO or RICO related claims whereas others may have settled largely if not solely because of the RICO claims. For example, Ganote, who unlike Werner was a criminal defendant, is named prominently in the RICO related claims, and settled with ASC likely based on his RICO involvement. Without the complete settlement agreements, Werner will be unable to analyze how many other parties may fall into a similar category.

ii. It eliminates the option of obtaining an important source of impeachment, which is fundamentally and intrinsically involved in the settlements of civil cases, and the disposition of the related criminal cases. Certainly, the amount a party settles for in relation to the liability he faces may bear on his credibility and bias as a witness. For example, Mr. Safer disclosed to Werner's attorney on May 28, 2019 that ASC prohibited its lawyers from suing Robert New; therefore, ASC settled for much less than it would have if there had not been the prohibition. Mr. Safer stated that ASC would "have settled for anything with Mr. New" and noted Mr. New's significantly higher degree of culpability than that of Werner.

iii. In its filing on July 12, 2019, (Dkt. 185), ASC attached as Exhibit A, the *Declaration of Steven J. Ganote* which is highly favorable to ASC's position. This is surprising in light of the strong and personal admonition at the October 17, 2018 pretrial conference by Mr. Ganote's attorney, David J. Carr, where he was strongly critical of ASC and its lawyers in a personal and *ad hominin* manner. The complete turnaround by Mr. Ganote from the statements of his lawyer after he entered into a settlement agreement with ASC strongly suggests that he is now contractually bound to testify favorably for ASC. Thus, rendering his settlement agreement to be of critical importance to Mr. Werner. The Court ordered the

7

dismissal of Mr. Ganote on March 12, 2019 (Dkt. 122) at ASC's request (Dkt. 121).

iv.   It eliminates the possibility of obtaining other relevant materials as described in *Meharg v. I-Flow Corp.*, 2009 WL 3032327 (S.D. Ind. 2009), discussed below.

8.    In summary, the totality of § II of ASC's Response is consistently misleading and meritless.

## II.    **There is No Basis to Strike the Motion to Compel**

9.    Werner's Motion to Compel was filed at the suggestion of Mr. Safer to expedite the process of Werner obtaining the settlement agreements while protecting ASC with respect to settlement agreements that purportedly contain confidentiality requirements.  As matters currently stand, ASC now wants to have stricken that which it has invited and encouraged, after ASC finally agreed to a compromise to streamline the discovery process. Instead of ASC expediting a resolution on one discovery issue, it has now forced Mr. Werner into separately litigating this issue causing further unnecessary costs, delay and Court resources.

10.   The legal authority identified by ASC is inapposite.  Both *Petty v. City of Chicago*, 754 F.3d 416 (7th Cir. 2014) and *Bordelon v. Chi. Sch. Reform Bd. Of Trs.*, 233 F.3d 524 (7th Cir. 2000) involved violations of the local rules pertaining to summary judgment practice.  In *Petty*, the Court struck all but the first 40 paragraphs of the summary judgment because the local court rules had a 40-paragraph limit. (*Id*. at 419-420).  Unlike the relief sought by ASC, the *Petty* Court did not strike the entire summary judgment motion, only that part which exceeded 40 paragraphs. In *Bordelon*, the court struck a statement of facts because it failed to address each of the factual assertions made by the opposing party. The violations made by the respective parties in *Petty* and

*Bordelon* fundamentally rendered the summary judgment process in each case flawed to the point that without the remedial actions approved by the Court would have rendered the summary judgment meaningless.

11.    ASC has mischaracterized elements of Local Rule 37.1 as it applies to this dispute. First, lead counsel for Mr. Werner traveled to ASC's Counsel's Chicago office for a face-to-face conference.  Second, an agreement was reached that a motion to compel would be filed in order to *expedite* matters.  Counsel for Werner was stunned when ASC Counsel reneged on ASC's offer. Third, the Local Rules were amended effective December 1, 2018, to remove the word "encourage" and replace it with "shall" with respect to contacting the Magistrate pertaining to discovery disputes.  The notes to Local Rule 37.1 provide in relevant part that "more complex discovery may benefit from full briefing, but the amended rule recognizes that most discovery disputes can be resolved or at least narrowed by good-faith efforts of counsel and intervention by the Magistrate judge as necessary."  Werner concluded that in the interest of efficiency, a concept discussed and agreed to on May 28, 2019, that the Local Rule 37.1 requirement could be dispensed with the understanding reached between lawyers.  The ASC lawyers have not conducted themselves in good faith in this instance.  To the extent Werner's Motion may constitute a technical deviation from Local Rule 37.1, Werner requests that it be permitted given the circumstances as stated in this Reply.

## III.    ASC has Not Offered Cogent Legal Authority on Why the Motion to Compel Should be Denied

12.    In its Response in general and more specifically in § II of its Response, ASC has identified key phrases and buzzwords that without further review, would seem to place in question whether the settlement agreements should be disclosed.  However, a cursory review of *Davenport v. Indiana Masonic Home Found., Inc.*, WL 1888986 (S.D. Ind. Mar. 27, 2003) reveals that ASC

has not accurately conveyed the legal principles and the facts of the cases that it is citing. *Davenport* involves distinguishable facts. In *Davenport*, the party who purportedly had a settlement agreement, had been deposed and therefore could not again be deposed with respect to the settlement agreement at issue.   On this point, the Court stated: "If plaintiff had not yet deposed Hammond, her motion would have been granted since his testimony concerning the events leading up to her termination is clearly relevant" (*Id*. at *1).  Because of the unusual facts of *Davenport*, the Court determined that the disclosure of the settlement agreement would violate the attorney-client privilege. (*Id*.).  The issue of attorney-client privilege has not and cannot be argued with respect to the settlement agreements sought in this case.

13.     ASC's representation that *Centillion Data Sys., Inc. v. Ameritech Corp.*, 193 F.R.D. 550 (S.D. Ind. 1999) is dispositive of these issues, and that *Meharg* (*supra*) is inapplicable does not withstand the scrutiny of either case. The party seeking the disclosure of settlement agreement in *Centillion* sought *"to determine better the merits of Plaintiff's case and assess the feasibility of settling the lawsuit at an early stage."* Not only did the party seeking the settlement agreement fail to explain how obtaining the settlement agreement would advance his stated purpose, the settlement agreement it sought was part of an unrelated litigation, in contrast to the present case where the pre-filing settlements all relate to the allegations contained in the ASC complaint. (*Id*. at 552-553).

14.     The relevance of the disclosure of the settlement agreements here can be gleaned in part from the several settlement agreements that ASC has thus far voluntarily produced on May 22, 2019 (see ¶ 4).  In at least one agreement, there is the following cooperation provision akin to a cooperation agreement in a criminal case:

2.     <u>Cooperation in Litigation</u>.  [Party] agrees to fully cooperate with ASC in any potential civil lawsuit against Burkhart and others (the "Lawsuit").  [Party]'s

full cooperation shall include, but is not limited to, participating in an interview conducted by ASC's counsel within two weeks of ASC's execution of this Agreement. [Party] agrees to provide full and truthful answers to the questions posed by ASC's counsel during the interview. [Party] further agrees to make himself available for subsequent interviews with ASC's counsel concerning the subject matter of the Lawsuit. [Party]'s full cooperation shall include providing truthful affidavits, declarations, and/or trial or deposition testimony, if called upon to do so. The Parties agree that [Party]'s cooperation will be limited to providing non-privileged information. <u>The Parties agree that this Section 2 was separately bargained for and is an essential and material term of this Agreement, for which due and sufficient consideration has been provided.</u>

(Settlement Agreement dated September 13, 2017, emphasis added).[3] Based on this provision, Werner can and likely will argue that this party paid for his peace in return for testifying in a manner favorable to ASC.

15.     In *Meharg*, Judge Hamilton provided an outstanding discussion of the issues that are nearly identical to the issues in this case, each one of which, according to the Court in *Meharg*, supports the disclosure of the settlement agreements. Thus, ASC's contention that *Meharg* does not apply is simply wrong.

16.     ASC's analysis of *Meharg* is further flawed because it claims that its holding only applies to "parties". ASC compounds this mistake by stating that "no defendant [in the present case] has pled [sic] a defense based on the alleged fault of a settling defendant or anyone else." (Response p. 8) these two assertions are fundamentally flawed because:

    a.     The explanation that most of the settlement agreements in this case involve
            non-parties is because such entities or individuals settled and therefore were
            not made parties to this litigation. But for the settlement, such individuals

---

[3] The above-referenced passage suggests that ASC had not questioned the other party before entering into the settlement as if the agreement was not contingent on ASC hearing what it wanted to hear from that party. But ASC *met with Roger Werner before filing the lawsuit and took his statement.* ASC did not like what it heard from Werner and terminated the discussion. ASC advised that it was having similar meetings with "potential defendants" during the same period of time.

and entities would be defendants. In so doing, ASC is attempting to confuse the facts of *Centillion* where there were different lawsuits and different claims of the party seeking the settlement and the issues memorialized in the settlement.

b.  Curiously, ASC refers to <u>all defendants</u> with respect to its dubious claim that there have not been defenses pertaining to either the allocation of fault or the allocation of damages.  Until the Court adjudicates the Motion to Dismiss, the assertion of affirmative defenses, non-party defenses, and potential counter and cross-claims is not ripe.  Werner represents that he will make these allegations at the appropriate time.  By ordering the production of the remaining settlement agreements now, the Court would expedite the litigation.

17.  ASC claims the agreements should not be provided because Werner has engaged in "mere speculation" that they may provide discoverable or otherwise valuable information, citing *Homeland Ins. Co. of New York v. Health Care Serv. Corp.*, 330 F.R.D. 180 (N.D. Ill. 2019) (See Response p. 9).  ASC once again misstates the facts and the holding of a case it has cited.  The Court in *Homeland* expressly stated that "Homeland's concerns, and thus its demand for production of the settlement agreement, are premature. HCSC has not made a claim under the Homeland policy and has not asserted that it has exhausted the underlying Allied World and Travelers policies" (*Id*. at 182).  The court in *Homeland* did not unconditionally prohibit the disclosure of the settlement agreement, but rather denied it at that time because there was no claim yet filed that would create a need to see the settlement agreement. In contrast here, the settlement agreements are ripe for disclosure based on issues involving impeachment and set-off.  Finally, ASC again

12

rejects the tenants of *Meharg* which stated on this point that the party cannot know if the settlement agreement is relevant until the party sees it, thus defeating the notion that seeking the settlement agreement is speculative.

18.    ASC is confusing the Rules of Evidence with the Rules of Court by using Evid. R. 408 in an effort to withhold the settlement agreements. As was stated in *Mehrang*:

> Astrazeneca points out correctly that Rule 408 applies only to admissibility at trial, not to discovery. Astrazeneca cannot know whether this settlement agreement might fall within one of those Rule 408 exceptions unless it can learn the terms of the settlement agreement. See *Bennett v. LaPere*, 112 F.R.D. 136, 139 (D.R.I.1986); see also *In re Subpoena Issued to Commodity Futures Trading Comm'n*, 370 F.Supp.2d 201, 211 (D.D.C.2005) (Rule 408 limits admissibility at trial but not discoverability; permissible uses of settlements as evidence imply that discovery of such matters is permissible).

(*Id*. at *3).

## IV.   There is No Policy or Relevance Issue that Outweighs Disclosure of the Settlement Agreements

19.    The relevance of the settlement agreements, just from what can be gleaned from the several agreements thus far disclosed, include impeachment and set-off or allocation of damages, if any. It is unusual, to the say at the least, for a settlement agreement to contain a cooperation agreement. How many other settlement agreements contain a similar cooperation agreement is unknown to Werner and cannot be known until the agreements are produced.

20.    ASC cites no case nor is there any legal authority that once settlement agreements are deemed relevant, they can be withheld from production because the interests of the parties to the agreement outweigh the interests of Werner. The fact that there is a Protective Order in place as drafted by ASC, further weakens their position.

21.    Evidence Rule 408 does not have a blanket immunity for settlement agreements-- even those designated as confidential. The Rule was established to enable parties to speak freely

about attempting to settle a case. A party who fears that her statements about settlement could come back to haunt her may understandably remain silent or be less than candid to ensure that her statements do not later undercut her. The Rule talks mainly in terms of settlement discussions in subpart (2) and to a lesser extent about a settlement in subpart (1). Any concerns about chilling the settlement process are absent, leaving embarrassment, privacy and similar subjective reasons. The need for Werner to defend himself from a monolith such as ASC who his seeking over $200,000,000 in damages far outweighs the remote chance that a person or entity may feel uncomfortable about the terms of their settlement agreement with ASC. Finally, a protective order will prevent the parties from making the terms of the settlement agreements public and limited their disclose to that necessary to protect the interest of the party seeking their disclosure.

WHEREFORE, for the reasons set forth in Werner's Motion to Compel and this Reply, Werner respectfully requests that the Court grant his Motion to Compel and for all other just and proper relief.

Respectfully Submitted,

s/ Edward F. Schrager
Edward F. Schrager, #1517-49
Donna R. Eide, #12499-98
Arthur R. Baxter, Jr., #10774-49
BAXTER ROSE & SCHRAGER LLP
50 E. 91st Street, Suite 103
Indianapolis, IN 46240
Telephone: (317) 842-1600
Fax: (317) 842-1840
eschrager@brs-lawyers.com
dreide@earthlink.net
abaxter@brs-lawyers.com
*Attorneys for Defendant, Roger Werner*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 15, 2019, I caused the foregoing document to be filed using the Court's electronic filing system, which will send notice of this filing to all counsel of record. Additionally, I will cause notice of this filing to be sent via U.S. Mail, postage prepaid, to Daniel Benson, Joshua Burkhart, Circle Consulting LLC, and Heartland Flag LLC at the following addresses:

Daniel Benson
Inmate No. 15431-028
FPC Montgomery
Maxwell Air Force Base
Montgomery, AL  36112

Joshua Burkhart
10124 Cheswick Lane
Fishers, IN  46037

s/ Edward F. Schrager
Edward F. Schrager, #1517-49

15