

**Edward F. Schrager**
E-Mail: eschrager@brs-lawyers.com

April 24, 2019

<u>Via Electronic Mail</u>
(elitoff@rshc-law.com)

Eli J. Litoff
R<small>ILEY</small> S<small>AFER</small> H<small>OLMES</small> & C<small>ANCILA</small> LLP
Three First National Plaza
Chicago, IL  60602

   RE: *American Senior Communities, L.L.C. v. James Burkhart, et al.*
      Case No.:  1:17-cv-03273-TWP-DML

Dear Eli:

  This letter is written as our final effort to resolve the discovery impasse before resorting to the Court. We are hopeful that ASC will reconsider its position and respond in a manner that allows Mr. Werner to review the evidence in a reasonably efficient manner consistent with legal standards. As matters currently stand, it is impossible for Mr. Werner or his team to locate and examine critical requested evidence. The way ASC's has produced evidence runs contrary to its anecdotal representations regarding the soundness of its case.

I. Background and Introduction

  A. The genesis of our discovery efforts and the events resulting in the current impasse are:

   1. Mr. Werner's *First Request for Production of Documents to Plaintiff* ("Requests") was propounded on December 10, 2018.  ASC provided its *Responses and Objections to Defendant Roger Werner's First Set of Requests for Production* ("Responses") on January 9, 2019.

   2. On February 5, 2019, ASC was provided a detailed description of the deficiencies of ASC's Response.  The following day, ASC stated that it wanted a "meet and confer", which was scheduled for February 13, 2019.

   3. On February 13, 2019 we had a teleconference, but it did not turn out to be what is customarily referred to as a "meet and confer" as contemplated by the discovery and local rules.  Instead of going through our concerns regarding the Requests as described in our February 5, 2019 communication, Ms. Warner's comments and queries suggested a lack of knowledge of

Eli J. Litoff
LR 37-1(a) Communication
April 24, 2019
P a g e | 2

specific issues and a seeming lack of preparation for the meeting. It appeared that she had not reviewed either my February 5, 2019 letter or ASC's Response, so the call was fruitless. Nearly every question posed by ASC during that meeting could have been answered by ASC if the ASC team did the usual due diligence—searched their collected documents and data and consulted more knowledgeable ASC lawyers or employees to locate responsive materials. The fact that ASC never followed up on my suggestion to send its questions to me by way of email or letter was itself revealing.

    4.  The Werner team voiced its concern in its February 18, 2019 letter to which ASC responded in its February 22, 2019 letter. We have previously commented about the contents of your February 22, 2019 letter.

    5.  With the passage of time, ASC retreated slightly from its initial positions by accepting several of Werner's suggestions.  Such instances of acquiescence were generally insubstantial.  As such, ASC's Responses remain inadequate and below legal standards as will be identified in this letter.

II.  The deficiencies of both ASC's approach to discovery and its Responses.[1]

    6.  ASC has chosen to flatly object to requests 6-9, 26-31, and 42-45 on relevancy grounds.  These objections are not well taken with respect to any of these requests, each such objection should be withdrawn and replaced with unqualified responses provided.

    7.  ASC is attempting to avoid its obligation of due diligence to both find documents responsive to specific requests, and to inform us affirmatively if such records exist. This is applicable to Requests 5, 19-23, and 42.[2]  Failing to tell us whether specific responsive materials exist cannot be reconciled with the suggestion that instead of ASC conducting its due diligence, the parties agree on terms for keyword searching only.  It also calls into question whether ASC met its obligation to search, collect, and preserve records that relate to the civil Complaint that ASC has filed.  Its obligation is not met by collection efforts it may have done to assist the Government in its criminal investigation; the issues and allegations in the criminal action may overlap, but are not identical, to the allegations in the Complaint.  Thus, ASC vendor selection guidelines, or board minutes should be located and produced, not held back because they are not found during keyword searches.  Keyword searches were never designed to locate –for example-- corporate records, or board notes, kept and filed in the regular course of business. Further, as you

---

[1] Werner has previously provided the legal authority for his position regarding specific responses of and objections by ASC with respect to its positions. We are therefore not going to cite again the specific failure by ASC to properly answer discovery or the legal basis for it. We will go into detail with the legal standards and erroneous nature of the objections should ASC not correct its discovery responses in accord with this letter.

[2] Although Werner has suspended the need to respond to Requests 19-23, in the interest of efficiency, the parameters of responding to these requests should be resolved now with production when the suspension ends.

Eli J. Litoff
LR 37-1(a) Communication
April 24, 2019
P a g e | 3

may recall, ASC acknowledged its lack of awareness of the Zurich settlement and other settlements for that matter during the February 13, 2019 teleconference.

8. ASC claims its productions were organized "in the regular course of business" and oddly noted the second production was produced "from our Panoptic database." ASC's storage method is not particularly relevant for our purposes; custodian sources, file structure and other regular course of business details are relevant. The Werner team was surprised that all ASC productions lacked custodian identification or file structure fields/data. In an attempt to get these gaping oversights addressed so we could make sense of the random records produced, the Werner team requested the missing fields of data and any other details ASC could provide as guidance. No business would be able to locate a specific record without source or file details, and no party could use a record as evidence without such basic source information.

   a. ASC only provided what it referred to as "custodian overlay" that listed some employees, with substantial records listed simply as "ASC". Providing a custodial overlay that claims a record source as "ASC" is well below legal requirements.

   b. ASC provided an overlay that was confined to the first and last pages of each document but contained no file structure or field data of any kind. Providing only document parameters, without details about how each record (such as an invoice for example) was filed by vendor, year, and with related company handling details, fails to meet legal requirements.

9. ASC has failed to produce records as maintained "in the regular course of business" per Rule 34. ASC must clearly explain what details for the custodians/file structures/etc. they preserved and can provide that would comport with the "regular course of business" organization it insists on utilizing. If ASC is unable to provide such details, then it cannot rely on the "regular course of business" standard.

III. The parties do not agree on the parameters of the following requests:

10. <u>Request No. 2</u>: ASC has refused to include Kump as relevant.

11. <u>Request No. 3</u>: ASC has refused to include Ethan Jackson as a Board Member and to produce documents sought with respect to him accordingly.

12. <u>Request No. 4</u>: ASC has refused to include Ethan Jackson as a Board Member and to produce documents sought with respect to him accordingly.

13. <u>Request No. 5</u>: This Request, by its very terms, contains a finite set of data which should simply be turned over. ASC has refused to conduct a search of its records for the documents sought by way of this Request. ASC has an obligation to conduct due diligence as

Eli J. Litoff
LR 37-1(a) Communication
April 24, 2019
P a g e | 4

required. We do not agree to ASC's suggestion of only keyword searches which likely will be a fruitless effort and will effectively allow the concealment of relevant materials whether wittingly or not.

14. <u>Request No. 6</u>: ASC's response to this Request is unreasonable. Of course, we have the right to see all settlements agreements, release instruments and related documents. Such documents are relevant under multiple theories, not the least of which is the concept of an offset to the amount of damages. ASC has claimed it is pondering this issue which it views as a conundrum notwithstanding the existence of the standing Protective Order. The time for reflection on this issue has come to end. All such instruments that fall within this Request must be produced.

15. <u>Request Nos. 7-9</u>: All documents responsive should be provided and identified as responsive to this Request. There are tools that will protect the documents such as the standing Protective Order and use of a privilege log if necessary.

16. <u>Request No. 10</u>: No custodian overlay has been provided that confirms that ASC produced any records from an ASC Board Member/owner. ASC promised meeting packets which we believe came from Werner's files. ASC has failed to produce board minutes which are clearly relevant and should be provided without the general objections.

17. <u>Request No. 18-23</u>: ASC provided over one million invoices and similar records. We have no idea of to what request(s) those documents are related and have no guidance with respect to those documents. There is no way to describe those documents as anything other than a "document dump". If ASC contends that such documents relate in any way to Requests 18-23, it is the Werner team's view that such documents are not responsive, and even if they were, these documents were not provided in the normal course of business.

18. <u>Request No. 19</u>: This Request, by its very terms, contains a finite set of data. ASC controls access and has a duty to search, so responsive materials should simply be turned over. The suggestion for us to guess keywords will present a likelihood that we will not see documentation and ESI to which we are entitled.

19. <u>Request Nos. 26-28</u>: ASC's objection that such documentation is outside the timeframe of the lawsuit is meritless. Please provide responsive materials.

20. <u>Request Nos. 29-31</u>: This information is highly relevant. We are entitled to see how the ASC owners and Board Members enriched themselves by the wrong doing about which it now complains. Please provide responsive materials.

21. <u>Requests Nos. 42-44</u>: We will suspend these responses subject to reviewing your demand and expert report. We will not accept the use of keywords.

Eli J. Litoff
LR 37-1(a) Communication
April 24, 2019
P a g e | 5

22.     Request No. 45:  A keyword search is unacceptable for this Request.  It would not be burdensome for ASC to provide Werner email by date unless the volume is voluminous; but ASC has not so indicated or provided any reason at all for its refusal.  Werner reduces the data parameters of this Request to September 15, 2014 through March 15, 2015.

We trust that a substantive response will be made within 14 days of this letter.  If that is not possible, let us know the reasons and we will consider an extension. It is imperative that we agree soon on a date of compliance with the matters set forth in this letter so we may decide our course of action going forward.

Sincerely,

BAXTER ROSE & SCHRAGER

Edward F. Schrager

EFS: ld
cc:     Kelly M. Warner (*via email*)
        Laura Kleinman (*via email*)
        Matthew C. Crowl (*via email*)
        Ronald S. Safer (*via email*)
        Valarie Hays (*via email*)