UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AMERICAN SENIOR COMMUNITIES, L.L.C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:17-cv-03273-TWP-DML |
| | ) |
| JAMES BURKHART, DANIEL BENSON, | ) |
| ROGER WERNER, *et al.* | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |
| | ) |
| JAMES BURKHART, | ) |
| | ) |
| Counter-Claimant, | ) |
| | ) |
| v. | ) |
| | ) |
| AMERICAN SENIOR COMMUNITIES, L.L.C., | ) |
| | ) |
| Counter-Defendant. | ) |

**ORDER ON MOTIONS TO DISMISS**

This matter is before the Court on a Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendant Roger Werner ("Werner") (Filing No. 75), and a Motion to Dismiss filed by Plaintiff/Counter-Defendant American Senior Communities, L.L.C. ("ASC") (Filing No. 100). ASC initiated this action in August 2018, alleging that from approximately 2008 through 2015, executive officers and vendors of ASC systematically looted it through a pattern of racketeering activity. The Complaint alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and the Indiana RICO statute, fraud, breach of contract, tort claims, and other state statutory claims. In response to the Complaint, Werner filed a Motion to Dismiss. Defendant James Burkhart ("Burkhart") filed an Answer to the Complaint and also asserted

affirmative defenses and counterclaims.[1] Thereafter, ASC filed a Motion to Dismiss Burkhart's counterclaims. For the following reasons, the Court **denies as moot without prejudice** Werner's Motion to Dismiss and **grants** ASC's Motion to Dismiss.

## I.     BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint (or the counterclaim), thus the Court draws all inferences in favor of ASC (or Burkhart) as the non-moving party. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008) (standard for dismissal of a complaint); *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001) (similar standard for dismissal of a counterclaim).  This background section is not intended to be a comprehensive presentation of the facts of the case.

ASC is a privately-owned Indiana company headquartered in Indianapolis.  It owns, operates, and manages a variety of extended care facilities, including assisted and independent senior living communities, nursing homes, and skilled living facilities throughout Indiana.  The Health and Hospital Corporation of Marion County ("HHC") holds the health care operating licenses for most of the facilities that ASC manages, and as a result, bears the sole financial and regulatory responsibilities for each of ASC's facilities.  ASC manages seventy-eight skilled nursing homes, four assisted living facilities, and numerous independent housing units on behalf of HHC.  ASC and its affiliates employ over 10,000 employees in providing care to residents and management of its facilities and  ASC cares for over 9,000 residents (Filing No. 1 at 3, 7–8).

---

[1] Co-defendants ACCD LLC d/b/a Crusader Healthcare Services III, American Senior Care LLC, JACCD LLC d/b/a Crusader IV, 105214 Investments LLC d/b/a Crusader Healthcare Services, and 105210 Investments LLC d/b/a Crusader Healthcare Services II each joined in Burkhart's Answer, Affirmative Defenses, and Counterclaims and are collectively referred to as "Burkhart" or the "Burkhart Defendants" in that filing (Filing No. 83 at 1–2).

Burkhart was an Indiana resident, and is ASC's former chief executive officer ("CEO"). He operated ASC from approximately 2000 through September 15, 2015, when the Federal Bureau of Investigation executed search warrants at numerous sites, including Burkhart's principal residence and his primary office at ASC. Burkhart currently resides at the Federal Prison Camp Montgomery, Maxwell Airforce Base, in Montgomery, Alabama (Filing No. 1 at 3; Filing No. 83 at 30). Werner is an Indiana resident and ASC's former chief financial officer who worked closely with both Burkhart and co-defendant Daniel Benson ("Benson"), ASC's former chief operating officer, beginning in 2002. Werner became ASC's chief financial officer in 2007 (Filing No. 1 at 4). Burkhart, Benson, and Werner never had an ownership interest in ASC and were never on ASC's board of managers. *Id.* at 3, 8.

Burkhart received a salary for his work as ASC's chief executive officer pursuant to a compensation agreement dated October 10, 2000. The agreement was later restated and further explained in a letter dated October 6, 2003, which was then amended on two subsequent occasions on November 24, 2009 and August 31, 2012 (the "Compensation Agreements"). The November 24, 2009 addendum amended the severance provision to entitle Burkhart to two times, instead of one times, his base salary upon termination and added a "retention bonus," to be paid to Burkhart in the event he was terminated "without Cause" or if he resigned. (Filing No. 83 at 30–32). The Compensation Agreements were entered into between Burkhart, ASC, and its owners (the Jackson and Justice families, and their affiliates). The Compensation Agreements define "Cause" as termination due to (i) felony conviction or (ii) misuse of alcohol or drugs which interferes with employment performance. *Id*.

Following the September 2015 FBI raid—the execution of search warrants at Burkhart's principal residence and his primary office at ASC—Burkhart was terminated from his position as

3

ASC's chief executive officer and on October 4, 2016 he was indicted for several counts relating to fraud, money laundering and violation of the anti-kickback statute. At the time of his termination in 2015, Burkhart had not been convicted of a felony, and he had not been accused of misusing alcohol or drugs, so under his compensation agreements, his termination was without cause. *Id.* at 32. Pursuant to Burkhart's Compensation Agreements, he should have been paid various benefits totaling approximately $2,466,713.46 at the time of his September 2015 termination. However, ASC and the Jackson and Justice families failed to make these payments to Burkhart at the time of his termination or any time thereafter. *Id.*

Burkhart and Benson were the highest-ranking executives at ASC, and they used their positions of trust to limit the number of people who had access to the financial details of their operation. They enlisted their associates to assist them in constructing a racketeering enterprise and executing a series of mail and wire frauds and other racketeering activities. These activities were ongoing over an extended period of time beginning in 2008 and continuing through at least September 15, 2015. Their activities included frauds that required ASC to pay inflated prices for products and services or to pay unnecessary fees to companies secretly owned or controlled by Burkhart, Benson, or their associates and to companies that remitted kickbacks to them; frauds that caused ASC to pay inflated salaries and bonuses to Burkhart, Benson, and Werner and that provided lavish benefits including skyboxes for sporting events, private jets, golf trips, and expensive meals for themselves and their associates at the expense of ASC; fraudulent misdirection of ASC's corporate opportunities for the benefit of Burkhart, Benson, and their associates; and activities designed to conceal their fraudulent activities (Filing No. 1 at 1–3). These activities were undertaken to defraud ASC continually until the FBI raided ASC's offices and the homes of several defendants in September 2015. *Id.* at 14.

On September 15, 2017, ASC filed this lawsuit against Burkhart, Benson, Werner, and others asserting claims for violations of the federal RICO and Indiana RICO statutes as well as other Indiana statutes. ASC also asserted claims for fraud, breach of fiduciary duty, negligence, breach of contract, and unjust enrichment among other claims. On January 10, 2018, Burkhart pled guilty, and provided a factual basis under oath, to knowingly engaging in a conspiracy to commit mail, wire, and healthcare fraud "with an *intent* to advance the conspiracy," as well as conspiracy to violate the anti-kickback statute and money laundering. (Filing No. 96-1). While under oath, Burkhart stated that the factual basis was the truth and he had nothing to change or correct regarding the factual basis. *Id*. at 10.

On December 10, 2018, Werner filed a Motion to Dismiss, asking the Court to dismiss the civil RICO and Indiana RICO claims against him as well as the fraud claim. On December 20, 2018, Burkhart filed an Answer and asserted two counterclaims against ASC for breach of contract and unjust enrichment. On January 22, 2019, ASC filed a Motion to Dismiss Burkhart's counterclaims.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633; *Cozzi Iron & Metal*, 250 F.3d at 574 (similar standard for dismissal of a counterclaim). However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

When considering a motion to dismiss, "a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

### III.  DISCUSSION

Werner seeks dismissal of four claims in ASC's original Complaint. ASC seeks dismissal of Burkhart's counterclaims for breach of contract and unjust enrichment. The Court will first address Werner's Motion to Dismiss and then turn to the Motion filed by ASC.

### A. Werner's Motion to Dismiss

On September 15, 2017, ASC filed a 79-page Complaint, asserting sixteen different claims against twenty-one defendants. These claims included fact-intensive claims for fraud, RICO conspiracy, RICO violation, and Indiana RICO violation. More than a year later, on December 10, 2018, Werner filed his Motion to Dismiss. Werner asks the Court to dismiss the fraud, RICO, RICO conspiracy, and Indiana RICO claims pending against him. He argues that dismissal of these four claims is appropriate because the Complaint's factual allegations against him are insufficient to state a claim upon which relief can be granted.

The status of this case has changed considerably since the filing of the original Complaint. By the end of February 2019, the parties briefed Werner's Motion to Dismiss. Numerous discovery disputes have ensued since that time. One defendant was voluntarily dismissed with prejudice, and other defendants had a clerk's entry of default entered against them. Importantly, on September 13, 2019, ASC filed an Amended Complaint, which in now the operative complaint in this case. The 85-page Amended Complaint asserts sixteen claims against fifteen defendants ([Filing No. 218](#)). Because Werner's Motion to Dismiss challenges the factual sufficiency of the original Complaint and ASC has since filed an Amended Complaint, the Court **denies as moot without prejudice to refile** Werner's Motion to Dismiss.

### B. ASC's Motion to Dismiss

After ASC filed its Complaint against Burkhart and numerous other defendants, Burkhart filed an Answer and asserted counterclaims against ASC for breach of contract and unjust enrichment. Burkhart based his counterclaims against ASC on the non-payment of certain benefits provided for by his Compensation Agreements.

ASC argues that Burkhart's counterclaims fail to state a claim upon which relief can be granted and asserts that Burkhart's claims are barred by the doctrine of unclean hands because he defrauded ASC out of millions of dollars. ASC contends the breach of contract claim should be dismissed because Burkhart committed the first breach and cannot complain of an alleged subsequent breach by ASC. It also argues that Burkhart's unjust enrichment claim should be dismissed because an action for unjust enrichment cannot lie where there is a valid and enforceable agreement, which is what Burkhart has alleged.

The doctrine of unclean hands bars a plaintiff's claim where: (1) the plaintiff's misconduct was intentional, (2) the plaintiff's wrongdoing concerned the defendant and had an immediate and necessary relation to the matter in litigation, and (3) the defendant was injured by the plaintiff's conduct. *Barrett v. Grow*, 2008 U.S. Dist. LEXIS 92445, at *15 (S.D. Ind. Nov. 13, 2008).

ASC argues that the doctrine easily applies to Burkhart's counterclaims. Burkhart's misconduct was intentional; he pled guilty to knowingly engaging in a conspiracy to commit mail, wire, and healthcare fraud with an intent to advance the conspiracy. Burkhart's wrongful conduct is immediately and necessarily related to his counterclaims; his counterclaims relate to his employment relationship with ASC as its CEO, and his criminal convictions arose out the fraud he committed in his employment relationship with ASC as its CEO. Finally, ASC asserts it was injured when Burkhart defrauded it out of millions of dollars for which ASC was entitled to restitution as a crime victim. Thus, Burkhart's counterclaims for breach of contract and unjust enrichment are barred by the doctrine of unclean hands.

As an additional basis for dismissal, ASC argues the breach of contract counterclaim is barred because Burkhart materially breached the agreement prior to any alleged breach by ASC. By committing fraud against ASC, Burkhart knowingly breached the implied covenant of good

faith and fair dealing owed to ASC as its CEO. This covenant is implied in all employment agreements in Indiana. *See Coates v. Heat Wagons, Inc.*, 942 N.E.2d 905, 918 (Ind. Ct. App. 2011). ("A party first guilty of a material breach of contract may not maintain an action against the other party or seek to enforce the contract against the other party should that party subsequently breach the contract.") *Liocci v. Cardinal Assocs., Inc.*, 492 N.E.2d 48, 52 (Ind. Ct. App. 1986); *see also Felker v. Sw. Emergency Med. Serv., Inc.*, 521 F. Supp. 2d 857, 869 (S.D. Ind. 2007). Thus, when Burkhart materially breached the Compensation Agreements by committing fraud against ASC, he lost any claim he might have had for ASC's alleged subsequent non-performance.

As to Burkhart's unjust enrichment claim, ASC argues it is not viable because such a claim cannot survive when a valid and enforceable contract exists, and Burkhart alleged the existence of such a contract. According to ASC, it is well-established under Indiana law that unjust enrichment is an equitable remedy that permits recovery only in the absence of an express contract. *See CoMentis, Inc. v. Purdue Res. Found.*, 765 F. Supp. 2d 1092, 1102 (N.D. Ind. 2011) ("where an express contract governs the parties' behavior, a claim for unjust enrichment is not cognizable"). Because Burkhart has alleged that the Compensation Agreements "constitute fully binding and enforceable agreements, supported by mutual consideration," ([Filing No. 83 at 33](Filing No. 83 at 33)), without alternatively alleging that the agreements were invalid or unenforceable, his unjust enrichment claim should be dismissed.

In response, Burkhart acknowledges that the Court can take judicial notice of his and his co-defendants' criminal pleas. He asserts that the Court also "should concurrently take judicial notice of his Section 2255 filing, which calls into question the factual circumstances surrounding his plea." ([Filing No. 112 at 1](Filing No. 112 at 1), n.1.) Burkhart argues that ASC implicitly recognizes that he has sufficiently pled all the required elements of a breach of contract claim: (1) the Compensation

Agreements are contracts that exist between ASC and Burkhart, (2) ASC breached the Compensation Agreements by not compensating Burkhart upon terminating him without cause in September 2015, and (3) Burkhart has been damaged by ASC's non-payment of his approximately $2,466,713.46 of contractually defined compensation. Because he has sufficiently pled a breach of contract claim, Burkhart asserts that ASC's Motion to Dismiss should be denied.

Burkhart asserts ASC premises its Motion to Dismiss on a factual argument that ASC had a good faith basis to terminate Burkhart's employment in September 2015, and these questions of fact are not appropriate for disposition on a motion to dismiss. *See Magnesita Refractories Co. v. Mishra*, 2018 U.S. Dist. LEXIS 206856, at *23 (N.D. Ind. Dec. 7, 2018) ("Questions of good faith should generally be left for the trier of fact because they concern a party's state of mind.") Furthermore, the "implied covenant of good faith and fair dealing cannot be used to trump an explicit contractual provision," and thus, ASC's compensatory obligations to Burkhart "cannot be converted into a termination for cause by invoking the covenant of good faith." *Keeney v. Kemper Nat. Ins. Companies*, 960 F. Supp. 617, 624–25 (E.D.N.Y. 1997). Thus, Burkhart argues, ASC's non-performance of its obligations under the Compensation Agreements is not excused by information ASC did not know, and could not have known, at the time of its wrongful action.

Burkhart also argues that "bad faith actions," such as those raised in ASC's affirmative unclean hands defense, "present a question of fact that cannot be determined at the pleading stage." *In re Abbott Labs. Derivative S'holders Litig.*, 325 F.3d 795, 811 (7th Cir. 2003). The doctrine of unclean hands is not favored under Indiana law, and "must be applied with reluctance and scrutiny." *Wedgewood Cmty. Ass'n, Inc. v. Nash*, 781 N.E.2d 1172 (Ind. Ct. App. 2003). He argues that he adequately pled a breach of contract claim where his contract called for specific compensation if he was terminated without cause, which has been alleged, and ASC has failed to

10

pay him that severance compensation, thus he was damaged. Burkhart contends the events that occurred after the termination are unrelated to ASC's decision not to compensate him, as it was contractually obligated to do, when it chose to terminate him without cause in 2015. Burkhart asserts, "The question as to whether Mr. Burkhart's conduct constituted a breach is a purely factual matter which cannot and should not be determined at this stage of the litigation. Dismissal of Mr. Burkhart's sufficiently-pled breach of contract claim would therefore be improper." (Filing No. 112 at 5.)

Regarding the claim for unjust enrichment, Burkhart argues that he is allowed to bring an unjust enrichment claim as an alternative claim to the breach of contract claim. "A plaintiff seeking recovery for breach of contract may plead unjust enrichment in the alternative because this theory allows for the possibility of recovery even if the court finds that no contract existed or that a contract existed but was unenforceable." *NIBCO Inc. v. Arthur J. Gallagher Risk Mgmt. Servs.*, 2016 U.S. Dist. LEXIS 40744, at *40 (N.D. Ind. Mar. 29, 2016) (internal citation and quotation marks omitted). Burkhart asserts that, if the Court determines that the Compensation Agreements are unenforceable, he is permitted to seek quasi-contractual relief under the unjust enrichment claim.

ASC replies,

> [R]ather than address any of his wrongful conduct or his admissions, Burkhart merely asserts that ASC's arguments regarding his unclean hands are premature and that issues surrounding his wrongdoing must be addressed by the trier of fact. Contrary to Burkhart's assertions, however, there are no factual disputes to address because his prior admissions establish that he is not entitled to the relief he seeks. This is the quintessential case for taking judicial notice of facts admitted in a guilty plea when considering a Rule 12(b)(6) motion. Such notice allows courts to dispose of meritless claims like Burkhart's at the dismissal stage.

(Filing No. 118 at 1.) ASC asserts the facts establishing Burkhart's unclean hands are apparent from his guilty plea, and he conceded that his guilty plea is subject to judicial notice.

11

In considering this Motion to Dismiss, the Court takes judicial notice of the criminal proceedings that were before this Court in *United States v. Burkhart et al.*, Case No. 1:16-cr-212-TWP-TAB (S.D. Ind.), involving this same defendant—Burkhart.[2] And those criminal proceedings establish that Burkhart defrauded ASC out of millions of dollars. Burkhart pled guilty and admitted under oath to knowingly engaging in a conspiracy to commit mail, wire, and healthcare fraud with an intent to advance the conspiracy—Burkhart's misconduct was intentional. Burkhart's counterclaims relate to his employment relationship with ASC as its CEO, and his criminal convictions arose out the fraud he committed in his employment relationship with ASC as its CEO—Burkhart's wrongful conduct is immediately and necessarily related to his counterclaims. ASC was injured by Burkhart defrauding it out of millions of dollars for which ASC was entitled to restitution as a crime victim.

As argued by ASC, "[c]ontrary to Burkhart's assertion, courts within the Seventh Circuit consider an unclean hands defense 'on a motion to dismiss if, as herein, the facts giving rise to the defense are apparent.'" (Filing No. 118 at 2) (quoting *Cunningham v. EquiCredit Corp.*, 256 F. Supp. 2d 785, 797 n.12 (N.D. Ill. 2003). The doctrine of unclean hands bars a party's claim when the party's misconduct was intentional, its wrongdoing concerned the opposing party and had an immediate and necessary relation to the matter in litigation, and the opposing party was injured by the misconduct. *Barrett*, 2008 U.S. Dist. LEXIS 92445, at *15. This is the quintessential case for taking judicial notice of facts admitted in a guilty plea and applying the doctrine of unclean hands to bar a party's claims. At his change of plea hearing, Burkhart swore under oath to the factual

---

[2] The Court also takes judicial notice that Burkhart has filed a Section 2255 petition, which "calls into question the factual circumstances surrounding his plea." (Filing No. 112 at 1, n.1.) However, as the Court already has explained in an earlier Order, "The issues in the two proceedings are not the same. Burkhart's § 2255 petition alleges ineffective assistance of trial counsel and the issue in the civil case is whether Burkhart defrauded ASC." (Filing No. 111 at 5.)

12

basis underlying his plea of guilty. Despite his pending Motion to Vacate or Set Aside Sentence Under 28 U.S.C. § 2255,[3] Burkhart is estopped from contesting these facts because "[i]n this Circuit, a criminal conviction based upon a guilty plea conclusively establishes for purposes of a subsequent civil proceeding that the defendant engaged in the criminal act for which he was convicted." *Appley v. West*, 832 F.2d 1021, 1026 (7th Cir. 1987).

In the exercise of its rightful discretion to "refus[e] to aid the unclean litigant," *see Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 815 (1945), the Court **grants** ASC's Motion to Dismiss Burkhart's counterclaims for breach of contract and unjust enrichment based upon the doctrine of unclean hands. Because the Court grants the Motion on this basis, further discussion concerning ASC's alternative arguments is unnecessary[4].

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES as moot without prejudice to refile** Werner's Motion to Dismiss (Filing No. 75) and **GRANTS** ASC's Motion to Dismiss (Filing No. 100). Burkhart's counterclaims for breach of contract and unjust enrichment are **dismissed with prejudice.**

**SO ORDERED.**

Date: 9/26/2019

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

---

[3] In a footnote, Burkhart asks that this Court take judicial notice of his Section 2255 filing. *See United States of America v. James Burkhart*, Case No. 1:16-cr-00212-TWP-TAB-01." (Filing No. 112 at 1). The Court takes judicial notice of this civil filing in both the criminal case and Case No. 1:18-cv-4013-TWP-DLP, Filing No. 1, in which Burkhart alleges violation of his Sixth Amendment right to effective assistance of counsel.

[4] Although the Court has not provided analysis on ASC's alternative argument; dismissal is also warranted on Burkhart's breach of contract claim for the independent reason that Burkhart committed the first breach, and therefore, may not complain of an alleged subsequent breach by ASC. "A party first guilty of a material breach of contract may not maintain an action against the other party or seek to enforce the contract against the other party should that party subsequently breach the contract." *Liocci v. Cardinal Assocs., Inc.*, 492 N.E.2d 48, 53 (Ind. Ct. App. 1986). *See also Felker v. Sw. Emergency Med. Serv., Inc.*, 521 F. Supp. 2d 857, 869 (S.D. Ind. 2007).

DISTRIBUTION:

Daniel Benson
Montgomery B Wing
MONTGOMERY FEDERAL PRISON CAMP
Inmate Mail/Parcels
Maxwell Air Force Base
Montgomery, Alabama  36112

Eli J. Litoff
RILEY SAFER HOLMES & CANCILA LLP
elitoff@rshc-law.com

Kelly M. Warner
RILEY SAFER HOLMES & CANCILA LLP
kwarner@rshc-law.com

Laura Kleinman
RILEY SAFER HOLMES & CANCILA LLP
lkleinman@rshc-law.com

Matthew C. Crowl
RILEY SAFER HOLMES & CANCILA LLP
mcrowl@rshc-law.com

Ronald S. Safer
RILEY SAFER HOLMES & CANCILA LLP
rsafer@rshc-law.com

Valarie Hays
RILEY SAFER HOLMES & CANCILA LLP
vhays@rshc-law.com

Benjamin J. Widlanski
KOZYAK TROPIN & THROCKMORTON LLP
bwidlanski@kttlaw.com

Daniel S. Maland
KOZYAK TROPIN & THROCKMORTON LLP
dmaland@kttlaw.com


Bradley J. Wombles
NORRIS CHOPLIN & SCHROEDER

bwombles@ncs-law.com

Peter A. Schroeder
NORRIS CHOPLIN & SCHROEDER
pschroeder@ncs-law.com

Jackie M. Bennett, Jr.
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
jbennett@taftlaw.com

Richard Charles Richmond, III
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
rrichmond@taftlaw.com

Arthur R. Baxter, Jr.
BAXTER JAMES & ROSE
arb@bjrlegal.com

Edward F. Schrager
BAXTER ROSE & SCHRAGER
eschrager@brs-lawyers.com

Donna R. Eide
EDWARD F. SCHRAGER LLC
dreide@earthlink.net

David J. Carr
ICE MILLER LLP (Indianapolis)
david.carr@icemiller.com

Paul Conrad Sweeney
ICE MILLER LLP (Indianapolis)
paul.sweeney@icemiller.com

Stephanie Carowan Courter
ICE MILLER LLP (Indianapolis)
stephanie.courter@icemiller.com