UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

AMERICAN SENIOR COMMUNITIES, L.L.C.,

        Plaintiff,

  v.

JAMES BURKHART,
DANIEL BENSON,
ROGER WERNER,
GRETCHEN ZOELLER,
ACCD LLC (d/b/a CRUSADER HEALTHCARE
  SERVICES III),
AMERICAN SENIOR CARE LLC,
BRIGHT HVAC LLC,
FINITE CAPITAL LLC (d/b/a HEALTHCARE
  BY DESIGN),
INDIANA UNIFORM COMPANY LLC,
JACCD LLC (d/b/a CRUSADER IV),
MED-HEALTHLINE SUPPLY LLC,
OREGON PROPERTIES LLC,
105214 INVESTMENTS LLC (d/b/a
CRUSADER HEALTHCARE SERVICES),
105210 INVESTMENTS LLC (d/b/a
CRUSADER HEALTHCARE SERVICES II),

        Defendants.

Case No.: 1:17-cv-3273-TWP-DML

**ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS
TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

     Defendants, James Burkhart, ACCD LLC d/b/a Crusader Healthcare Services III,

American Senior Care LLC, JACCD LLC d/b/a Crusader IV, 105214 Investments LLC d/b/a

Crusader Healthcare Services, and 105210 Investments LLC d/b/a Crusader Healthcare Services

II,[1] file this Answer, Affirmative Defenses, and Counterclaims to Plaintiff American Senior

Communities, L.L.C.'s Complaint, and state as follows:

     1.       Denied.

---

[1] Going forward, these collective defendants will be referred to as either "Burkhart" or the "Burkhart Defendants."

2.      Admitted that Burkhart was the Chief Executive Officer, and Benson was the Chief Operating Officer of ASC.  In all other respects, paragraph 2 and subparts 2(a) through 2(f) are denied.

## THE PARTIES

**Plaintiff**

3.      Admitted that ASC is a privately-owned Indiana company headquartered in Indianapolis, Indiana; that ASC manages a variety of extended care facilities, including assisted and independent senior living communities, nursing homes, and skilled-living facilities throughout Indiana; that neither Burkhart nor any of the "Executive Defendants" ever had an ownership interest in ASC; and that the Health and Hospital Corporation of Marion County ("HHC") holds the health care operating licenses for most of the facilities that ASC manages.  In all other respects, paragraph 3 is denied.

**Executive Defendants**

4.      Admitted that Burkhart is ASC's former CEO, who operated ASC from approximately 2000 through September 15, 2015, when the Federal Bureau of Investigation executed search warrants at numerous sites, including Burkhart's principal residence and his primary office at ASC.  In all other respects, paragraph 4 is denied.

5.      Admitted that Benson is ASC's former COO who worked closely with Burkhart throughout his tenure.  In all other respects, Burkhart is without knowledge and therefore denied.

6.      Admitted that Roger Werner is ASC's former CFO who worked with both Burkhart and Benson.  In all other respects, Burkhart is without knowledge and therefore denied.

**Vendor Defendants**

7.      Without knowledge and therefore denied.

8.      Admitted.

2

9.      Admitted that American Senior Care LLC is an Indiana company owned by Burkhart.  In all other respects, paragraph 9 is denied.

10.      Admitted that Bright HVAC LLC is an Indiana Company owned in part by Ganote and Burkhart.  In all other respects, paragraph 10 is denied.

11.      Admitted that Finite Capital LLC (d/b/a Healthcare by Design) is an Indiana company owned in part by Benson, Burkhart, and Ganote.  In all other respects, paragraph 11 is denied.

12.      Without knowledge and therefore denied.

13.      Denied.

14.      Admitted that JACCD LLC d/b/a Crusader IV is an Indiana company owned by Burkhart for the purpose of holding put options related to certain facilities owned by Formation Capital.  In all other respects, paragraph 14 is denied.

15.      Admitted that Med-Healthline Supply LLC is an Indiana company owned in part by Burkhart and Ganote.  In all other respects, paragraph 15 is denied.

16.      Admitted that Oregon Properties LLC is an Indiana company owned by Burkhart and Ganote.  In all other respects, paragraph 16 is denied.

17.      Admitted that 105214 Investments LLC d/b/a Crusader Healthcare Services is an Indiana Company owned in part by Burkart.  In all other respects, Burkhart is without knowledge and therefore denied.

18.      Denied.

**<u>Non-Defendant Co-Conspirators</u>**

19.      Without knowledge and therefore denied.

20.     Admitted that Joshua Burkhart ("Josh Burkhart") is Burkhart's brother and was employed by a certified public accounting firm called Bradley and Associates. In all other respects, Burkhart is without knowledge and therefore denied.

21.     Without knowledge and therefore denied.

22.     Without knowledge and therefore denied.

23.     Without knowledge and therefore denied.

24.     Without knowledge and therefore denied.

25.     Without knowledge and therefore denied.

26.     Without knowledge and therefore denied.

## JURISDICTION AND VENUE

27.     The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent that a response is required, Burkhart denies the allegations in this paragraph and demands strict proof thereof.

28.     The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent that a response is required, Burkhart denies the allegations in this paragraph and demands strict proof thereof.

29.     The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent that a response is required, Burkhart denies the allegations in this paragraph and demands strict proof thereof.

## BACKGROUND

### ASC's Relationship with HHC

30.     Admitted.

31.     Admitted.

32.     Admitted that the agreement between ASC and HHC to provide nursing home

services to Indiana residents started in or about January 2003 and that the number of facilities that ASC managed for HHC grew over time as HHC acquired the operations of additional facilities. In all other respects, Burkhart is without knowledge and therefore denied.

33.     Admitted.

**ASC's Organization**

34.     Admitted.

35.     Admitted that Burkhart did not possess any ownership interest in ASC.  In all other respects, without knowledge and therefore denied.

36.     Admitted that Burkhart met with ASC's ownership group during his tenure as CEO to discuss financial and budget information about ASC and provide updates about the business, including plans for opening additional facilities.  In all other respects, paragraph 36 is denied.

37.     Denied.

38.     Denied.

**Duties Owed by the Executive Defendants to ASC**

39.     Denied.

40.     Denied.

41.     Denied.

42.     Without knowledge and therefore denied.

43.     Denied.

44.     Denied.

**THE RACKETEERING ENTERPRISE**

45.     Denied.

46.     Denied.

47.     Denied.

48.     Denied.

49.     Without knowledge and therefore denied.

50.     Without knowledge and therefore denied.

51.     Without knowledge and therefore denied.

52.     Denied.

53.     Denied.

54.     Denied.

**Purposes of the Enterprise**

55.     Denied.

**Association with and Conduct of the Enterprise**

56.     Denied.

57.     Denied.

**I.      PAYMENTS AND KICKBACKS FROM INFLATED VENDOR INVOICES**

58.     Denied.

59.     Denied.

60.     Denied.

61.     Denied.

**A.      Bright HVAC**

62.     Denied.

63.     Denied.

64.     Denied.

65.     Denied.

66.     Denied.

67.     Admitted that Bright HVAC sent an invoice to ASC.  In all other respects,

paragraph 67 is denied.

68.    Denied.

69.    Denied.

## PREDICATE ACTS ASSOCIATED WITH SCHEME 1: BRIGHT HVAC

70.    The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent that a response is required, Burkhart denies the allegations in this paragraph and demands strict proof thereof.

**B.**    **BTS Venture LLC (d/b/a Best Choice) and BTS Solutions LLC**

71.    Denied as to Burkhart receiving kickbacks from fraudulently inflated invoices and denied as to Burkhart directing ASC to pay BTS a sham consulting fee.  In all other respects, Burkhart is without knowledge and therefore denied.

72.    Admitted that Burkhart and Benson directed ASC employees to work directly with Ganote to transition ASC's speech therapists from the Company's affiliate's payroll to Best Choice.  In all other respects, paragraph 72 is denied.

73.    Denied

74.    Without knowledge and therefore denied.

75.    Denied.

76.    Denied.

77.    Denied.

78.    Denied.

79.    Denied.

80.    Denied.

**PREDICATE ACTS ASSOCIATED WITH SCHEME 2: BTS VENTURES AND BTS
SOLUTIONS**

81.     The allegations in this paragraph state a legal conclusion to which no response is
required.  To the extent that a response is required, Burkhart denies the allegations in this
paragraph and demands strict proof thereof.

**C.      Finite Capital (d/b/a Healthcare by Design) ("HBD")**

82.     Denied.

**1)      Scent Supplies**

83.     Without knowledge and therefore denied.

84.     Without knowledge and therefore denied.

85.     Without knowledge and therefore denied.

86.     Without knowledge and therefore denied.

87.     Without knowledge and therefore denied.

88.     Denied.

89.     Denied.

90.     Denied.

**PREDICATE ACTS ASSOCIATED WITH SCHEME 3: HBD (SCENT SUPPLIES)**

91.     The allegations in this paragraph state a legal conclusion to which no response is
required.  To the extent that a response is required, Burkhart denies the allegations in this
paragraph and demands strict proof thereof.

**2)      Patient Lifts**

92.     Denied

93.     Denied.

94.     Denied.

95.     Without knowledge and therefore denied.

96.     Denied.

97.     Denied.

**PREDICATE ACTS ASSOCIATED WITH SCHEME 4: HBD (PATIENT IFTS)**

98.     The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent that a response is required, Burkhart denies the allegations in this paragraph and demands strict proof thereof.

**D.      Heartland Flag**

99.     Admitted that Heartland Flag was ASC's preferred provider of flags between 2009 and 2015.  In all other respects, paragraph 99 is denied.

100.     Denied.

101.     Without knowledge and therefore denied.

102.     Without knowledge and therefore denied.

103.     Admitted that Heartland sent one consolidated invoice to ASC's home office three or four times per year.  In all other respects, Burkhart is without knowledge and therefore denied.

104.     Admitted that Heartland provided flags for facilities that ASC managed for HHC. Burkhart denies that ASC paid Heartland for flags and, in all other respects, is without knowledge and therefore denied.

105.     Without knowledge and therefore denied.

106.     Denied.

## PREDICATE ACTS ASSOCIATED WITH SCHEME 5: HEARTLAND FLAG

107.     The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent that a response is required, Burkhart denies the allegations in this paragraph and demands strict proof thereof.

E.     **Indiana uniform Company LLC ("Indiana Uniform")**

108.     Denied.

109.     Denied.

110.     Admitted that starting in 2013, Burkhart and Benson directed facilities to purchase their uniforms through Indiana Uniform.  In all other respects, paragraph 110 is denied.

111.     Without knowledge and therefore denied.

112.     Admitted that 20,000 patient discharge packages were ordered from Indiana Uniform for facilities.  Denied that under Burkhart's direction, Indiana Uniform issued fraudulent invoices to ASC and denied that Burkhart knew that the price charged to ASC for the discharge packages was improperly inflated.  In all other respects, Burkhart is without knowledge and therefore denied.

113.     Admitted that Indiana Uniform also sold door wraps (which impose images of landscapes on doors) to facilities four times per year at Burkhart's and Benson's direction. In all other respects, Burkhart is without knowledge and therefore denied.

114.     Denied.

115.     Denied.

116.     Admitted that Burkhart sent Indiana Uniform invoices to Werner to prepare checks for Burkhart's signature, as done in the normal course of business.  Without knowledge as to the other allegations in paragraph 116, and therefore denied.

117.    Denied.

118.    Without knowledge and therefore denied.

119.    Without knowledge and therefore denied.

120.    Without knowledge and therefore denied.

121.    Denied.

**PREDICATE ACTS ASSOCIATED WITH SCHEME 6: INDIANA UNIFORM**

122.    The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent that a response is required, Burkhart denies the allegations in this paragraph and demands strict proof thereof.

**F.  Med-Healthline**

123.    Denied.

124.    Denied.

125.    Without knowledge and therefore denied.

126.    Denied.

127.    Denied.

128.    Without knowledge and therefore denied.

129.    Denied.

130.    Denied.

131.    Without knowledge and therefore denied.

132.    Denied.

133.    Without knowledge and therefore denied.

134.    Denied.

**PREDICATE ACTS ASSOCIATED WITH SCHEME 7: MED-HEALTHLINE**

135.    The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent that a response is required, Burkhart denies the allegations in this paragraph and demands strict proof thereof.

**G.    Oregon Properties**

136.    Admitted that between March and September 2015, ASC rented a property from Oregon properties located at 2920 East 96th Street (the "Property") and that Oregon Properties was owned by Ganote and Burkhart.  In all other respects, paragraph 136 is denied.

137.    Denied.

138.    Admitted that Gemeni Properties leased the Property to Oregon Properties.  In all other respects, Burkhart is without knowledge and therefore denied.

139.    Without knowledge and therefore denied.

140.    Without knowledge and therefore denied.

141.    Without knowledge and therefore denied.

142.    Denied.

**PREDICATE ACTS ASSOCIATED WITH SCHEME 8: OREGON PROPERTIES**

143.    The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent that a response is required, Burkhart denies the allegations in this paragraph and demands strict proof thereof.

**H.    Force Holding Company ("Force Holding")**

144.    Without knowledge and therefore denied,

**1)    Alarm Services and Safety Systems**

145.    Without knowledge and therefore denied.

146.    Without knowledge and therefore denied.

147.    Without knowledge and therefore denied.

148.    Denied as to Burkhart's involvement with kickbacks.   In all other respects, without knowledge and therefore denied.

149.    Without knowledge and therefore denied.

150.    Denied as to Burkhart's involvement with kickbacks.   In all other respects, without knowledge and therefore denied.

151.    Denied.

152.    Denied.

153.    Without knowledge and therefore denied.

154.    Denied.

## PREDICATE ACTS ASSOCIATED WITH SCHEME 9: FORCE HOLDING (ALARM SERVICES)

155.    The allegations in this paragraph state a legal conclusion to which no response is required.   To the extent that a response is required, Burkhart denies the allegations in this paragraph and demands strict proof thereof.

### 2)    Wound Care Products

156.    Without knowledge and therefore denied.

157.    Without knowledge and therefore denied.

158.    Without knowledge and therefore denied.

159.    Denied.

160.    Without knowledge and therefore denied.

161.    Denied.

162.    Denied.

163.    Without knowledge and therefore denied

164.   Denied.

165.   Without knowledge and therefore denied.

166.   Denied.

## PREDICATE ACTS ASSOCIATED WITH SCHEME 10: FORCE HOLDING (WOUND CARE PRODUCTS)

167.   The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent that a response is required, Burkhart denies the allegations in this paragraph and demands strict proof thereof.

### 3)   Food Services

168.   Denied.

169.   Denied that Burkhart made false representations, and in all other respects, without knowledge and therefore denied.

170.   Without knowledge and therefore denied.

171.   Denied.

172.   Denied.

## PREDICATE ACTS ASSOCIATED WITH SCHEME 11: FORCE HOLDING (FOOD SERVICES)

173.   The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent that a response is required, Burkhart denies the allegations in this paragraph and demands strict proof thereof.

### I.   Ambulance Services

174.   Without knowledge and therefore denied.

175.   Without knowledge and therefore denied.

176.   Denied as to Burkhart's involvement.  In all other respects, without knowledge and therefore denied.

177. Denied.

178. Denied.

## PREDICATE ACTS ASSOCIATED WITH SCHEME 12: AMBULANCE COMPANY

179. The allegations in this paragraph state a legal conclusion to which no response is required. To the extent that a response is required, Burkhart denies the allegations in this paragraph and demands strict proof thereof.

## II. KICKBACKS FROM SHAM CIRCLE CONSULTING CONTRACT

180. Admitted that, Burkhart and Benson directed ASC to enter into a consulting agreement with Circle Consulting, and that Josh Burkhart is Burkhart's brother. Denied that Circle Consulting never provided any consulting services of value to ASC. In all other respects, Burkhart is without knowledge and therefore denied.

181. Denied.

182. Admitted that Circle Consulting billed ASC, and ASC paid Circle Consulting. In all other respects, Burkhart is without knowledge and therefore denied.

183. Denied.

184. Admitted that Werner paid Circle Consulting invoices at Burkhart's direction. In all other respects, Burkhart is without knowledge and therefore denied.

185. Denied.

## PREDICATE ACTS ASSOCIATED WITH SCHEME 13: CIRCLE CONSULTING

186. The allegations in this paragraph state a legal conclusion to which no response is required. To the extent that a response is required, Burkhart denies the allegations in this paragraph and demands strict proof thereof.

## III. PROVISION AND CONCEALMENT OF UNAPPROVED BONUSES

187. Denied.

188.     Denied.

189.     Denied.

190.     Denied.

**PREDICATE ACTS ASSOCAITED WITH BURKHART BONUSES**

191.     The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent that a response is required, Burkhart denies the allegations in this paragraph and demands strict proof thereof.

**PREDICATE ACTS ASSOCIATED WITH BENSON BONUSES**

192.     The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent that a response is required, Burkhart denies the allegations in this paragraph and demands strict proof thereof.

**PREDICATE ACTS ASSOCIATED WITH WERNER BONUSES**

193.     The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent that a response is required, Burkhart denies the allegations in this paragraph and demands strict proof thereof.

**IV.     REIMBURSEMENT OF INAPPROPRIATE EXPENDITURES**

**A.     Gifts and Entertainment**

194.     Denied.

195.     Denied.

196.     Admitted that Burkhart and associates took golf trips to golf resorts by private jets paid for with ASC's funds and utilized the services of private masseuses and charged those expenses to ASC.  In all other respects, paragraph 196 is denied.

197.     Denied.

198.     Denied.

199.    Admitted that Burkhart directed his executive assistant to provide only his guests' first names to the golf resort, to use "Burkhart" as the last name for each guest, to book private dining rooms for him and his guests and to book spa treatments.  In all other respects, paragraph 199 is denied.

200.    Denied.

## PREDICATE ACTS ASSOCIATED WITH GIFTS AND ENTERTAINMENT

201.    The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent that a response is required, Burkhart denies the allegations in this paragraph and demands strict proof thereof.

## V.    FRAUDULENT MISDIRECTION OF CORPORATE OPPORTUNITIES

202.    Denied.

### A.    Real Estate Transactions Involving Put and Consulting Payments to Burkhart-Controlled Entities

203.    Admitted

204.    Denied.

205.    Without knowledge and therefore denied.

206.    Admitted that Burkhart, acting as ASC's representative, was involved in numerous transactions (hereinafter referred to as "the later transactions") involving (1) HHC's acquisition of the operations and leases of nursing homes from third parties and (2) the sale of certain facilities' real estate to third parties (i.e., "lessors") and that each of these transactions resulted in ASC and HHC entering into new management agreements providing for ASC's management of the daily operations of certain facilities.  In all other respects, paragraph 206 is denied.

207.    Denied.

208.    Denied.

a.    2012 Omega Healthcare Investors Transactions

209.    Admitted that the ASC ownership decided to sell real property to a Real Estate Investment Trust ("REIT") called Omega Healthcare Investors, Inc. ("Omega") and that after this transaction HHC leased these same facilities from Omega (rather than the ASC owners) and acted as the licensed operator and that ASC continued to manage these facilities for HHC.  In all other respects, Burkhart is without knowledge and therefore denied.

210.    Admitted that HHC agreed to lease and operate certain facilities owned by Omega. In all other respects, Burkhart is without knowledge and therefore denied

211.    Admitted that ASC's owners were not interested in ASC accepting puts on various properties.  In all other respects, paragraph 211 is denied.

212.    Admitted as to Burkhart assisting the ASC ownership group in negotiating the sale/purchase price for the facilities which were to be sold to Omega.  In all other respects, paragraph 212 is denied.

213.    Admitted as to Burkhart (via one of the Crusader entities) and HHC entering into a put agreement covering certain Omega facilities on August 31, 2012, and that pursuant to that put agreement the Crusader entity received a $2 million upfront payment.  In all other respects, paragraph 213 is denied.

214.    Admitted as to Crusader and Omega entering into a Covenant Support Agreement on August 31, 2012, and Omega agreeing to pay Crusader installment payments.  In all other respects, Burkhart is without knowledge and otherwise denies the remaining allegations in paragraph 214.

b.    2012 Rothner Transactions

215.    Denied.

216.    Denied.

217.    Denied.

c.    2013 Omega Transactions

218.    Admitted that installment payments to Crusader from Omega were increased via an Amended Covenant Support Agreement in exchange for Crusader agreeing to accept a possible future put.  In all other respects, paragraph 218 is denied.

219.    Admitted that Crusader and HHC entered into a put agreement.  In all other respects, Burkhart is without knowledge and therefore denied.

220.    Admitted that Crusader and Omega also entered into an Amended Covenant Support Agreement.  In all other respects, Burkhart is without knowledge and therefore denied.

d.    2014 Ben Hur Facility Transactions

221.    Admitted that Dan Houston sold the operations of a Facility called Ben Hur to HHC, that once again, a put was required as a condition to the acquisition of this Facility and that pursuant to another put agreement with HHC, Burkhart, through another Crusader entity, agreed that Crusader would accept a future put for the Facility if HHC chose to exercise its put option.  In all other respects, paragraph 221 is denied.

222.    Admitted that Crusader and HHC entered into a put agreement covering the Ben Hur Facility and that pursuant to the agreement, Crusader received $250,000 upon the close of the transaction and Houston entered into a consulting agreement.  In all other respects, Burkhart is without knowledge and otherwise denies the remaining allegations in paragraph 222.

e.    2015 Formation Transactions

223.    Denied.

224.    Admitted that Crusader and HHC entered into a put agreement covering certain Formation properties on July 1, 2015, and that per the agreement, Crusader received $850,000 in

a put payment.  In all other respects, paragraph 208 is denied.

225.    Admitted that Crusader would receive $4.1 million in installment payments per a Consulting Agreement.  In all other respects, paragraph 225 is denied.

226.    Denied.

f.      Put-Related Losses

227.    Denied.

## PREDICATE ACTS ASSOCIATED WITH THE REAL ESTATE TRANSACTIONS

228.    The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent that a response is required, Burkhart denies the allegations in this paragraph and demands strict proof thereof.

**B.      The Chinese Joint Venture**

229.    Admitted that in December 2013, Burkhart, Benson and an Indiana Businessman flew to China.  In all other respects, paragraph 229 is denied.

230.    Denied.

231.    Without knowledge and therefore denied.

232.    Without knowledge and therefore denied.

233.    Denied.

234.    Without knowledge and otherwise denied.

235.    Without knowledge and otherwise denied.

236.    Denied.

## PREDICATE ACTS ASSOCIATED WITH THE CHINESE JOINT VENTURE

237.   The allegations in this paragraph state a legal conclusion to which no response is required.   To the extent that a response is required, Burkhart denies the allegations in this paragraph and demands strict proof thereof.

## VI.  CONCEALMENT

238.   Denied.

239.   Denied.

240.   Denied.

241.   Denied.

242.   Denied.

243.   Denied.

## PREDICATE ACTS ASSOCIATED WITH CONCEALMENT

244.   The allegations in this paragraph state a legal conclusion to which no response is required.   To the extent that a response is required, Burkhart denies the allegations in this paragraph and demands strict proof thereof.

## CLAIMS FOR RELIEF

### COUNT I.
### Violation of the Racketeer Influence and
### Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO")
### (Against the Executive Defendants)

245.   Burkhart re-alleges and incorporates his responses to the allegations contained in paragraphs 1 through 244 above as if set forth fully herein.

246.   The allegations in this paragraph state a legal conclusion to which no response is required.   To the extent that a response is required, Burkhart denies the allegations in this paragraph and demands strict proof thereof.

247.    The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent that a response is required, Burkhart denies the allegations in this paragraph and demands strict proof thereof.

248.    Denied.

249.    Denied.

250.    Denied.

251.    Denied.

252.    The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent that a response is required, Burkhart denies the allegations in this paragraph and demands strict proof thereof.

253.    Denied.

254.    Denied.

255.    Denied.

256.    Denied.

## COUNT II.
### Conspiracy to Violate RICO, 18 U.S.C. § 1962(d)
### (Against All Defendants)

257.    Burkhart re-alleges and incorporates his responses to the allegations contained in paragraphs 1 through 256 above as if set forth fully herein.

258.    The allegation in this paragraph states a legal conclusion to which no response is required.  To the extent that a response is required, Burkhart denies the allegation in this paragraph and demands strict proof thereof.

259.    Denied.

260.    Denied.

261.    Denied.

262.   Denied.

263.   Denied.

## COUNT III.
### Violation of the Indiana Corrupt Business
### Influence Statute, Ind. Code § 35-45-6-2 ("Indiana RICO")
### (Against All Defendants)

264.   Burkhart re-alleges and incorporates his responses to the allegations contained in paragraphs 1 through 263 above as if set forth fully herein.

265.   The allegations in this paragraph state a legal conclusion to which no response is required.   To the extent that a response is required, Burkhart denies the allegations in this paragraph and demands strict proof thereof.

266.   Denied.

267.   Denied.

268.   Denied.

269.   Denied.

## COUNT IV.
### Common-Law Fraud
### (Against All Defendants)

270.   Burkhart re-alleges and incorporates his responses to the allegations contained in paragraphs 1 through 269 above as if set forth fully herein.

271.   The allegations in this paragraph state a legal conclusion to which no response is required.   To the extent that a response is required, Burkhart denies the allegations in this paragraph and demands strict proof thereof.

272.   Denied.

273.   Denied.

274.   Denied.

275.   Denied.

276.   Denied.

277.   Denied.

278.   Denied.

279.   Denied.

280.   Denied.

281.   Denied.

282.   Denied.

**COUNT V.**
**Violation of Indiana Deceit Statute, Ind. Code § 35-43-5-3(a)(2)**
**(Against All Defendants)**

283.   Burkhart re-alleges and incorporates his responses to the allegations contained in paragraphs 1 through 282 above as if set forth fully herein.

284.   Denied

285.   Denied

286.   Denied

287.   Denied

288.   Denied.

**COUNT VI.**
**Violation of the Indiana Crime Victims Relief Act, Ind. Code § 34-24-3-1**
**(Against All Defendants)**

289.   Burkhart re-alleges and incorporates his responses to the allegations contained in paragraphs 1 through 288 above as if set forth fully herein.

290.   Denied.

**COUNT VII.**
**Breach of Fiduciary Duty**
**(Against Executive Defendants)**

291.    Burkhart re-alleges and incorporates his responses to the allegations contained

in paragraphs 1 through 290 above as if set forth fully herein.

292.    Admitted.

293.    Admitted.

294.    Denied.

295.    Denied.

**COUNT VIII.**
**Aiding and Abetting Breach of Fiduciary Duty**
**(Against Vendor Defendants)**

296.    Burkhart re-alleges and incorporates his responses to the allegations contained

in paragraphs 1 through 295 above as if set forth fully herein.

297.    Admitted that at all times relevant to the allegations in this Complaint, the

Executive Defendants were in a fiduciary relationship with ASC by virtue of their roles as officers

of the Company.  In all other respects, paragraph 297 is denied.

298.    Denied.

299.    Denied.

300.    Denied.

**COUNT IX.**
**Negligence**
**(Against All Defendants)**

301.    Burkhart re-alleges and incorporates his responses to the allegations contained

in paragraphs 1 through 300 above as if set forth fully herein.

302.    Denied.

303.    Admitted that throughout the relevant time, each of the Executive Defendants

owed ASC a duty of ordinary care, skill and knowledge as would be exercised by a reasonable officer of the Company.  In all other respects, paragraph 303 is denied.

304.    Denied.

305.    Denied.

306.    Denied.

## COUNT X.
### Constructive Fraud
### (Against All Defendants)

307.    Burkhart re-alleges and incorporates his responses to the allegations contained in paragraphs 1 through 306 above as if set forth fully herein.

308.    Denied.

309.    Denied.

310.    Denied.

311.    Denied.

## COUNT XI.
### Gross Negligence
### (Against Executive Defendants)

312.    Burkhart re-alleges and incorporates his responses to the allegations contained in paragraphs 1 through 311 above as if set forth fully herein.

313.    Denied.

314.    Denied.

315.    Denied.

## COUNT XII.
### Breach of Contract
### (Against All Defendants)

316.    Burkhart re-alleges and incorporates his responses to the allegations contained in paragraphs 1 through 315 above as if set forth fully herein.

317.    The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent that a response is required, Burkhart denies the allegations in this paragraph and demands strict proof thereof.

318.    Denied.

319.    Denied.

320.    Denied.

321.    Denied.

322.    Denied.

323.    Denied.

## COUNT XIII.
### Unjust Enrichment
### (Against All Defendants)

324.    Burkhart re-alleges and incorporates his responses to the allegations contained in paragraphs 1 through 323 above as if set forth fully herein.

325.    The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent that a response is required, Burkhart denies the allegations in this paragraph and demands strict proof thereof.

326.    Denied.

327.    Denied.

## COUNT XIV.
### Tortious Interference with Business Relationships
### (Against All Defendants)

328.    Burkhart re-alleges and incorporates his responses to the allegations contained in paragraphs 1 through 327 above as if set forth fully herein.

329.    Admit that ASC had various business relationships.  In all other respects, Burkhart is without knowledge and therefore denied.

330.   Denied.

331.   Denied.

332.   Denied.

## COUNT XV.
### Constructive Trust
### (Against All Defendants)

333.   Burkhart re-alleges and incorporates his responses to the allegations contained in paragraphs 1 through 332 above as if set forth fully herein.

334.   Denied.

335.   Denied.

## COUNT XVI.
### Indemnification
### (Against All Defendants)

336.   Burkhart re-alleges and incorporates his responses to the allegations contained in paragraphs 1 through 335 above as if set forth fully herein.

337.   The allegations in this paragraph state a legal conclusion to which no response is required.   To the extent that a response is required, Burkhart denies the allegations in this paragraph and demands strict proof thereof.

338.   Denied.

339.   Denied.

340.   Denied.

341.   Denied.

## PRAYER FOR RELIEF

342.   The allegations in this paragraph state a legal conclusion to which no response is required.   To the extent that a response is required, Burkhart denies the allegations in this paragraph and demands strict proof thereof.

28

## DENIAL OF ALLEGATIONS NOT ADMITTED

Burkhart denies all allegations not specifically admitted herein.

## AFFIRMATIVE DEFENSES

Having answered the allegations set forth in the complaint, Burkhart hereby adopts and incorporates by reference the responses of the preceding paragraphs, as if fully set forth herein, and asserts the following defenses:

### First Affirmative Defense
### (Failure to State a Claim)

Plaintiff's complaint fails to state a claim upon which relief against these defendants can be granted.  The complaint presents factual circumstances that emphasize omissions but fails to specifically allege the representations that supposedly constituted the fraud, and whom and when the person or persons made the supposedly fraudulent representations or promises. Furthermore, the complaint fails to allege any claim with sufficient particularity such as to meet the heightened pleading standards required by Federal Rule of Civil Procedure 9(b).

### Second Affirmative Defense
### (Unjust Enrichment)

Plaintiff is seeking to recover more than they are entitled to recover in this case, and an award of judgment as sought in the complaint would unjustly enrich the Plaintiff as the Plaintiff already received full restitution through the Executive Defendants Restitution Order as well as through individual settlements reached with non-parties to this action that are not acknowledged in this complaint.

### Third Affirmative Defense
### (No Damages to Plaintiff)

Even if Plaintiff's allegations are deemed true, the plaintiff did not suffer any damages resulting in economic loss.

### Fourth Affirmative Defense
### (Waiver)

Plaintiff's Complaint is barred by the doctrine of waiver.  Subsequent to Plaintiff's alleged discovery of facts constituting the grounds for the counts alleged in the complaint, Plaintiff conducted itself in such a manner as to indicate its recognition and approval of the Burkhart Defendants' conduct as alleged in the complaint.

### Fifth Affirmative Defense
### (Unclean Hands)

Plaintiff's complaint is barred by the doctrine of unclean hands.  Plaintiff willfully and knowingly participated in and condoned the acts alleged in this complaint.  The complaint's representations to the contrary are deceptive and unfair.  Mr. Burkhart has been abandoned by Plaintiff and turned into an unwilling scapegoat despite years of loyal service; and consequently, he has effectively lost nearly everything.  It is Burkhart who has been damaged by the Plaintiff, not the other way around.  The Plaintiff therefore comes to the Court with unclean hands and should not be permitted to seek relief.

### Sixth Affirmative Defense
### (Failure to Mitigate Damages)

Plaintiff is barred from recovery because it failed to take reasonable steps to reduce or minimize the damages, if any.  The Plaintiff was aware of all aspects of Burkhart's conduct and failed to raise or address its concerns, if any, in a timely manner to mitigate the exacerbation of its damages, if any.

### Seventh Affirmative Defense
### (No Breach of Contract)

Plaintiff wrongly asserts that Burkhart was a party to an employment contract, however Mr. Burkhart was party to no such agreement.  Burkhart asserts that he performed all duties

owed under his compensation agreements with Plaintiff other than any duties which were prevented or excused, and therefore never breached those agreements.

### <u>Eighth Affirmative Defense</u>
**(Reservation of Rights to Add Defenses)**

The Burkhart Defendants reserve their right to assert additional defenses or amend existing defenses upon discovery of further information regarding Plaintiff's claims.

Dated: September 27, 2019.                   Respectfully submitted,

/s/ *Bradley J. Wombles*
Benjamin J. Widlanski (*pro hac vice*)
Daniel S. Maland (*pro hac vice*)
KOZYAK TROPIN & THROCKMORTON, LLP
2525 Ponce de Leon Blvd., 9th Floor
Miami, Florida 33134
bwidlanski@kttlaw.com
dmaland@kttlaw.com

Peter A Schroeder
Bradley J. Wombles
NORRIS CHOPLIN & SCHROEDER LLP
101 West Ohio Street, Ninth Floor
Indianapolis, IN 46204
pschroeder@ncs-law.com
bwombles@ncs-law.com

*Attorneys for James Burkhart, ACCD LLC*
*(d/b/a Crusader Healthcare Services III),*
*American Senior Care LLC, JACCD LLC*
*(d/b/a Crusader IV, 105214 Investments*
*LLC (d/b/a Crusader Healthcare Services,*
*and 105210 Investments LLC (d/b/a*
*Crusader Healthcare Services II)*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 27, 2019, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to the parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Bradley J. Wombles
Bradley J. Wombles