UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AMERICAN SENIOR COMMUNITIES, L.L.C., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Case No. 1:17-cv-03273-TWP-DML<br>) |
| JAMES BURKHART, *et al.*, | )<br>) |
| Defendants. | ) |

## Order on Motion to Quash Amended Subpoena by the James Burkhart Defendants

Defendants James Burkhart and companies with which he has (or had) some affiliation—ACCD LLC d/b/a Crusader Healthcare Services III, American Senior Care LLC, JACCD LLC d/b/a Crusader IV, 105214 Investments LLC d/b/a Crusader Healthcare Services, and 105210 Investments LLC d/b/a Crusader Services II—move to quash a documents subpoena issued by plaintiff American Senior Communities, L.L.C. to law firm Barnes & Thornburg LLP.

To appreciate the context in which the subpoena was issued and the motion to quash was filed, the court first provides some background about this litigation, a criminal case, and James Burkhart's Section 2255 civil proceeding.

# Procedural Background[1]

This civil case was filed on September 15, 2017, by American Senior Communities, L.L.C. ("ASC"). ASC owns, operates, and/or manages extended care facilities, including assisted and independent senior living communities, nursing homes, and skilled-living facilities. The Health and Hospital Corporation of Marion County ("HHC") holds the health care operating licenses for most of the facilities that ASC manages. ASC manages 78 skilled nursing homes, four assisted living facilities, and numerous independent housing units on behalf of HHC.

ASC has sued James Burkhart (its former chief executive officer), Daniel Benson (its former chief operating officer), Roger Werner (its former chief financial officer), Joshua Burkhart (James's brother, who is or was an owner of companies that did business with ASC and who worked for a CPA firm that provided accounting services to ASC), Steven Ganote (who is or was an owner of businesses that had contracts with ASC to provide services or products),[2] and various entities in which one or more of these individuals had ownership interests and conducted business with ASC.

ASC contends that the defendants "systematically looted" ASC and defrauded the company of tens of millions of dollars via (a) fraudulent business

---

[1] The court's description of the claims in this case and in the Section 2255 civil proceeding are taken from various filings in those cases to provide background; they do not constitute factual findings.

[2] Claims against Joshua Burkhart and Steven Ganote and some affiliated companies were dropped when a First Amended Complaint was filed; two new defendants were added.

transactions by which ASC paid inflated prices for products and services to companies associated with one or more of the defendants, (b) fraudulent kickbacks from vendors, (c) fraudulently inflated salaries, bonuses, and perks, and (d) usurpation of business opportunities. Some of the claims brought by ASC have factual predicates that overlap with criminal charges earlier brought in 2016 by the United States against James Burkhart, his brother Joshua, and Messrs. Benson and Ganote.

Attorneys with Barnes & Thornburg represented James Burkhart in the criminal case, *United States v. James Burkhart, et al.,* Case No. 1:16-cr-00212-TWP-TAB. Mr. Burkhart eventually pleaded guilty to certain counts (conspiracy to commit mail, wire, and health care fraud, conspiracy to violate anti-kickback statute, and money laundering) and was sentenced on June 29, 2018, to 114 months' imprisonment. *See* Judgment, Dkt. 287, in Case No. 1:16-cr-00212.[3] In the criminal case, the court entered a Second Amended Protective Order that, *inter alia,* restricted the use of all documents produced to the defendants by the United States or any third parties solely for the preparation, trial, direct appeal, and collateral attack (if any) of the case "and for no other purpose whatsoever." (A copy of the order is at Dkt. 134-2 in this case).

---

[3] James Burkhart's co-defendants also pleaded guilty in the criminal case. Daniel Benson and Steven Ganote pleaded guilty to the same charges as James. Mr. Benson was sentenced to 57 months' imprisonment; Mr. Ganote was sentenced to 60 months' imprisonment. Joshua Burkhart pleaded guilty to conspiracy to commit mail, wire, and health care fraud and was sentenced to four months' imprisonment.

On December 20, 2018, Mr. Burkhart brought a civil action (Case No. 1:18-cv-04013-TWP-DLP) against the United States under 28 U.S.C. § 2255, seeking to vacate his convictions and to set aside his sentence because of alleged conflicts of interest of his counsel at Barnes & Thornburg. Mr. Burkhart asserts that (i) an alleged victim of the crimes he was charged with, HHC (the Health and Hospital Corporation of Marion County, which holds the operating licenses for most of the health care facilities managed by ASC), was one of Barnes & Thornburg's long-term clients, (ii) the law firm never disclosed to him its relationship with HHC, and (iii) to his detriment, his defense counsel conducted discovery, made strategy decisions, and gave advice upon which he relied that were all tainted by counsel's loyalties to HHC. Mr. Burkhart's Section 2255 petition contends that because of his attorneys' conflicts of interest, he was deprived of the effective assistance of counsel in violation of the Sixth Amendment.

In the Section 2255 proceeding, Mr. Burkhart and the United States agreed to the terms of a protective order that was entered by the court on their motion. (A copy is at Dkt. 134-3 in this case). The agreed order includes findings that Mr. Burkhart's Section 2255 motion "constitutes an implied waiver of his attorney-client privilege and work-product protection" for documents and information necessary for the government's defense of the motion and for the litigation of the proceeding, including with respect to documents relating to Barnes & Thornburg's representation and advice in the criminal proceedings and with respect to documents relating to the alleged potential conflicts of interest. The order restricts

the use and sharing of the documents to the litigation of the claims in the Section 2255 proceeding.

## The Subpoena

ASC served an amended documents subpoena on Barnes & Thornburg on April 18, 2019. (Dkt. 134-1). The subpoena seeks all communications between counsel and Mr. Burkhart in connection with the firm's representation of him in the criminal case and a broad range of other documents, generally relating to business and financial relationships between Mr. Burkhart and ASC or HHC. The subpoena excludes from its scope documents the law firm received in discovery from the United States or third parties in the criminal case, *i.e.*, those covered by the Second Amended Protective Order entered November 20, 2017, in Case 1:1-cr-00212.[4] The amended subpoena seeks:

- All documents relating to entities owned by James or Joshua Burkhart, Daniel Benson, or Steven Ganote that did business with ASC or HHC, including organizational documents, communications, contracts, financial records, and bank statements.

- All documents evidencing payments from ASC, HHC, or any entity that did business with ASC or HHC, and to any of the foregoing persons or any entity in which any had an ownership or financial interest.

- All documents evidencing travel to China or business conducted in China by ASC, James Burkhart, Daniel Benson, or Jeff Cooper.

- All documents evidencing ASC's payment of bonuses to James Burkhart, Daniel Benson, and Roger Werner.

---

[4] These documents produced by the government or third parties in the criminal case are the so-called "Discovery Material" excluded from the scope of the amended subpoena so long as production in the criminal case was the only source of the document.

- All documents evidencing purchases of gold by, on behalf of, or at the direction of James Burkhart.

- All documents evidencing or referring or relating to (a) gift cards, (b) gifts of $500 or more, (c) sporting events tickets, (d) charitable contributions, (e) political contributions, (f) golf trips, (g) other travel, and/or (h) private plane usage purchased or made by James Burkhart using ASC's funds, either for initial payment or via reimbursement by ASC.

- All documents relating to real estate transactions involving ASC and certain other companies.

- All communications with James Burkhart in connection with the criminal case, including that relate to the strength of the government's evidence against him and his co-defendants, possible defenses, and litigation and trial strategies.

- Court filings, transcripts (deposition, hearing, and trial), and discovery, including documents produced by parties and non-parties in *JACCD, LLC v. FC Domino Acquisition, LLC,* Case No. 29C01-1601-CC-344 (Hamilton Circuit Court), filed January 14, 2016.

Mr. Burkhart and the James Burkhart Companies contend that none of this information is discoverable from Barnes & Thornburg because it is protected from disclosure by either the attorney-client privilege or the work product doctrine. For its part, Barnes & Thornburg states that it relies wholly on Mr. Burkhart and his counsel to decide whether any or all of the documents should be produced or withheld on privilege or other grounds. ASC contends that many of the documents could not possibly be work product or an attorney-client communication and to the extent any were imbued with either privilege, the privilege was waived by Mr. Burkhart's filing and prosecution of the Section 2255 petition.

## Analysis

As addressed below, the court DENIES Mr. Burkhart's and his companies' motion to quash because (1) the attorney-client privilege and work product doctrine do not protect from disclosure *all* of the subpoenaed documents, (2) to the extent some subpoenaed documents are attorney-client privileged communications or work product, those privileges have been waived by Mr. Burkhart's bringing of his Section 2255 case at least for those documents that he produces or otherwise shares with the government in discovery in the Section 2255 proceeding, and (3) the protective order in the Section 2255 proceeding does not shield against waiver of work product and attorney-client privilege for purposes of this proceeding.

The court will first address Mr. Burkhart's argument that all documents within his attorneys' files must be either work product or attorney-client privileged communications. The court will then outline general legal principles governing the attorney-client privilege and the work product doctrine and their waiver and address the extent to which these privileges against disclosure are waived here.

**I.  Mr. Burkhart's contention that all documents must be work product or attorney-client communications has no support.**

Mr. Burkhart contends that documents within his attorneys' files are, by that circumstance alone, either work product or within the attorney-client privilege. He cites no authority for this proposition; there is none. Documents are work product only if they were "prepared in anticipation of litigation" by or for a party or the party's representatives. Fed. R. Civ. P. 26(b)(3). Documents are protected by the attorney-client privilege only if they reflect confidential

"communications between the client and his attorney for the purpose of obtaining professional legal advice or aid regarding the client's legal rights and liabilities." *Corll v. Edward D. Jones & Co.,* 646 N.E.2d 721, 724 (Ind. Ct. App. 1995). *See also United States v. Evans,* 113 F.3d 1457, 1461 (7th Cir. 1997) (describing attorney-client privilege under federal common law in similar terms).[5]

Some of the subpoenaed documents could not possibly meet either definition—for example, (1) various businesses' organizational documents, contracts, and financial records, (2) documents evidencing payments from ASC, HHC, and others, (3) documents evidencing purchases of gold, (4) documents evidencing payments of bonuses, (5) documents evidencing gift cards, $500 or greater gifts, purchases of sporting events tickets, charitable and political contributions, golf trips, and travel, (6) documents evidencing real estate transactions, (7) court filings and transcripts, and (8) documents produced in discovery by parties and non-parties in a state court case. And, of course, a person cannot create a privilege for a document that otherwise does not meet the privilege's required elements merely by funneling the document into his lawyer's files. *Radiant Burners, Inc. v. American Gas Ass'n,* 320 F.2d 314, 234 (7th Cir.

---

[5] This case includes federal law (RICO) and state law claims, making federal common law privileges and state law privileges potentially applicable. *See* Fed. R. Evid. 501. The court has not identified—and the parties have not cited—any distinctions between the attorney-client privilege under federal common law and under Indiana law germane to the court's analysis of the motion to quash. Work product is governed by federal law. For a case in federal court, whether documents are protected as work product is always governed by federal law, no matter whether state substantive law supplies the rule of decision for some claims. *See* Wright & Miller, 8 *Federal Practice & Procedure,* § 2023 (3rd ed.).

1963) (attorney-client privilege does not allow client to "funnel" papers into the hands of the client's lawyer for custodial purposes and thereby avoid disclosure); *Fisher v. United States,* 425 U.S. 391, 403 (1976) ("This Court and the lower courts have thus uniformly held that pre-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client. . . .")

Because the subpoenaed documents could not possibly all be protected from disclosure by the attorney-client privilege or the work product doctrine, Mr. Burkhart is required to establish the applicability of either privilege on a document-by-document basis. *See United States v. Lawless,* 709 F.2d 485, 487 (7th Cir. 1983) (party asserting attorney-client privilege bears the burden to establish its essential elements on document-by-document basis, rejecting "blanket" assertion of privilege); *Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 976 (7th Cir. 1996) (party asserting work product protection for any document bears the burden to establish that the document meets the definitional requirements for work product).

II. **The attorney-client and work product privileges are waivable.**

   **A. Waiver of the Attorney-Client Privilege**

The purpose of the attorney-client privilege is to encourage a client to provide complete and candid information in confidence to his lawyer so that the lawyer in turn can provide complete and candid legal advice about the client's rights and liabilities. *United States v. BDO Seidman, LLP,* 492 F.3d 806, 815 (7th

9

Cir. 2007). Confidentiality is a touchstone of the privilege, *id.,* and a communication between client and lawyer that is shared with persons outside the attorney-client relationship (unless a common interest privilege is established) expressly waives the privilege. *Id.* at 815-16. The privilege is also waived—by implication—when the client puts "at issue" counsel's advice to him. *E.g., Eli Lilly and Co. v. Zenith Goldline Pharmaceuticals, Inc.,* 149 F. Supp. 2d 659, 661 (S. D. Ind. 2001).

As part of the protective order he jointly with the government moved the court to enter in the Section 2255 proceeding, Mr. Burkhart acknowledged that his Section 2255 petition—because of its contention that his lawyers' alleged conflicts of interest improperly infected their advice and litigation strategies and his decision to plead guilty (all in violation of his Sixth Amendment right to the effective assistance of counsel)—"constitutes an implied waiver of [Mr. Burkhart's] attorney-client privilege and work-product protection with respect to documents, materials, and information necessary for the [government's] defense of, and for the appropriate litigation of, [the Section 2255 proceeding]." *See* Protective Order, Dkt. 134-3 at p. 1. And the government has now sought production in the Section 2255 proceeding of a broad range of documents that clearly include as a subset documents covered by ASC's subpoena to Barnes & Thornburg in this case. *See* Government's document requests, Dkt. 25-1, in the Section 2255 case (1:18-cv-4013), which the court ordered could be served (a court must authorize discovery in

a Section 2255 case). This court does not know the status of the document production in response to the government's requests.

While acknowledging that he put his lawyer's advice, strategies, and communications at issue in the Section 2255 case, thereby waiving attorney-client and work product privileges in that case, Mr. Burkhart argues that his waiver should not extend beyond the Section 2255 case. ASC argues, on the other hand, that there is no good authority for limiting waiver of the privilege, and a waiver limited to the Section 2255 case would violate the "selective waiver" principle applicable to the attorney-client privilege.

The court agrees, generally, with ASC's position, though it does not adopt ASC's apparent position that implied waiver in the Section 2255 case means that Mr. Burkhart has *impliedly* waived attorney-client and work product privileges for this case. Rather, as addressed below, this court finds that Mr. Burkhart *expressly* waives these protections for purposes of this case as to documents he shares with the government in the Section 2255 case.

Mr. Burkhart's sharing of attorney-client privileged communications with the government in the Section 2255 case obviously destroys the confidentiality of those communications. Because confidentiality is an essential element of the privilege, it is anathema to the privilege to permit Mr. Burkhart to assert its protections when confidentiality has been destroyed, a principle fully endorsed by the Seventh Circuit. In *Burden-Meeks v. Welch,* 319 F.3d 897 (7th Cir. 2003), the court determined that when an intergovernmental cooperative agency (an agency

11

created by municipalities to pool liability risks) shared legal analysis contained in a report prepared by its lawyer with the mayor of a city (a person determined by the court to be "outside" the agency), that disclosure waived the attorney-client privilege for the report. The privilege therefore was not available to shield the document from discovery in a civil rights Section 1983 action against the city and mayor. *Id.* al 899. The court ruled that "[k]nowing disclosure to a third party almost invariably surrenders the privilege with respect to the world at large; selective disclosure is not an option." *Id.*

Second, the only case relied on by Mr. Burkhart, *Bittaker v. Woodford,* 331 F.3d 715 (9th Cir. 2003), to support his argument that waiver by disclosure should not extend beyond the Section 2255 case does not present circumstances sufficiently similar to those in this case. *Bittaker* is a federal habeas case in which the plaintiff claimed that his trial counsel had rendered ineffective assistance of counsel in violation of the Sixth Amendment. The Ninth Circuit affirmed the district court's order that the waiver of otherwise attorney-client privileged documents and information required to be produced in the habeas case because counsel's advice and strategy had been put at issue did not extend to any criminal retrial of the habeas plaintiff in the event his habeas petition was successful. The court reasoned that it would be unfair to allow the government to use against the habeas petitioner in a second criminal trial documents and information the

petitioner had disclosed to the government only because his constitutional rights had been violated in a previous government proceeding against him.[6] It explained:

> Here, Bittaker is claiming that he was denied a constitutionally adequate criminal trial because he had ineffective counsel and for many other reasons as well. If he succeeds on any of these claims, it will mean that his trial was constitutionally defective. Extending the waiver to cover Bittaker's retrial would immediately and perversely skew the second trial in the prosecution's favor by handing to the state all the information in petitioner's first counsel's casefile. If a prisoner is successful in persuading a federal court to grant the writ [of habeas corpus], the court should aim to restore him to the position he would have occupied, had the first trial been constitutionally error-free. Giving the prosecution the advantage of obtaining the defense casefile—and possibly even forcing the first lawyer to testify against the client during the second trial—would assuredly not put the parties back at the same starting place.

*Id.* at 722-23.

This civil case does not present fairness considerations of the same character or degree. This court is not faced with evaluating whether Mr. Burkhart's Sixth Amendment rights were violated and, if so, the proper remedy for that violation. This court is not faced with the prospect of having ruled that a criminal proceeding had been conducted in violation of Mr. Burkhart's constitutional rights and then permitting the government to use in a second criminal proceeding against Mr.

---

[6] Other cases have adopted or discussed with approval the *Bittaker* rationale in similar habeas/ineffective assistance of counsel cases to prevent the government from exploiting in subsequent proceedings the attorney-client privileged information obtained to defend the habeas case. *See United States v. Nicholson,* 611 F.3d 191, 217 (4th Cir. 2010) (habeas plaintiff "should be entitled to protective order" that prohibits the government from using in new sentencing proceeding privileged information revealed in litigating the habeas plaintiff's conflict of interest claim); *United States v. Pinson,* 584 F.3d 972, 978-79 (10th Cir. 2009) (addressing need to narrowly confine waiver of attorney-client privilege in the habeas/ineffective assistance of counsel case).

13

Burkhart information the government never would have acquired but for Mr. Burkhart having suffered a violation of his constitutional rights. Indeed, by virtue of the agreed protective order in the Section 2255 case, Mr. Burkhart obtained from the government and the court an agreement—unless later modified by court order—that, like *Bittaker,* the government will not be allowed to use in a criminal retrial the privileged documents Mr. Burkhart must produce to the government. The order states that discovery can be used only for the Section 2255 proceeding, cannot be shared with other persons or agencies, including other law enforcement agencies, and the order continues in effect "in the event of a retrial of all or any portion of [Mr. Burkhart's] criminal case." *See* Dkt. 134-3, ¶¶ 3-5. The protective order does not purport to affect the rights of ASC in this litigation to seek discovery from Mr. Burkhart or others (except he cannot ask the government to violate the Section 2255 protective order and produce documents it obtained from Mr. Burkhart). And there is nothing within that protective order that purports to determine the scope of Mr. Burkhart's waiver of attorney-client or work product privileges vis-à-vis persons not parties to the order. ASC's subpoena to Barnes & Thornburg does not violate any provision of the Section 2255 protective order restricting discovery provided in that case for use in that case; ASC is not seeking documents from the government.

This court is only enforcing the elements of the attorney-client privilege by ruling that Mr. Burkhart cannot destroy the confidentiality of communications by

sharing them with the government but continue to assert the privilege vis-à-vis the parties in this civil case.

This is not the only context in which a person's assertion and vindication of constitutional rights in a criminal case can have a negative effect in a civil case. For example, a criminal defendant can succeed in suppressing evidence as the "fruit of the poisonous tree" under the exclusionary rule if his Fourth Amendment right against an unreasonable search or seizure was violated. *E.g., Utah v. Strieff,* 136 S. Ct. 2056, 2061 (2016) (describing the exclusionary rule). But that same "fruit" is admissible evidence against the person in a civil case and may doom a civil rights claim similarly alleging violation of the Fourth Amendment. *See Martin v. Marinez,* 934 F.3d 594, 598-99 (7th Cir. 2019) ("[T]he fact that the evidence was the fruit of an illegal detention does not make it any less relevant to establishing probable cause for the arrest because the exclusionary rule does not apply in a civil suit under § 1983 against police officers.") Assertion of a Fifth Amendment right against self-incrimination in a civil matter is another example, and courts routinely do not shield a person asserting that constitutional right from the adverse effects of that assertion in a civil case against him. *See Harris v. City of Chicago,* 266 F.3d 750, 755 (7th Cir. 2001) (adverse inferences can be, though need not be, drawn in a civil proceeding when a person invokes his Fifth Amendment privilege in refusing to testify about pertinent information); *In re High Fructose Corn Syrup Antitrust Litigation,* 295 F.3d 651, 663 (7th Cir. 2002) ("[T]he

general rule is that an adverse inference may be drawn from [a refusal to testify on Fifth Amendment grounds] in a civil case.")

The court rules that Mr. Burkhart has waived—for purposes of discovery in this civil case—any attorney-client privilege for documents that are within the possession, custody or control of Barnes & Thornburg and within the scope of the subpoena to the law firm and which are actually produced to the government in the Section 2255 proceeding. It is the production that destroys the privilege; the court does not otherwise find at this stage that waiver extends beyond documents that are produced.[7]

**B. Waiver of Work Product Protection**

Work product protection can be waived too. Generally, work product waiver is more circumscribed than attorney-client privilege waiver because there is no general subject matter waiver rule for work product. *See, e.g., Appleton Papers, Inc. v. EPA,* 702 F.3d 1018, 1024 (7th Cir. 2012).[8] Thus, the disclosure of some work product documents does not generally destroy the work product protection from disclosure for other documents of the same kind of character. *Id.* at 1025. Moreover, waiver occurs only when disclosure is made to an adversary—thus, in effect, destroying the zone of privacy for documents that had been prepared by

---

[7] The court acknowledges the possibility that that question may arise at some later point, but it will not provide an advisory opinion about the scope of waiver beyond documents for which privilege has been waived because of sharing of the document with the government, destroying confidentiality.

[8] The court also notes that "the dreaded subject matter waiver" for attorney-client privileged communications has been limited by the adoption of Fed. R. Evid. 502. *See* discussion in *Appleton,* 702 F.3d at 1026.

16

parties and their lawyers in anticipation of litigation. So, when a document otherwise properly characterized as work product has been disclosed to an adversary, the protection against its further disclosure has been waived. *See id.* at 1025-26. *See also Menasha Corp. v. United States Dep't of Justice,* 707 F.3d 846, 847 (7th Cir. 2013) ("[S]ince the purpose of the [work product] privilege is to hide internal litigation preparations from adverse parties, disclosure of work product to such a party forfeits the privilege.") The government is Mr. Burkhart's adversary in the Section 2255 proceeding.

Thus, here again, the court rules that Mr. Burkhart has waived—for purposes of discovery in this case—any work product protection for documents within the possession, custody, or control of Barnes & Thornburg and within the scope of the subpoena to the law firm, and which are actually produced to the government in the Section 2255 proceeding. It is that production that destroys work product protection.

## **Conclusion**

For all of the foregoing reasons, Mr. Burkhart's and his companies' motion (Dkt. 134) to quash ASC's subpoena to Barnes & Thornburg is DENIED. ASC's counsel, Mr. Burkhart's counsel, and Barnes & Thornburg's counsel must confer and attempt to agree on a protocol and timing for the review and production of documents responsive to the subpoena. The court expects that Mr. Burkhart's counsel should take a lead role in reviewing documents for their production. Although Barnes & Thornburg may be in a good position to identify documents

within the scope of the subpoena, Mr. Burkhart's counsel is in the best position to identify the documents that are not privileged at all and those documents for which privileges were waived because of production to the government.

So ORDERED.

Dated: November 19, 2019

_Debra McVicker Lynch_
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system