UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AMERICAN SENIOR COMMUNITIES, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) Cause No. 1:17-cv-3273-TWP-DML | |
| v. ) | |
| ) | |
| JAMES BURKHART, et al., ) | |
| ) | |
| Defendants. ) | |

**BARNES & THORNBURG LLP'S OBJECTION TO
MOTION TO WITHDRAW APPEARANCE**

Barnes & Thornburg, LLP ("B&T"), by counsel, joins in plaintiff American Senior Communities, LLC's Opposition to Motion to Withdraw Appearance (Dkt. 244), and separately objects to the Motion to Withdraw Appearance (Dkt. 243), filed by counsel for defendant James Burkhart, ACCD LLC d/b/a Crusader Healthcare Services III, American Senior Care LLC, JACCD LLC d/b/a Crusader IV, 105214 Investments LLC d/b/a/ Crusader Healthcare Services, and 105214 Investments LLC d/b/a Crusader Healthcare Services II (together, "Burkhart Defendants") for the following reasons:

1. B&T is an interested non-party in this case because it is the recipient of a certain amended subpoena ("Subpoena") served on it by plaintiff American Senior Communities, LLC ("ASC"). Counsel for B&T appeared on April 9, 2019 (Dkt. 135).

2. B&T objects to the Burkhart Defendants' counsel ("Withdrawing Counsel") withdrawal motion because granting leave to withdraw at this time will

interrupt the completion of a discovery process in which the Court, in its November 19, 2019 order, specifically contemplated that Withdrawing Counsel would play a central role.

3. It is noteworthy that in his termination letter to his counsel attached as Exhibit A to Withdrawing Counsel's motion, defendant James Burkhart ("Burkhart") expressly continued the representation of his counsel, Koyzyak Tropin & Throckmorton, as to various other matters. In other words, when it is convenient to Burkhart, he terminates that firm's representation in this case, but when also convenient to him, he chooses to maintain that representation in other legal matters.

4. On April 9, 2019, B&T filed its Response to Motion to Quash (Dkt. 136), in which it responded to Burkhart Defendant's Motion to Quash Plaintiff's Subpoena to Barnes & Thornburg LLP (Dkt. 134), informing the Court that, because Burkhart was its former client, it believed it was ethically obliged to defer to Burkhart's position on B&T's compliance with the ASC subpoena to B&T or as ordered by the Court.

5. On November 19, 2019, the Court issued its Order on Motion to Quash Amended Subpoena by the James Burkhart Defendants (Dkt. 237). In that order, the Court denied the Burkhart Defendant's Motion to Quash, ruling that Burkhart waived any claim of work product protection or attorney client privilege regarding any documents B&T produced to the government in Burkhart's Section 2255 proceeding. The Court went on to state:

> ASC's counsel, Mr. Burkhart's counsel, and Barnes & Thornburg's counsel must confer and attempt to agree on a protocol and timing for the review and production of documents responsive to the subpoena. The court expects that Mr. Burkhart's counsel should take a lead role in reviewing documents for their production. Although Barnes & Thornburg may be in a good position to identify documents within the scope of the subpoena, Mr. Burkhart's counsel is in the best position to identify the documents that are not privileged at all and those documents for which privileges were waived because of production to the government.

Dkt. 237 at 17-18.

6. On December 9, 2019, counsel for ASC, B&T and the Burkhart Defendants conferred and agreed on a process, consistent with the Court's order, whereby Withdrawing Counsel would undertake, in the Court's words, "a lead role in reviewing documents for their production" and then pass the responsive documents through to ASC. This process contemplated that the Withdrawing Counsel would obtain directly from Burkhart's counsel in his Section 2255 proceeding all of the documents B&T produced to the government in that case and review them for responsiveness to the Subpoena. The agreed process further contemplated that B&T would identify and produce to Withdrawing counsel any additional documents potentially responsive to the Subpoena for review before production to ASC.

7. On December 17, 2019, counsel for B&T spoke by telephone with Withdrawing Counsel Daniel Maland and Benjamin J. Widlanski to discuss the respective roles of B&T and Withdrawing Counsel in making production responsive to the Subpoena. This was the first time counsel for the Burkhart Defendants mentioned the possibility that Burkhart's alleged limited financial resources might

3

result in them seeking to withdraw. Nonetheless, Withdrawing Counsel did not renounce the discovery-compliance process negotiated at the December 9 telephone conference. It was also during the December 17 telephone call that Mr. Maland invited a discussion between Withdrawing Counsel and B&T about potential legal malpractice claims by Burkhart against B&T.

8. In furtherance of the agreement among counsel, on December 19, 2019, B&T's counsel sent an email to Mr. Maland seeking confirmation that Withdrawing Counsel had obtained from Burkhart's 2255 counsel the documents provided by B&T to the government in that case. To date, Withdrawing Counsel has never confirmed obtaining those materials from Burkhart's Section 2255 counsel. In addition, on December 19, B&T's counsel provided links to Burkhart Defendants' counsel to access other documents to be reviewed as potentially responsive to items 12 (41 pages of documents pertaining to a golf trip) and 16 (2386 pages of Burkhart's Fifth Third Bank records) of the Subpoena.

9. On December 20, 2019, Mr. Maland informed B&T's counsel that Withdrawing Counsel had informed ASC that they planned to withdraw from representing the Burkhart Defendants in this case and that the Burkhart Defendants had not retained new counsel.

10. After confirming the availability of both B&T's counsel and Withdrawing Counsel, ASC's counsel issued an invitation to Withdrawing Counsel and B&T's counsel for a telephone conference on December 23, 2019, to further discuss the process for complying with the Subpoena. B&T's counsel participated in

4

that call, but no one representing the Burkhart Defendants participated.

11.     Having failed to receive confirmation from Withdrawing Counsel that they had obtained the documents B&T produced in the 2255 proceeding from Burkhart's 2255 counsel, on December 26, 2019, B&T's counsel emailed Mr. Maland an attachment and electronic links to all of the 27,829 pages of documents B&T provided to the government in the 2255 proceeding. Thus, even if Withdrawing Counsel had not by then obtained those documents from Burkhart's 2255 counsel, as of December 26, Withdrawing Counsel had them.

12.     On December 28, 2019, B&T's counsel emailed Mr. Maland providing him electronic links to additional documents potentially responsive to the Subpoena, specifically items 1 (1,573 pages of business entity documents from the Indiana Secretary of State), 11 (8 pages of documents pertaining to political contributions), and 17 (77 pages of court filings related to the *JACCD, LLC v. C Domino Acquisition, LLC* lawsuit) of the Subpoena. In that email, B&T's counsel informed Mr. Maland that B&T had completed production to Withdrawing Counsel of all documents potentially responsive to the Subpoena and that, pursuant to the agreed process, it was expected that Withdrawing Counsel would review those materials and pass the responsive documents through to ASC.

13.     Having heard nothing further from Withdrawing Counsel, on December 30, 2019, B&T's counsel emailed Mr. Maland requesting a timeframe for completion and confirmation that Withdrawing Counsel would discharge their responsibilities by reviewing the documents for responsiveness to the Subpoena and

passing the responsive documents through to ASC. See attached Exhibit A at 3.

14. On December 31, 2019, Mr. Maland responded by repeating the intent to file a motion to withdraw as counsel for the Burkhart Defendants, but without specifically addressing whether Withdrawing Counsel planned to carry out their role as contemplated by the Court's November 19 order and the process agreed upon by counsel for ASC, B&T and Burkhart Defendants. Mr. Maland also mentioned his availability to discuss the prospect malpractice claim with B&T. See attached Exhibit A at 2-3.

15. On December 31, 2019, B&T's counsel responded to Mr. Maland by email advising him, in relevant part:

> As contemplated by the court and as discussed by telephone among counsel for ASC, Barnes & Thornburg and Mr. Burkhart, we have provided Barnes & Thornburg's potentially responsive production to ASC's subpoena to you and of course expect you to fulfill the responsibilities outlined by the Court with respect thereto before you withdraw. "The court expects that Mr. Burkhart's counsel should take the lead role in reviewing documents for their production." Order on Motion to Quash Amended Subpoena at 17. Unless successor counsel will appear at the time you file your motion to withdraw or Indiana counsel who has already appeared agree to undertake this responsibility, we will of course object to your withdrawal before the production in response to the ASC subpoena has been made.

See attached Exhibit A at 2. In addition, in the December 31 email to Mr. Maland, B&T's counsel mentioned that it seemed inappropriate to discuss a potential malpractice claim by Burkhart against B&T if Burkhart had terminated his attorney-client relationship with Withdrawing Counsel.

16. On January 3, 2020, Mr. Widlanski emailed B&T's counsel stating, among other things, that Withdrawing Counsel still represented Burkhart

6

regarding a potential legal malpractice claim against B&T and further pointing out that he expected that direct communications between Burkhart and B&T would be inappropriate, "when you know that he is, at least, represented by counsel in the habeas [2255] matter and your client is potentially adverse to him." See attached Exhibit A at 1-2. That same day, Withdrawing Counsel filed their withdrawal motion.

17. So long as B&T's compliance with the Subpoena is not complete, granting the withdrawal motion will leave Burkhart unrepresented in this case. Not only will this create case management problems in this case given his incarcerated status, it will also put B&T in the difficult positions of having to deal directly with Burkhart even though, through Withdrawing Counsel, he has threated to sue B&T, leaving B&T at risk of further claims by Burkhart if he disagrees with B&T's compliance with the Subpoena.[1]

18. Moreover, if the withdrawal motion is granted at this time, under Indiana Rule of Professional Conduct 4.2, B&T might well be precluded from communicating directly with Burkhart so long as he is represented by counsel on matters that overlap with the subject matter of such communications. Burkhart is represented by counsel in his 2255 proceeding, which includes subject matters involved in this case, as shown in part by the fact some of the same documents are being sought by ASC in this case as those produced by B&T in its response to the

---

[1] See Burkhart's responses to ASC's discovery in this case, attached as Exhibit E to ASC's opposition to the withdrawal motion, wherein Burkhart repeatedly states: "In addition, all documents and communications in the possession, custody, and control of Barnes & Thornburg LLP as it pertains to Mr. Burkhart and this litigation, are also subject to both Attorney Client and the Work Product privileges. Mr. Burkhart maintains and has expressly *not* waived his attorney client privilege with Barnes & Thornburg LLP or his current counsel." (Emphasis in original.)

7

government's discovery in the 2255 proceeding. Burkhart's 2255 counsel has not appeared in this case to represent Burkhart but represents Burkhart respecting overlapping subject matter. Further, Burkhart continues to be represented by Withdrawing Counsel in at least one other matter (a potential malpractice claim) adverse to B&T, which also involves overlapping subject matter. Withdrawing Counsel appears to be taking the position that B&T may not communicate directly with Burkhart in this case even though he is nominally unrepresented.[2] As a result, if Withdrawing Counsel's motion is granted, B&T will have significant difficulty discharging its responsibilities under the rules and this Court's November 19, 2019 order. This situation will likely increase the burden on B&T and potentially the Court in navigating B&T's compliance with the Subpoena.

19. Withdrawing Counsel have litigated the issues related to the Subpoena from the time of its issuance through the time of the Court's order denying the motion to quash, as well as engaged in discussions with counsel for ASC and B&T regarding how the Court's order would be implemented. Withdrawing Counsel should not be allowed to travel this far as Burkhart's agent and then be released of responsibility to continue the journey.

20. No good cause has been provided to the Court in Withdrawing Counsel's motion – other than Burkhart has selectively terminated their employment. The attorney-client relationship between Withdrawing Counsel and Burkhart apparently remains strong and conflict free as evidenced by their

---

[2] "It would be similarly odd that you invite Mr. Burkhart to communicate directly with you when you know that he is, at least, represented by counsel in the habeas matter and your client is potentially adverse to him." Exhibit A at 1.

8

continuing representation in at least one closely related matter. It does not constitute good cause that Burkhart is unwilling to pay his counsel to meet their obligations under this Court's November 19 order, which B&T infers is the sole reason they seek to withdraw. B&T has no objection to the Court granting the withdrawal motion once Withdrawing Counsel has fulfilled the expectations stated by the Court in its November 19 order and the parties agree that all discovery directed to B&T in this matter has been completed.

21. B&T understands that Burkhart is not willing to agree to B&T directly producing the documents it has identified as responsive and has asserted that there may be privilege issues among other objections. B&T is not aware of a proper Rule 11 basis for such an assertion of privilege, nor does it understand what other basis may exist for Burkhart's objection to B&T producing documents it has identified as potentially responsive. As already noted, Withdrawing Counsel has asserted that B&T is precluded from communicating with Burkhart on such issues and matters by the Rules of Professional Conduct. B&T's concerns are further heightened by the fact Withdrawing Counsel is representing Burkhart regarding purported legal malpractice claims against B&T – which could include claims arising out of B&T's production of documents in response to the Subpoena.

22. B&T specifically objects to the Burkhart Defendants' counsel's motion to withdraw for the reason that granting a withdrawal at this time will impede the process for B&T's compliance with the ASC amended subpoena that was specifically contemplated in the Court's November 19 order denying the motion to quash. The

efficient judicial administration of this case will be impaired if Withdrawing Counsel is allowed to withdraw before it has performed the role that it undertook and that was specifically contemplated in the Court's order.

WHEREFORE, B&T prays that the Court deny the motion to withdraw filed by the Burkhart Defendants counsel without prejudice.

*/s/ Donald R. Lundberg*
Donald R. Lundberg
Indiana Bar No. 8945-49
LUNDBERG LEGAL
P.O. Box 19327
Indianapolis, IN 46219
(317) 416-0733
don@lundberglegal.com

*Counsel for Barnes & Thornburg LLP*

CERTIFICATE OF SERVICE

I certify that on January 6, 2020, I filed this document electronically and caused the Court's electronic filing system to serve all counsel of record.

*/s/ Donald R. Lundberg*
*Counsel for Barnes & Thornburg LLP*