UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AMERICAN SENIOR COMMUNITIES, L.L.C., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 1:17-cv-03273-TWP-DML ) |
| JAMES BURKHART, *et al.*, | ) ) |
| Defendants. | ) |
| BARNES & THORNBURG LLP, | ) ) |
| Interested Party. | ) |

## Order on Motion to Withdraw Appearance and on Motion for Discovery Conference

On January 23, 2020, the court held a conference with the parties and nonparty Barnes & Thornburg LLP to address issues raised by the motion to withdraw appearance (Dkt. 243) filed by counsel for defendant James Burkhart and the related Burkhart Company Defendants[1] and the responses to the motion filed by plaintiff American Senior Communities, L.L.C. ("ASC") and Barnes & Thornburg. The court also addressed related issues raised by a motion for discovery conference filed by ASC, and thus that motion (Dkt. 249) to hold a conference is

---

[1] The Burkhart Company Defendants are defendants (1) ACCD LLC d/b/a Crusader Healthcare Services III, (2) American Senior Care LLC, (3) JACCD LLC d/b/a Crusader IV, (3) 105214 Investments LLC d/b/a Crusader Healthcare Services, and (4) 105210 Investments LLC d/b/a Crusader Healthcare Services II.

GRANTED.  As addressed in this order, the motion to withdraw (Dkt. 243) is GRANTED IN PART AND DENIED IN PART; counsel to Mr. Burkart and the Burkhart Company Defendants must continue their representation in this case in a limited way and for a limited time, as explained below.

The conference was on the record.  ASC appeared by Brian Watson and Kelly Warner.  Mr. Burkhart and the Burkhart Company Defendants appeared by Benjamin Widlanski, Daniel Maland, and Bradley Wombles.  Defendant GZ, LLC appeared by Darren Craig.  Interested party Barnes & Thornburg appeared by Donald Lundberg.

## The Motion to Withdraw

Defendant James Burkhart orally told his counsel around December 20, 2019, that he was terminating their representation of him in this case.  *See* email, Dkt. 246-3 at p. 1. Counsel received on January 3, 2020, a letter signed by Mr. Burkhart dated December 23, 2019, formally terminating the representation.  Dkt. 243-1. Upon receipt of the letter, counsel immediately filed their motion to withdraw.  Mr. Burkhart did not completely sever the attorney-client relationship. He selectively terminated his lawyers' representation from this lawsuit only and expressly affirmed their continued representation of him "and any entity in which I have an ownership interest, in disputes against "Formation Capital, LLC; Eric Rothner LLC and any of his entities; Health and Hospital Corporation of Marion County; Barnes & Thornburg, LLP; and any other individuals or entities related to my conduct while employed by American Senior Communities, LLC."  Further,

some of the counsel Mr. Burkhart terminated from this case (lawyers at Norris Choplin & Schroeder) remain his counsel in his Section 2255 proceeding against the government, Case No. 1:18-cv-4013.

Mr. Burkhart's oral and written termination of representation came in the midst of his lawyers' work to comply with this court's November 19, 2019 Order on Motion to Quash Amended Subpoena by the James Burkhart Defendants. That order required production of certain documents from Barnes & Thornburg's files to ASC. As the Order provides, counsel for Mr. Burkhart, ASC, and Barnes & Thornburg were directed to confer and attempt to agree on a protocol and timing for review and production of the Barnes & Thornburg documents (hereafter, "BT documents") responsive to ASC's subpoena. The court stated its expectation that because Mr. Burkhart's counsel is in the best position to identify within the BT documents those that are not privileged from the ones for which privileges were waived because of production to the government in the Section 2255 case, then Mr. Burkhart's counsel would take the lead role in producing the documents to ASC once Barnes & Thornburg identified the universe of responsive documents. All counsel, including Mr. Burkhart's counsel, then reached a working agreement on protocol and timing for review and production. They agreed that:

(1) Barnes & Thornburg would provide to Mr. Burkhart's counsel two sets of documents constituting the universe of the BT documents: (a) all documents it had produced in the Section 2255 proceeding (the "Section 2255 Documents") and (b) all other documents gathered by Barnes & Thornburg that were responsive to the ASC

3

subpoena but not produced in the Section 2255 proceeding ("Other Responsive Documents");

(2) Mr. Burkhart's counsel would review the Section 2255 Documents for responsiveness, if necessary, and produce them to ASC[2]; and

(3) Mr. Burkhart's counsel would review the Other Responsive Documents for privilege, produce all such documents to ASC for which no privilege is asserted, and provide a privilege log for any documents claimed as privileged. *See* Dkt. 249-5 (email chain beginning with December 11, 2019 email from Warner) and Dkt. 246-3 (December 30, 2019 email from Lundberg).

Barnes & Thornburg's responsibilities then would be complete upon its delivery of the Section 2255 Documents and Other Responsive Documents to Mr. Burkhart's counsel.

After Barnes & Thornburg had provided a first round of BT documents to Mr. Burkhart's counsel, including apparently all of the Section 2255 Documents, Mr. Burkhart's counsel advised that Mr. Burkhart had terminated their representation for this case and they no longer could be involved in reviewing or producing any documents or otherwise engaging in legal representation in this case.

Mr. Burkhart's counsel's filing of the motion to withdraw and their decision not to take further action after receiving Mr. Burkhart's termination letter was

---

[2] All counsel later agreed that it would not be necessary to further review the Section 2255 Documents before physical production by Mr. Burkhart's counsel to ASC, and those documents simply could be produced to ASC. Indeed, ASC then served a second document request formally seeking all of the Section 2255 Documents.

4

Case 1:17-cv-03273-TWP-DML   Document 252   Filed 01/28/20   Page 5 of 11 PageID #: 2536

consistent with their professional obligations under Indiana Rule of Professional Conduct 1.16(a)(3) and (c).³ These provisions, which are set out in full below, require a lawyer to withdraw from representation if he is discharged, but also require the lawyer to comply with applicable law for terminating representation, including obtaining permission from a tribunal for withdrawal and complying with an order of the tribunal to continue the representation, notwithstanding the existence of good cause for termination. Rule 1.16(a)(3) and (c) read:

> **Rule 1.16.  <u>Declining or Terminating Representation</u>**
>
> > (a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
> >
> > . . .
> >
> > (3) the lawyer is discharged.
> >
> > . . .
> >
> > (c) A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation. When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.

*See also Matter of Pitschke,* 627 N.E.2d 440 (Ind. 1994) (disciplining lawyer for failing to move to withdraw in divorce case after client discharged the lawyer); *In re Clayton,* 778 N.E.2d 404 (Ind. 2002) (lawyer violated Professional Conduct Rule 1.16(a)(3) when he did not withdraw from representation upon being discharged by client); *Union Local 1001 v. Laborers' Int'l Union,* 365 F.3d 576, 579 (7th Cir. 2004) ("attorney must withdraw from the representation as soon as the client so instructs").

---

³   By order of this court, the Rules of Professional Conduct adopted by the Indiana Supreme Court govern the conduct of counsel in this court.

The paragraph (c) exception requiring a lawyer to continue representation despite discharge if ordered to do so by a tribunal protects the integrity of the judicial system. A court may, in its discretion, order representation to continue if reasonably necessary to protect the interests of other parties and the court and to ameliorate prejudice to others in the management of a case that would occur if withdrawal were permitted. *Burns v. General Motors Corp.,* 2007 WL 4438622 at *1 (S.D. Ind. Nov. 30, 2007) (denying motion to withdraw and ordering counsel to continue his representation despite his belief in the breakdown of the attorney-client relationship); *JMB Mfg., Inc. v. Child Craft LLC,* 799 F.3d 780, 792-93 (7th Cir. 2015) (rather than allowing counsel to withdraw and entering default against company defendant on the eve of trial, district court could have required counsel to continue to represent the company through trial). As Judge Hamilton explained in *Burns,* "[w]hen an attorney seeks to withdraw from a case and no substitute counsel have appeared, the court must consider the interests not only of the counsel but also the client, the other parties, and the court. . . . The court has a responsibility to mitigate the effects on other parties and the court of any breakdown in what might otherwise be a private relationship between plaintiff and his attorney." *Id.* at *1-2.

While *Burns* and *JMB* did not involve clients who fired their lawyers, the apparent desire of the client to continue to be represented was not a driving factor in the decision to require the lawyer to continue representation. Nor was it consequential in *Burns* that the lawyer was confident the client-attorney relationship was broken and effective representation was not possible. Instead,

continued representation was required because trial was imminent and allowing withdrawal would delay the trial, impose substantial costs on the other parties, and pose challenges for the court in managing the interests of a newly *pro se* party. *See Burns,* 2007 WL 4438622 at *2.

Allowing Mr. Burkhart's lawyers to withdraw without their having completed their role in the production of the BT documents would severely prejudice the interests of all of the parties to this case, Barnes & Thornburg (a nonparty), and this court. Barnes & Thornburg has already completed the tasks for production of the BT documents that ASC, Mr. Burkhart, and it had determined (and this court now determines) was the appropriate method, protective of all of their interests, for compliance with the court's November 19, 2019 discovery order. The only tasks remaining for compliance are ones that fall on Mr. Burkhart, but he is incarcerated. It would be extremely difficult, time-consuming, and perhaps practically impossible for Mr. Burkhart, as a *pro se* litigant who is incarcerated,[4] now to take on the tasks of reviewing the BT documents already sent electronically to his lawyers (thousands of pages of documents), determining whether any of the Otherwise Responsive Documents (the non-Section 2255 Documents) are privileged, preparing a privilege log, and arranging for the physical production of the documents and the privilege log on ASC. In other words, if Mr. Burkhart were on his own for completion of the tasks required by the November 19 order, significant discovery in this case would be

---

[4]   Mr. Burkhart's counsel stated at the hearing that Mr. Burkhart has not hired new counsel and they have no reason to believe that he intends to hire new counsel for this case at any time soon or maybe ever.

7

stymied and the fair administration of this litigation for everyone would be threatened.

But if Mr. Burkhart's lawyers are required to complete the remaining tasks for compliance with the November 19 order—and these are lawyers that Mr. Burkhart selectively discharged from this litigation case only[5]—the work can be done expeditiously, and the interests of all parties and the court will be appropriately protected. The tasks are ones lawyers do routinely and can accomplish efficiently. The lawyers understand privilege issues, know privileges cannot be asserted unless there is a reasonable legal basis for doing so, and know how to prepare a proper privilege log. The tasks should be relatively simple for Mr. Burkhart's lawyers to complete. They can produce the Section 2255 Documents to ASC without further review or ado, as the parties earlier addressed as an efficient way for that set of the BT documents to be produced, and they are left only with the tasks to review the Otherwise Responsive Documents, make privilege determinations and assertions (if any), prepare a privilege log, and produce those for which no privilege is asserted.

The court determines that Mr. Burkhart's lawyers must continue their representation of Mr. Burkhart and the Burkhart Company Defendants until they have completed the foregoing tasks and any others reasonably necessary to accomplish the physical production of the BT documents and any privilege log from

---

[5] Counsel to Mr. Burkhart and the Burkhart Company Defendants also stated that their withdrawal motion is not based on any perceived conflict of interest.

them to ASC. To the extent any privilege assertions are made among the Otherwise Responsive Documents, Mr. Burkhart's lawyers must (1) retain a set of those documents and the privilege log, (2) deliver a set and the privilege log to the magistrate judge's chambers for potential *in camera* review, and (3) deliver a set and the privilege log to Mr. Burkhart himself. The court also determines that the scope of the lawyers' representation is now limited to these matters. Counsel are not responsible for representation of Mr. Burkhart or the Burkhart Company Defendants as to any other matters that arise during the period they are working on these tasks. Once all of these tasks have been completed, Mr. Burkhart's lawyers may file a second motion to withdraw seeking to terminate all further responsibilities as counsel to Mr. Burkhart and the Burkhart Company Defendants in this case.

Thus, the motion to withdraw (Dkt. 243) is GRANTED IN PART AND DENIED IN PART, as provided above.

The court also determines that by its delivery to Mr. Burkhart's counsel of the Section 2255 Documents and Otherwise Responsive Documents, Barnes & Thornburg has now completed all of its responsibilities for complying with the court's November 19 order.

### Other Matters

1.  During the conference, counsel for ASC moved for an extension of its expert disclosure deadline. The court GRANTS that motion. ASC's expert disclosure deadline is extended 30 days from the date that all the BT documents

(the Section 2255 Documents and Otherwise Responsive Documents) are produced to it, along with any privilege log. ASC is ordered to file a status report when that occurs.

2. All filings by all parties and all orders of the court must now be served by mail on James Burkhart and the Burkhart Company Defendants, by mailing them to James Burkhart, 15426-028, FPC Montgomery, Montgomery Federal Prison Camp, Inmate Mail/Parcels, Maxwell Air Force Base, Montgomery, AL 36112. The Clerk is directed to update the docket to include this address for Mr. Burkhart.

3. The court advises Mr. Burkhart that the Burkhart Company Defendants must be represented by counsel. As entities, they cannot defend or seek relief in this litigation except through a lawyer. The court permits Mr. Burkhart an additional amount of time (he discharged counsel over a month ago) to obtain substitute counsel for the Burkhart Company Defendants, until **February 18, 2020.** The failure of counsel to appear for the Burkhart Company Defendants by the deadline will subject the Company Defendants to the entry of default.

So ORDERED.

Dated: January 27, 2020

_Debra McVicker Lynch_
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:
All ECF-registered counsel of record by email through the court's ECF system

Via United States mail:
JAMES BURKHART
15426-028
FPC Montgomery
MONTGOMERY FEDERAL PRISON CAMP
Inmate Mail/Parcels
Maxwell Air Force Base
Montgomery, AL 36112

DANIEL BENSON
15431-028
FPC Montgomery
Montgomery B Wing
MONTGOMERY FEDERAL PRISON CAMP
Inmate Mail/Parcels
Maxwell Air Force Base
Montgomery, AL 36112