**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| AMERICAN SENIOR COMMUNITIES, L.L.C., ) | |
| ) | Case No.: 1:17-cv-3273-TWP-DML |
| Plaintiff, ) | |
| v. ) | Honorable Tanya Walton Pratt |
| ) | |
| JAMES BURKHART, et al., ) | Honorable Debra McVicker Lynch |
| ) | |
| Defendants. ) | |

### AMERICAN SENIOR COMMUNITIES, L.L.C.'S RESPONSE TO DEFENDANT JAMES BURKHART'S MOTION TO COMPEL

American Senior Communities, L.L.C. ("ASC") submits the following Response to Defendant James Burkhart's ("Burkhart") Update Regarding Attempts to Obtain All Discovery Material (Dkt. 315) and Reply (Dkt. 321), which, per the Court's Order dated November 5, 2020 (Dkt. 322), together constitute a Motion to Compel ASC to produce all discovery materials in this case.

Burkhart, a pro se, incarcerated defendant, seeks to compel ASC to produce to him nearly a half-million discovery documents, almost all of which already were made available to his former counsel, and the confidentiality and sensitive nature of which he is unable to protect in accordance with the Protective Order (Dkt. 68) in his prison setting. Burkhart makes this unreasonable demand on ASC without demonstrating the relevance of the material sought, describing how he would benefit from receiving this tremendous volume of discovery, or making any effort to narrow or otherwise prioritize the materials he seeks to review. The many tens of thousands of dollars of additional cost that ASC would have to incur to make all discovery documents securely available to Burkhart is practically unreasonable and fundamentally unfair. ASC will make deposition and trial exhibits available to Burkhart at appropriate times, as it is in the process of doing with the

materials relied on by ASC's expert witness. Because Burkhart fails to even attempt to demonstrate the relevance of the materials sought and fails to justify the undue burden his request would impose on ASC, Burkhart's Motion to Compel should be denied.

## BACKGROUND

Burkhart is incarcerated at the Federal Prison Camp located in Montgomery, Alabama ("FPC Montgomery"). As Burkhart has admitted, any discovery material he receives at FPC Montgomery will be stored in his sleeping area, which he estimates is accessible at any time by approximately 200 inmates and 75 staff members. (Dkt. 315 at 10). Such conditions directly contravene the Protective Order. (*See* Dkt. 68). Burkhart's expected release date is September 2026, and he does not contend that the circumstances related to his ability to store documents will improve before his release.[1]

ASC already has spent significant time and financial resources to comply with Burkhart's request for the roughly 500 documents cited in ASC's Expert Report on Damages by Michele M. Riley ("Cited Documents") (Dkt. 293). ASC made great efforts to work with FPC Montgomery staff to securely provide the confidential and sensitive Cited Documents to Burkhart. When FPC Montgomery staff failed to provide sufficient information regarding its internal protocols that would protect the documents, ASC undertook to review, redact, and password protect all Cited Documents so that they could be made securely available to Burkhart. ASC notified the eighteen third parties who had produced documents to ASC that were included within the Cited Documents of its intent to produce redacted and password protected copies to Burkhart and fellow incarcerated, pro se defendant Daniel Benson ("Benson").[2] (*See* Status Updates Regarding the

---

[1] *See* Federal Prison Inmate Search, found at https://www.bop.gov/mobile/find_inmate/byname.jsp (last searched 11/11/2020).

[2] ASC has learned just this week that Benson has been released to home confinement to serve his

2

Provision of Confidential Documents to Incarcerated Defendants, Dkt. 294, 306, 309, 312, 314, and 320).

## ARGUMENT

Burkhart moves to compel ASC to produce about a half-million documents to him in prison, specifically, every single document that has been produced by ASC, a defendant, or any third party in this case (collectively "Discovery Documents"). So long as Burkhart is incarcerated, ASC strongly objects to producing any additional documents to Burkhart without sufficient protection to ensure the confidentiality of sensitive information contained in the documents, which includes bank account numbers, social security numbers, personnel information, and other confidential business material. As ASC has argued in its previous Response to Burkhart's Update (Dkt. 317), Burkhart's wholesale request for all Discovery Documents should be denied because to produce the documents in a sufficiently protective state would impose undue burden on ASC that significantly outweighs any benefit to Burkart.

**I.    Legal Standard**

Federal Rule of Civil Procedure 37 provides that a party may move for an order compelling disclosure or discovery. Fed. R. Civ. P. 37(a). Federal Rule 26(b)(2)(C) conversely requires a court to limit discovery if the court determines that the burden or expense of the discovery outweighs its likely benefit or if the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive. Fed. R. Civ. P. 26(b)(2)(C).

The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant before the burden shifts to the objecting party to show why

---

remaining sentence through September 2022. *See* Federal Prison Inmate Search, found at https://www.bop.gov/mobile/find_inmate/byname.jsp (last searched 11/11/2020).

discovery is improper. *Malibu Media, LLC v. Harrison*, No. 112CV01117WTLMJD, 2014 WL 12760409, at *1 (S.D. Ind. May 1, 2014). A court has broad discretion in deciding whether to compel discovery and "may deny discovery to protect a party from oppression or undue burden." *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002). *See also Fair Hous. Ctr. of Cent. Indiana, Inc. v. Welton*, No. 118CV01098JMSDLP, 2019 WL 7579962, at *1 (S.D. Ind. Apr. 26, 2019) ("When determining whether to compel or restrict discovery the court should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it") (citing *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002)); *Am. Gen. Life Ins. Co. v. Germaine Tomlinson Ins. Tr.*, No. 108-CV-01747-SEB-JMS, 2010 WL 2348713, at *1 (S.D. Ind. June 8, 2010) ("the Court can deny a motion to compel … if what is sought far exceeds the bounds of discovery") (internal quotation omitted).

**II.     Burkhart Has Not Demonstrated the Discovery Documents Are Relevant.**

For the first two years of this litigation, ASC negotiated extensively with former counsel for Burkhart regarding the scope of ASC's discovery obligations. As often happens in complex civil litigation, Burkhart propounded document requests that ASC deemed overly broad, and the parties subsequently spent months negotiating the scope of discovery. Ultimately, counsel for ASC and counsel for Burkhart agreed upon various targeted collections of documents (*e.g.*, invoices supporting the fraudulent vendor expenses), as well as an extensive set of search terms that were applied to a number of ASC employee and owners' emails accounts to identify documents that were then reviewed for responsiveness to the discovery requests. Concurrently, counsel for ASC was participating in the same process with counsel for dismissed defendant Roger Werner regarding the scope of his discovery requests, similarly holding a number of discovery conferences and exchanging many letters, which also culminated in a series of targeted searches

and agreed upon search terms that were applied to a number of email accounts and other data repositories.[3]  During the two years while Burkhart was represented by counsel, ASC made nineteen productions of approximately 450,000 documents[4] to Burkhart through his former counsel.  Despite that nearly 99% of the Discovery Documents have already been produced to his former counsel, Burkhart now seeks them again from ASC, along with the remaining Discovery Documents he did not previously receive.

Burkhart has failed to describe the benefit he hopes to gain from receiving the hundreds of thousands of discovery documents in this case (making it additionally difficult to weight his interests against the overwhelming burden to ASC).  He has eschewed any attempt to narrow or specify which documents he seeks to review for his defense.  Notably, because of the case's unique posture, even without possessing the documents, Burkhart knows the story they tell.  As ASC noted in its previous Response (Dkt. 317), Burkhart is intimately aware of the claims ASC has brought against him and the documents that support those claims as he was the centerpiece of the prior criminal matter which led to his conviction, *United States v. Burkhart*, Case No. 16-cr-212 (S.D. Ind.).  Burkhart was the Chief Executive Officer for ASC when he defrauded the Company, giving rise to this action.  Burkhart is more than knowledgeable about ASC's evidence against him including its accounting, personnel and employee reimbursement records, bank and business records for legitimate vendors who provided goods and services to ASC, bank and business records

---

[3] Counsel for ASC is currently engaged in this process for a third time, responding to discovery requests recently issued by defendants Gretchen Zoeller and GZ, LLC, which ASC anticipates will result in yet another series of targeted collections and search terms, and potentially additional document productions.

[4] In ASC's previous Response to Burkhart's Update (Dkt. 317), ASC incorrectly referenced the figure of having produced approximately 650,000 documents.  That figure mistakenly included additional productions of document overlays or load files to assist in electronic document review.  To date, ASC has produced about 456,000 documents.

for sham vendors controlled by Burkhart that purported to provide goods and services to ASC, and ASC email communications. Despite this knowledge, Burkhart fails entirely to make any claim of relevance for the specific discovery he seeks.[5]

ASC will make all deposition exhibits available to Burkhart and will share anticipated trial exhibits well in advance of trial. *See Barrow v. Wexford Health Sources, Inc.*, 816 F. App'x 1, 6 (7th Cir. 2020) (holding prisoner was not unfairly deprived of access to discovery documents and affirming district court's granting of motion to preclude prisoner from retaining copies of documents in his prison cell since he was able to review *key* documents during discovery, the content was not a surprise, and he received copies to use at trial) (emphasis added); *United States v. Sarno*, 73 F.3d 1470, 1492 (9th Cir. 1995) (concluding that while a pro se defendant's "access to discovery materials was hardly optimal," the "limitations imposed on him were reasonable" where defendant was able to review material before trial). ASC would similarly be amenable to producing (again) the documents identified on its Preliminary Exhibit List (served on January 21, 2019 (Dkt. 104)), which it included in its first production of materials provided to Burkhart's former counsel in February 2019. While ASC does not oppose Burkhart's request for relevant, key documents, he has made no effort to support the relevance of all Discovery Documents he seeks.

### III. <u>Production of All Discovery Documents Would Impose an Undue Burden on ASC.</u>

Federal Rule 26 limits discovery and protects ASC from the magnitude of undue burden that Burkhart's request seeks to impose. Fed. R. Civ. P. 26(b). Given his prison setting and lack

---

[5] Burkhart substantively devotes much of his Reply (Dkt. 321 at 5-6) to arguing that ASC's damages calculation is incorrect. In agreeing to provide Burkhart with all the documents relied upon by ASC's damages expert, Michele M. Riley in her Expert Report on Damages (the "Cited Documents"), Burkhart already has received or will receive the documents that are relevant to ASC's damages figure and any attempt he may make to attack it.

of ability to protect documents, ASC cannot securely provide Burkhart with Discovery Documents without reviewing, redacting, and password protecting the documents. The overwhelming financial and time costs to ASC to produce these documents are not theoretical – ASC completed this process to provide Burkhart with the 500 Cited Documents. To repeat such a process for the roughly half-million Discovery Documents in this case would far exceed the bounds of discovery as contemplated by the Federal Rules.

### A. Wholesale, Unprotected Production to Burkhart Would Violate the Protective Order.

Pursuant to the Protective Order (Dkt. 68), persons in possession of information designated as confidential pursuant to the Order (which includes the vast majority of Discovery Documents) must exercise reasonable care with regard to the custody, use, or storage of such information. Such care specifically includes refraining from disclosing any confidential information to persons except in accordance with the Order and "refraining from using any public computer to access information." (*Id.*).

Burkhart cannot uphold these standards while incarcerated at FPC Montgomery. For Burkhart to access documents electronically on the prison's public computers, all confidential content would need to be redacted. As discussed below, adding the necessary redactions and protections to all Discovery Documents would impose an unreasonable cost and undue burden on ASC. Providing Burkhart with access to paper copies of the documents is equally untenable given the general accessibility of Burkhart's sleeping area by of approximately 300 inmates and staff by Burkhart's own estimate (*see* Dkt 315 at 10). FPC Montgomery's conditions make a mass production of all Discovery Documents impossible considering the Protective Order and the need to protect the confidentiality of the information.

### B. To Require ASC to Sufficiently Protect the Discovery Documents Would Impose an Undue Burden.

It would be unreasonable and unduly burdensome to require ASC to incur the costs associated with securely providing all Discovery Documents to Burkhart. ASC has already undergone the process of sufficiently protecting the 500 Cited Documents before producing them to Burkhart. To prepare the Cited Documents for production, a mere fraction of the total Discovery Documents, ASC's attorneys and staff spent more than 50 hours reviewing the documents for confidential and/or sensitive information and making necessary redactions and adding password protections. Applying the same rate, it would take approximately 45,000 hours of attorney/paralegal time to similarly process the roughly 450,000 discovery documents ASC alone has produced in this case. ASC would also need to confirm any redactions and productions with the more than fifty third parties who initially produced the documents. For the 500 Cited Documents, ASC's counsel spent approximately eight additional hours providing notice to and conferring with the eighteen third parties whose documents were impacted.[6] These same eighteen third parties, along with dozens of others, would need to be notified and provide their consent to the documents being made available to Burkhart in prison.

Fact discovery is not currently set to close until March 1, 2020, and the volume of discovery is certain to increase. Applying the same safeguards to all Discovery Documents that ASC has applied to the Cited Documents to securely make such documents available to Burkhart would

---

[6] In his Reply (Dkt. 321 at 3, Exhibit A), Burkhart uses the example of ASC seeking his permission to share documents that he produced in discovery with a third-party to argue that ASC treats discovery like a "proverbial one[-]way street." In fact, this example demonstrates the seriousness with which ASC has treated its obligations under the Protective Order throughout this litigation. In addition to the costs associated with reviewing and redacting discovery documents, ASC also would incur substantial costs if it were made to confer with the more than fifty third parties from which it has received documents through similar letter communications to confirm the parties' agreement with any protections applied before sharing the documents with Burkhart.

result in costs that are overwhelmingly unreasonable and would impose a burden on ASC that far outweighs any benefit to Burkhart. *See, e.g.*, *Todero v. Blackwell*, No. 117CV01698TWPMJD, 2018 WL 10602396, at *2 (S.D. Ind. Apr. 5, 2018) (denying motion to compel where court found the burden of reviewing thousands of documents yielded from additional searches outweighed any likely benefit of discovering additionally relevant documents); *Jones v. City of Elkhart*, No. 2:10-CV-402-TLS, 2012 WL 2026327, at *5 (N.D. Ind. June 5, 2012) (determining the costs of producing "voluminous records" outweighed any likely benefit where party moving to compel did not demonstrate need or show how the suggested measures to reduce the financial burden of production were insufficient).

### IV.   Pro Se, Incarcerated Parties Have Limited, Restricted Access to Discovery.

Burkhart chose to defend himself pro se in January 2020[7] after being represented by counsel for more than two years. During those two years, ASC made nineteen productions of more than 450,000 documents to Burkhart through his former counsel. Burkhart contends that because he elected to defend himself pro se and has not had success obtaining these previous productions securely through his former counsel, ASC must provide him with all discovery going back to the beginning of the case. This argument is unavailing. In fact, courts regularly recognize how being pro se and incarcerated often results in unavoidable discovery limitations and restrictions. *See, e.g.*, *United States v. Thomas*, 365 F. App'x 22, 24 (7th Cir. 2010) (agreeing with district court's admonishment about the dangers of self-representation and warning that "being incarcerated might impede [defendant's] access to discovery"); *United States v. Youker*, 718 F. App'x 492, 495 (9th Cir. 2017) ("the district court did not abuse its discretion by denying [defendant's] numerous

---

[7] Burkhart continues to be represented by private counsel in connection with *Burkhart v. United States*, Case No. 18-cv-04013 (S.D. Ind.). Burkhart made no representation regarding his ability to pay his counsel when they sought to withdraw from representing him in this matter. (*See* Dkt. 243-1).

requests for 'complete access' to discovery … A criminal defendant's right to access discovery must be balanced against the legitimate security needs or resource constraints of the prison.) (internal citations omitted); *Weaver v. United States*, No. 12-3216, 2015 WL 3814457, at *2 n.2 (C.D. Ill. June 18, 2015) ("As the Government notes, moreover, defendants generally do not have access to discovery documents while incarcerated for their own safety and for the safety of witnesses listed in the discovery"); *United States v. Veals*, No. 07-CR-20025, 2010 WL 1791005, at *1 (C.D. Ill. Apr. 30, 2010) ("discovery materials should not be available to prisoners for unfettered and uncontrolled use in the prison system").

## **CONCLUSION**

Burkhart has failed to demonstrate the relevance of the requested materials. Moreover, requiring ASC to bear the cost and obligation to provide all Discovery Documents to Burkhart at FPC Montgomery in a sufficiently protective manner would impose an undue and unjust burden on ASC that far outweighs any benefit to Burkhart. Accordingly, Burkhart's motion to compel must be denied. ASC will continue to provide key discovery to Burkhart consistent with the provisions of the Protective Order.

Dated: November 13, 2020                    Respectfully submitted,

*/s/ Kelly M. Warner*
Ronald S. Safer (*pro hac vice*)
Kelly M. Warner (*pro hac vice*)
Brian O. Watson
RILEY SAFER HOLMES & CANCILA LLP
Three First National Plaza
70 W. Madison, Suite 2900
Chicago, Illinois 60602
312-471-8700
rsafer@rshc-law.com
kwarner@rshc-law.com
bwatson@rshc-law.com

*Attorneys for American Senior Communities, L.L.C.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2020, I caused the foregoing document to be filed using the Court's electronic filing system, which will send notice of this filing to all counsel of record. Additionally, I will cause notice of this filing to be sent via U.S. Mail, postage prepaid, to Daniel Benson and James Burkhart at the following addresses:

    Daniel Benson
    Inmate No. 15431-028
    FPC Montgomery
    Maxwell Air Force Base
    Montgomery, AL 36112

    *\*\*Note that counsel for ASC has not been made aware of Benson's new address and accordingly will send it to FPC Montgomery presuming it will be forwarded to him.*

    James Burkhart
    Inmate No. 15426-028
    FPC Montgomery
    Maxwell Air Force Base
    Montgomery, AL 36112

                                                          /s/ *Kelly M. Warner*