UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AMERICAN SENIOR COMMUNITIES, L.L.C., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 1:17-cv-03273-TWP-DML ) |
| JAMES BURKHART, *et al.*, | ) ) |
| Defendants. | ) |

## Order on Discovery Materials

Defendant James Burkhart, who is incarcerated and chose to fire his lawyers in this case, has made two filings concerning his "attempts to obtain all Discovery Material." *See* Dkts. 315 and 321. Mr. Burkhart's first filing was a "notice" about his efforts to obtain documents, most or perhaps all of which had already been produced by ASC to Mr. Burkhart's former counsel. Plaintiff American Senior Communities filed a response. Mr. Burkhart then filed a response to ASC's response. In the latter document, Mr. Burkhart states that his first filing—the notice—was not a request for any relief from the court and did not seek the court's involvement. And though his "response to the response" (Dkt. 321) is not labeled as a motion, page 7 of the document includes Mr. Burkhart's statement in the "Conclusion" paragraph that he "respectfully asks the court to compel ASC to produce the Discovery Materials."

The court therefore has treated Mr. Burkhart's response at Dkt. 321 and his "notice" at Dkt. 315 as a combined motion to compel ASC to deliver to Mr. Burkhart at his correctional facility the documents Mr. Burkhart labeled the "Discovery Materials."  Mr. Burkhart defined "Discovery Materials" as the documents that ASC has produced in this litigation, though the term has been used by ASC to include documents that later became or will become available for production and/or have not been provided to Mr. Burkhart's former counsel.  ASC filed a response to Mr. Burkhart's "notice" at Dkt. 315, and the court set a date for additional response, which ASC filed on November 13 (Dkt. 323).  Mr. Burkhart filed a reply on November 30.  (Dkt. 326).

The issue before the court on Mr. Burkhart's motion is the extent to which ASC (or Mr. Burkhart's former counsel) must arrange delivery to him of documents that ASC or third parties have produced in discovery.  The means or method of that delivery and procedures for Mr. Burkhart's review of the documents are also at issue.

It should be noted at the outset that Mr. Burkhart's former counsel offered to facilitate the production to their former client of the materials they received from ASC before their withdrawal.  ASC objected to Mr. Burkhart's former counsel providing the documents to Mr. Burkhart in an electronic form protected by password and told the former counsel that their doing so would violate the protective order.  ASC cannot at the same time refuse to provide documents to Mr.

2

Burkhart on the ground that they already were produced to Mr. Burkhart's former counsel; it has impeded the ability of former counsel to allow the documents to be reviewed by Mr. Burkhart.  In light of that, and having carefully considered the issues and the authorities cited by ASC, the court rules as follows:

1.      Mr. Burkhart is allowed a reasonable opportunity to review and take notes about the documents that ASC has produced in this litigation and that ASC has obtained from third parties in discovery.

2.      Mr. Burkhart has signed and is bound by the protective order entered in this case, and he is expected to abide by its provisions.

3.      ASC must explore with appropriate personnel or corrections officers at Montgomery Federal Prison Camp ("Montgomery FPC") to determine the type of electronic medium (*e.g.,* a thumb drive, disc) on which documents can be accessed by Mr. Burkhart via a computer at Montgomery FPC.

4.      ASC must create electronic copies of documents it has produced (or will produce) on a drive or disc or some other medium that Mr. Burkhart can access via a computer at Montgomery FPC in as private a setting as is possible.  ASC may create a password or other login code for that medium and must provide Mr. Burkhart with that code.  Mr. Burkhart cannot share the code with anyone else except prison personnel.

5.      Because Mr. Burkhart has made it clear that any paper documents provided to him will not be secure from others at the prison, including other inmates, no paper copies need to be provided to Mr. Burkhart.  In addition, Mr.

Burkhart may not make copies of any of the documents.  He may take notes regarding the documents and their contents, but his notes may not include full account numbers, social security numbers, or other identifying information, the confidentiality of which may be compromised if others attain access to that information.  Instead, Mr. Burkhart may use initials, shortened number codes, or other similar naming strategies by which he can identify the information on his notes, but others will be unable to discern the confidential information.

6.     ASC is not required to redact documents because Mr. Burkhart is bound by the terms of the protective order and forbidden from making paper copies, and his notes cannot refer to full account numbers or similar identifying information that could be compromised if shared with others.  If ASC instead chooses to redact documents to shorten account numbers or social security numbers or to make similar redactions of particular information, it must do so at its own expense and with dispatch so that the documents—in their electronic form—can be provided promptly to Mr. Burkhart.

7.     With respect to any documents produced to ASC by non-parties in discovery that have not already been provided by ASC to Mr. Burkhart, ASC must provide electronic copies to him in the same manner as described in paragraphs 4 and 5 above.

8.     The court rejects ASC's contention that because Mr. Burkhart chose to terminate his lawyers, he is not entitled to review documents produced in discovery unless and until they are identified as deposition or trial exhibits by ASC.  None of

the cases cited by ASC present circumstances remotely like those here, involving a substantial number of pages of documents (in the hundreds of thousands, apparently) and the substantial monetary damages (about $200 million) sought by ASC, proof of which presumably is supported by some of these documents.  The fact that Mr. Burkhart may be very familiar with many of the documents to be provided to him because of his prior relationships with ASC is not an adequate reason to withhold the documents until closer to trial; that fact, however, should make Mr. Burkhart's review of the documents easier.

## Conclusion

Having deemed Mr. Burkhart's filings at Dkts. 315 and 321 as a motion to compel "ASC to produce the Discovery Materials," the motion is GRANTED IN PART and DENIED IN PART as provided in this order.  ASC must promptly make arrangements for the delivery of documents using an electronic medium that can be accessed by Mr. Burkhart via a computer at Montgomery FPC.

ASC must file a status report by **January 20, 2021,** about the delivery of the documents.

So ORDERED.

Dated: December 23, 2020

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

5

Distribution:

All ECF-registered counsel of record by email through the court's ECF system

Via United States mail:

**JAMES BURKHART**
15426-028
FPC Montgomery
MONTGOMERY FEDERAL PRISON CAMP
Inmate Mail/Parcels
Maxwell Air Force Base
Montgomery, AL 36112

**DANIEL BENSON**
15431-028
RRM ST. LOUIS
RESIDENTIAL REENTRY OFFICE
1222 Spruce Street, Suite 6.101
St. Louis, MO 63101